# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION

|  |  |
|---|---|
| IN RE: LOWE'S COMPANIES, INC. FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION<br><br>**(MDL No.: 2947)** | ) ) ) ) ) ) ) ) ) ) ) ) |

**MDL DOCKET NO. 5:20-MD-2947-KDB-DSC**

This Document Applies To All Cases Except 5:19-CV-00041-KDB-DCK (*Danford, et al., v. Lowes Companies, Inc., Lowe's Home Centers, LLC.*)

## CONSOLIDATED CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiffs Slade Grove and Eugene Garcia ("Arizona Plaintiffs"), Kindsay Estes and Brian Rookey ("Arkansas Plaintiffs"), Nicole Cheree Bogaert and Zachary Evans ("Colorado Plaintiffs"), Jennifer Belaski ("Connecticut Plaintiff"), Kent Fitzsimmons and Nicole Weekley ("Illinois Plaintiffs"), Ronald Anderson ("Kentucky Plaintiff"), Jason Hyde and Antoine Hursey ("Maryland Plaintiffs"), Jeffrey Lavelle ("Massachusetts Plaintiff"), Robert Neal ("Minnesota Plaintiff"), Jeremy West ("Missouri Plaintiff"), Gregory Ricks and Stephanie Pennington ("Nevada Plaintiffs"), Daniel Gerber and Stephanie Suazo ("New Jersey Plaintiffs"), Christopher Martinez and Peter Lomax ("New Mexico Plaintiffs"), Iris Tirado ("New York Plaintiff"), Brian Rumpke, Nicholl Frank and Sean Wolfe ("Ohio Plaintiffs"), Jason Martin ("Pennsylvania Plaintiff"), Kaitlin Forte ("South Carolina Plaintiff"), Kerry Cleavenger ("Washington Plaintiff"), Thomas Fyfe ("West Virginia Plaintiff"), (collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class Action Complaint against Defendants Lowe's Companies, Inc. and Lowe's Home Centers, LLC ("Defendants"), and state as follows:

1

## INTRODUCTION

1.      This Consolidated Class Action Complaint ("Complaint") is filed under the authority and direction of the Court as set forth in in its Order of September 15, 2020. (ECF No. 13). It is intended to serve as the Plaintiffs' Master Class Action Complaint for purposes of discovery, pre-trial motions and rulings (including for rulings relevant to Rule 23 of the Federal Rules of Civil Procedure), in all of the cases presently centralized in this Court pursuant to the determination of the Judicial Panel on Multidistrict Litigation establishing this Multi-District Litigation, except *Danford, et al., v. Lowe's Companies, Inc., Lowe's Home Centers, LLC,* Civ. No. 5:19-CV-00041-KDB-DCK.

2.      This Complaint involves the claims presently brought in 19 class action lawsuits[1] brought pursuant to Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of:

  a.   The Arizona Wage Act, A.R.S. §§ 23-350, *et seq* ("Arizona Wage Act");

---

[1] *Grove et al v. Lowe's Companies, Inc., et al*, Case No. 1:20-cv-00678 (D. Arizona); *Estes et al v. Lowe's Companies, Inc., et al*, Case No. 4:20-cv-00289 (D. Arkansas); *Bogaerts et al v. Lowe's Companies, Inc., et al*, Case No. 1:20-cv-00695 (D. Colorado); *Belaski v. Lowe's Companies, Inc., et al*, Case No. 3:20-cv-00343 (D. Connecticut); *Fitzsimmons et al v. Lowe's Companies, Inc., et al*, Case No. 1:20-cv-01109 (C.D. Illinois); *Anderson v. Lowe's Companies, Inc., et al*, Case No. 3:20-cv-00189 (W.D. Kentucky); *Hyde et al v. Lowe's Companies, Inc., et al*, Case No. 5:20-cv-00015 (D. Maryland); *Lavelle v. Lowe's Companies, Inc., et al*, Case No. 4:20-cv-40029 (D. Massachusetts); *Neal v. Lowe's Companies, Inc., et al*, Case No. 0:20-cv-01003 (D. Minnesota); *West v. Lowe's Companies, Inc., et al*, Case No. 4:20-cv-00190 (W.D. Missouri); *Ricks et al v. Lowe's Companies, Inc., et al*, Case No. 2:20-cv-00515 (D. Nevada); *Gerber et al v. Lowe's Companies, Inc., et al*, Case No. 2:20-cv-02773 (D. New Jersey); *Martinez et al v. Lowe's Companies, Inc., et al*, Case No. 2:20-cv-00234 (D. New Mexico); *Tirado v. Lowe's Companies, Inc., et al*, Case No. 1:20-cv-01472 (E.D. New York); *Rumpke et al v. Lowe's Companies, Inc., et al*, Case No. 2:20-cv-01411 (S.D. Ohio); *Martin v. Lowe's Companies, Inc., et al*, Case No. 200401292 (Philadelphia County Court of Common Please); *Forte v. Lowe's Companies, Inc., et al*, Case No. 2:20-cv-01108 (D. South Carolina); *Cleavenger v. Lowe's Companies, Inc., et al*, Case No. 4:20-cv-05049 (E.D. Washington); *Fyfe v. Lowe's Companies, Inc., et al*, Case No. 2:20-cv-00228 (W.D. West Virginia).

2

b. The Arkansas Minimum Wage Act, Ark. Code Ann. §§ 11-4-201 *et seq.*, Ark. Code R. §§ 010.14-100-113 ("Arkansas Wage Acts");

c. The Colorado Minimum Wages Of Workers Act, Col. Rev. Stat. §§ 8-6-101, *et seq.*; Colorado Minimum Wage Order 35, 7 CCR 1103-1 ("Colorado Wage Acts");

d. The Connecticut Minimum Wage Act, Conn. Gen. Stat. §§ 31-58, *et seq.* and Connecticut's wage collection statutes, Conn. Gen. S47tat. §§ 31-70, *et seq.* ("Connecticut Wage Acts");

e. The Illinois Minimum Wage Law, §§ 820 ILCS 105/1 *et. seq.* and Illinois Wage Payment and Collection Act, §§ 820 ILCS 115/1 *et seq.* ("Illinois Wage Acts");

f. The Kentucky Wages and Hours Act, KRS §§ 337.010, *et. seq.* ("Kentucky Wage Act");

g. The Maryland Wage and Hour Law, Md. Code Ann. Lab. & Empl., §§ 3-401, et seq., and Md. Code Ann. Lab. & Empl., §§ 3-505 ("Maryland Wage Acts");

h. The Massachusetts Minimum Fair Wages Act, M.G.L. ch. 151, §§ 1, *et. seq.* ("Massachusetts Wage Act"), M.G.L. ch. 151 §1A *et seq.*, ("Massachusetts Overtime Act"), and M.G.L. c. 149 §148 (the "Timely Payment of Wages Act");

i. The Minnesota Fair Labor Standards Act, Minn. Stat. §§ 177.21, *et seq.* and the Minnesota Payment of Wages Act, Minn. Stat. §§ 181.01, *et seq.* ("Minnesota Wage Acts");

j. The Missouri Minimum Wage Law, §§ 290.500 R.S. Mo., *et. seq.* ("Missouri Wage Act");

k. The Nevada Wage and Hour Law, NRS §§ 608.005, *et seq.* ("Nevada Wage Act");

l. The New Jersey Wage and Hour Laws and Regulations, N.J.S.A. 34:11-56a *et seq.*, and New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et seq.* ("New Jersey Wage Acts");

m. The New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-19, *et seq.* ("New Mexico Minimum Wage Act");

n. The New York Minimum Wage Act, NY CLS Labor §§ 65, *et seq.* and New York's Wage Theft Prevention Act (and previously the Unpaid Wages Prohibition Act), NY CLS Labor §§ 191, *et seq.* (together, the "New York Wage Acts"), as well as the implementing regulations thereunder as set forth hereinafter;

3

o. The Ohio Minimum Fair Wage Standards Act, ("the Ohio Wage Act") O.R.C. §§ 4111.01, 4111.03 and 4111.10, and the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA") (the Ohio Wage Law and the OPPA referred to collectively as the "Ohio Acts");

p. The Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.* ("Pennsylvania Minimum Wage Act");

q. The South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, *et seq.* ("South Carolina Wage Act");

r. The Washington Minimum Wage Act ("MWA"), Rev. Code Wash. ("RCW") Ch, 49.46, and the Washington Wage Rebate Act ("WRA"), RCW Ch. 49.52 (collectively the "Washington Wage Acts"); and

s. The West Virginia Minimum Wage and Maximum Hours Law; W. Va. Code §§ 21-5c-1, *et seq.*, the West Virginia Wage Payment and Collection Act, W. Va. C.S.R. 42-5-1, *et seq.*, and § 21-3-10A ("West Virginia Wage Acts").

3.     Defendants are an American retail company specializing in home improvement. Headquartered in Mooresville, North Carolina, Defendants operate a chain of retail stores in the United States, Canada, and Mexico. As of 2019, Defendants and their related businesses operate more than 2,000 home improvement and hardware stores and employ over 245,000 people in North America.

4.     In order to effectively operate their chain of retail stores, Defendants employ non-exempt hourly managers, including but not limited to, Department Managers, Service Managers and Support Managers (hereinafter collectively referred to as "Hourly Managers"), to supervise and oversee the retail stores, or various departments within the retail stores, and to manage the retail stores' employees.

5.     Defendants require their Hourly Managers to work a full-time schedule, plus overtime. However, Defendants do not compensate their Hourly Managers for all hours worked; instead, Defendants require their Hourly Managers to perform compensable work tasks before and after their scheduled shifts and during their unpaid meal periods, when they are not clocked into

4

Defendants' timekeeping system. These policies result in Hourly Managers not being paid for all time worked, including overtime.

6.     More specifically, Defendants maintain and have maintained a policy and practice of failing to pay Plaintiffs and Hourly Managers for time spent reading and responding to work-related smartphone communications during non-work hours, including during unpaid meal periods, or for being required to report early for work to perform a perimeter check of the premises by slowly driving their vehicles around the outer perimeter of the retail store to ensure that nothing out of the ordinary has occurred overnight. Plaintiffs and Hourly Managers perform other pre- and post-shift work tasks that go uncompensated, such as unlocking and locking the main entrance, arming and disarming the alarm system, and logging into and out of Defendants' computer system. Plaintiffs and Hourly Managers spend significant time performing this off-the-clock work, but Defendants do not compensate them for it. Because much of this time qualifies as overtime within the meaning of applicable state laws, Plaintiffs and Hourly Managers are owed overtime pay for this uncompensated, off-the-clock work.

7.     The individuals Plaintiffs seek to represent in this action are current and former Hourly Managers who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendants' violations of state law.

8.     Defendants knew of the existence of, and could have easily determined how long it takes Hourly Managers to complete, off-the-clock work, and Defendants could have properly compensated Plaintiffs and the putative Class for this work, but deliberately chose not to.

9.     Plaintiffs seek a declaration that their rights, and the rights of the Class members, were violated, an award of unpaid wages and liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages

they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

## PARTIES

10.    Plaintiff Slade Grove ("Plaintiff Grove") is an Arizona resident who worked for Defendants as an hourly Department Manager and then as a Service Manager at N. Phoenix Lowe's, 2929 W. Thunderbird Rd., Phoenix, Arizona 85053 (Store #1204) from January 2016 to April 2018. Defendants compensated Plaintiff Grove through the payment of an hourly wage of approximately $19.00 per hour.

11.    Plaintiff Eugene Garcia ("Plaintiff Garcia") is an Arizona resident who worked for Defendants as an hourly Department Sales Manager at Prescott Lowe's, 2300 East State Route 69, Prescott, Arizona 86301 (Store #1157) from December 2007 to March 2017. Defendants compensated Plaintiff Garcia through the payment of an hourly wage of approximately $18.50 per hour.

12.    Plaintiff Kindsay Estes ("Plaintiff Estes") is an Arkansas resident who worked for Defendants as an hourly AR Department Manager at Russellville Lowe's, 3011 Pkwy. East, Russellville, Arkansas 72802 (Store #0235) from November 2015 until August 2018. Defendants compensated Plaintiff Estes through the payment of an hourly wage of approximately $16.38 per hour. Plaintiff Estes also worked for Defendants as an hourly Service Manager at Russellville Lowe's, 3011 Pkwy. East, Russellville, Arkansas 72802 (Store #0235) from August 2018 until July 2019. Defendants compensated Plaintiff Estes through the payment of an hourly wage of approximately $19.00 per hour.

13.    Plaintiff Brian Rookey ("Plaintiff Rookey") is an Arkansas resident who worked for Defendants as an hourly Freight Flow Department Manager from 11/2012 until 1/2017, as an

6

hourly Support Manager Night Ops. from 1/2017 until 1/2019, and as an hourly Night Ops. Department Supervisor from 1/2019 until 5/2019 at Jonesboro Lowe's, 2111 Fair Park Blvd., Jonesboro, Arkansas 72401 (Store #0414). Defendants compensated Plaintiff Rookey through the payment of an hourly wage of approximately $22.68 per hour.

14.     Plaintiff Nicole Cheree Bogaert ("Plaintiff Bogaert") is a Colorado resident who worked for Defendants as an hourly Loss Prevention Manager at Fort Collins Lowe's, 4227 Corbett Dr., Fort Collins, Colorado 80525 (Store #2697) and Loveland Lowe's, 1355 Sculptor Dr., Loveland, Colorado 80537 (Store #2568) from June 2013 until August 2016. Defendants compensated Plaintiff Bogaert through the payment of an hourly wage of approximately $18.00 per hour. Plaintiff Bogaert further worked for Defendants as an hourly Freight Flow Manager at Longmont Lowe's, 355 Ken Pratt Blvd., Longmont, Colorado 80501 (Store #1874) from August 2016 until January 2017 and was compensated by Defendants through the payment of an hourly wage of approximately $19.00 per hour. Plaintiff Bogaert further worked for Defendants as an hourly Back End Support Manager at Store #1874 from January 2017 until July 2017 and was compensated by Defendants through the payment of an hourly wage of approximately $20.51 per hour.

15.     Plaintiff Zachary Evans ("Plaintiff Evans") is a Colorado resident who worked for Defendants as a Department Manager at Louisville Lowe's, 1171 Dillon Rd., Louisville, Colorado (Store #0220) from July 2015 until April 2017. Defendants compensated Plaintiff Evans through the payment of an hourly wage of approximately $20.49 per hour.

16.     Plaintiff Jennifer Belaski ("Plaintiff Belaski") is a Connecticut resident who worked for Defendants as a Front End Department Manager from September 2013 until January 2017; as a Service Manager from January 2017 until January 2019; and as a Department Supervisor

7

from January 2019 until June 2019 at Newington Lowe's, 3270 Berlin Turnpike, Newington, Connecticut 06111 (Store #0623). Defendants compensated Plaintiff Belaski through the payment of an hourly wage of approximately $22.63 per hour.

17.     Plaintiff Kent Fitzsimmons ("Plaintiff Fitzsimmons") is an Illinois resident who worked for Defendants as an Electrical Manager at Moline Lowe's, 3820 44th Ave. Dr., Moline, Illinois 61265 (Store #0104) from October 2015 until January 2018. Defendants compensated Plaintiff Fitzsimmons through the payment of an hourly wage of approximately $18.81 per hour.

18.     Plaintiff Nicole Weekley ("Plaintiff Weekley") is an Illinois resident who worked for Defendants as a Receiving Manager in 2016 and as a Back End Manager over Delivery, Stocking, and Unload Crew from 2016 until 2018 at Champaign Lowe's, 1904 North Prospect Ave., Champaign, Illinois 61822 (Store #0080). Defendants compensated Plaintiff Weekley through the payment of an hourly wage of approximately $21.15 per hour.

19.     Plaintiff Ronald Anderson ("Plaintiff Anderson") is a Kentucky resident who worked for Defendants as a Service Manager at Richmond Lowe's, 814 Eastern Bypass, Richmond, Kentucky 40475 (Store #1006) from January 2017 until October 2017. Defendants compensated Plaintiff Anderson through the payment of an hourly wage of approximately $19.12 per hour. Plaintiff Anderson also worked for Defendants as a Service Manager at E. Louisville Lowe's, 501 So. Hurstbourne Pkwy, Louisville, Kentucky 40222 (Store #0474) from October 2017 until March 2018. Defendants compensated Plaintiff Anderson through the payment of an hourly wage of approximately $19.12 per hour. Plaintiff Anderson also worked for Defendants as a Service Manager at E. Louisville Lowe's, 501 So. Hurstbourne Pkwy, Louisville, Kentucky 40222 (Store #0474) from March 2018 until October 2018. Defendants compensated Plaintiff Anderson through the payment of an hourly wage of approximately $19.69 per hour.

8

20.     Plaintiff Jason Hyde ("Plaintiff Hyde") is a Maryland resident who worked for Defendants as an Hourly Manager from December 2011 to October 2018 at their Towson and Severn, Maryland locations (Stores #2995 and #2594).

21.     Plaintiff Antoine Hursey ("Plaintiff Hursey") is a Maryland resident who worked for Defendants as an Assistant Manager at La Plata Lowe's, 300 Rosewick Rd., La Plata, Maryland 20646 (Store #2354) from November 2017 until January 2019.  Defendants compensated Plaintiff Hursey through the payment of an hourly wage of approximately $18.00 per hour.

22.     Plaintiff Jeffrey Lavelle ("Plaintiff Lavelle") is a Massachusetts resident who worked as a Loss Prevention Manager between October 2005 and June 2018 at five different Lowe's locations: Springfield, MA (Store #660); Ware MA (Store #2386); Leominster, MA (Store #1858); and Bloomfield, CT; and Hadley MA (Store #1916). Defendants compensated Plaintiff Lavelle through the payment of an hourly wage of approximately $22.00 per hour.

23.     Plaintiff Robert Neal ("Plaintiff Neal") is a Minnesota citizen, domiciled and residing in the state of Minnesota. Plaintiff Neal worked as a Zone Manager at Defendant W. St. Paul location at 1795 Robert St. West St. Paul, MN 55118 (Store #2313) from October 2017 to May 2019. Defendants compensated Plaintiff Neal through the payment of an hourly wage of approximately $22.23 per hour.

24.     Plaintiff Jeremey West ("Plaintiff West") is a Missouri resident who works at East Kansas City Lowe's, 4201 Sterling Ave., Kansas City, Missouri 64133 (Store #2943) and worked as a Department Manager in Lumber/Building Materials/Millwork/Tools/Hardware from 2014 until 2017. Defendants compensated Plaintiff West through the payment of an hourly wage of approximately $17.00 per hour for this position.  Further, Plaintiff West worked as a Service Manager Zone 3 from 2017 until 2019 at this same location. Defendants compensated Plaintiff

West through the payment of an hourly wage of approximately $19.00 per hour for this position. Plaintiff West currently works as a Department Supervisor Paint/Floor/Home Décor and Defendants compensate Plaintiff West through the payment of an hourly wage of approximately $20.35 per hour.

25.     Plaintiff Gregory Ricks ("Plaintiff Ricks") is a Nevada resident who worked as a Flooring Department Manager at Sunrise Lowe's, 2875 E. Charleston Blvd., Las Vegas, Nevada 89104 (Store #1620) from March 2013 until February 2018.  Defendants compensated Plaintiff Ricks through the payment of an hourly wage of approximately $20.26 per hour.

26.     Plaintiff Stephanie Pennington ("Plaintiff Pennington") is a Nevada resident who worked for Defendants at the C. Las Vegas Lowe's Store (Store #1639) at 4625 West Charleston Blvd Las Vegas, NV 89102 as Department Supervisor from September 2018 to July 2019; Service Manager Zone 1 from July 2018 to September 2018; Back End Support Manager from July 2017 to July 2018; Appliance Sales Specialist from February 2017 to July 2017; Department Manager Inside Lawn & Garden from 2015 to February 2017. Defendants compensated Plaintiff Pennington through the payment of an hourly wage of approximately $22.04 per hour.

27.     Plaintiff Daniel Gerber ("Plaintiff Gerber") is a New Jersey resident who worked as a Service Manager at W. Windsor Lowe's, 3540 Brunswick Pike, Princeton, New Jersey 08540 (Store #1185) from January 2017 until June 2019.  Defendants compensated Plaintiff Gerber through the payment of an hourly wage of approximately $22.75 per hour.

28.     Plaintiff Stephanie Suazo ("Plaintiff Suazo") is a New Jersey resident who worked as a Support Manager – Front End at North Bergen Lowe's, 7801 Tonnelle Ave., North Bergen, New Jersey 07047 (Store #1106) from February 2017 until September 2017.  Defendants compensated Plaintiff Suazo through the payment of an hourly wage of approximately $21.00 per hour.

29.     Plaintiff Christopher Martinez ("Plaintiff Martinez") is a New Mexico resident who worked as a Department Manager at Carlsbad Lowe's, 2519 West Pierce St., Carlsbad, New

Mexico 88220 (Store #3167) from November 2015 until August 2017. Defendants compensated Plaintiff Martinez through the payment of an hourly wage of approximately $17.60 per hour.

30.     Plaintiff Peter Lomax ("Plaintiff Lomax") is a New Mexico resident who worked as a Service Manager at E. Albuquerque Lowe's, 3010 Juan Tabo Blvd. NE, Albuquerque, New Mexico 87111 (Store #1543) from August 2016 until May 2018. Defendants compensated Plaintiff Lomax through the payment of an hourly wage of approximately $21.45 per hour.

31.     Plaintiff Iris Tirado ("Plaintiff Tirado") is a resident of Staten Island, New York, who worked as a Support Manager at Brooklyn Lowe's, 118 2nd Ave., Brooklyn, New York 11215 (Store #1674), from January 2015 until July 2018. Defendants compensated Plaintiff Tirado through the payment of an hourly wage of approximately $25.35 per hour.

32.     Plaintiff Brian Rumpke ("Plaintiff Rumpke") is an Ohio resident who worked as an MSM Manager at Wilmington Lowe's, 1175 Rombach Ave., Wilmington, OH (Clinton County) 45177 (Store #0298) from 2015 until 2018 and from 2018 to the present works as a Safety Manager at Hillsboro Lowe's, 107 South Careytown Rd., Hillsboro, OH (Highland County) 45133 (Store #2343). Defendants compensated Plaintiff Rumpke through the payment of an hourly wage of approximately $20.66 per hour.

33.     Plaintiff Nicholle Frank ("Plaintiff Frank") is an Ohio resident who worked as a Front End Department Manager at the Beavercreek Lowe's, 2850-I Centre Dr Fairborn, (Greene County) OH 45324 (Store #0089) from August 2013 to 2016. From 2016 through October 2018, Plaintiff Frank worked as a Front End Support Manager. From October 2018 through February 2019, Plaintiff worked as a Back End Support Manager. In each of these positions, Defendants compensated Plaintiff Frank through the payment of an hourly wage of approximately $20.65 per hour. From February 2019 to September 2019, Plaintiff Franked worked as a salaried Assistant Store Manager for Defendants.

34.     Plaintiff Sean Wolfe ("Plaintiff Wolfe") is an Ohio resident who worked as a Front Ent Support Manager at the S.E. Columbus Lowe's, 2888 Brice Rd Columbus, OH (Franklin County) 43232 (Store #0003) from October 2016 to December 2017. Defendants compensated

11

Plaintiff Wolfe through the payment of an hourly wage of approximately $20.32 per hour.

35. Plaintiff Jason Martin ("Plaintiff Martin") is a Pennsylvania resident who worked as an Hourly Manager at the Defendants' Uniontown, Pennsylvania store from August 2016 through August 2017. Defendants compensated Plaintiff Martin through the payment of an hourly wage of approximately $18.00 per hour.

36. Plaintiff Kaitlin Forte ("Plaintiff Forte") is a South Carolina resident who worked at West Ashley Lowe's, 3125 Glenn McConnell Pkwy., Charleston, South Carolina 29414 (Store #0655) as a Department Manager from February 2015 until February 2017; as a Service Manager (SSM) from February 2017 until February 2019; and since February 2019, she has been working as a Department Supervisor at Store #0655. Defendants compensated Plaintiff Forte through the payment of an hourly wage of approximately $17.45 for the Department Manager position; $19.19 for the Service Manager position; and $21.04 for the Department Supervisor position.

37. Plaintiff Kerry Cleavenger ("Plaintiff Cleavenger") is a Washington resident who worked as a Loss Prevention Manager at Kennewick Lowe's, 2N. 1020 Colorado St., Kennewick, Washington (Store #0249) from April 1993 until February 2019. Defendants compensated Plaintiff Cleavenger through the payment of an hourly wage of approximately $24.65 per hour.

38. Plaintiff Thomas Fyfe ("Plaintiff Fyfe") is a West Virginia resident who worked as an Assistant Store Manager at S. Charleston Lowe's, #50 Rhl Blvd., South Charleston, West Virginia 25309 (Store #0746) from September 2016 until March 2018. Defendants compensated Plaintiff Fyfe through the payment of an hourly wage of approximately $25.00 per hour.

39. Defendant Lowe's Companies, Inc., is a North Carolina corporation with a Principal Office at 1000 Lowe's Blvd, Mooresville, North Carolina 28117-8520. Defendant Lowe's Companies, Inc.'s Registered Agent for service of process is Corporation Service Company.

12

40.     Defendant Lowe's Home Centers, LLC, is a North Carolina limited liability company (AR SOS Filing # 811042639) with a Principal Office at 1605 Curtis Bridge Rd, Wilkesboro, North Carolina 28697-2231. Defendant Lowe's Home Centers, LLC's Registered Agent for service of process is Corporation Service Company at address 300 Spring Building, Suite 900 300 S. Spring St. Little Rock, AR.

41.     According to business news website Bloomberg.com, Lowe's Home Centers LLC retails home improvement, building materials, and home appliances; its address is: 1605 Curtis Bridge Road Wilkesboro, NC 28697 United States of America; it was founded on October 13, 1958; and it currently employs 209,850 employees. Bloomberg.com, *Lowe's Home Centers LLC*, available at https://www.bloomberg.com/profile/company/0579589D:US (last accessed Feb. 6, 2020).

42.     Upon information and belief, Defendants have employed thousands of Hourly Managers – including Plaintiffs – during the applicable time period to perform services that include supervising and overseeing the retail stores, or various departments within the retail stores, and managing the retail stores' employees.

43.     Upon information and belief, less than 80% of Defendants' employees are subject to the overtime compensation provisions of the FLSA, meaning that Defendants do not qualify for the exclusionary proviso of the West Virginia statute defining an "employer" for purposes of West Virginia's Minimum Wage and Maximum Hours Standards (MWMHS). *See* W. Va. Code § 21-5C-1 ("[F]or the purposes of [the maximum hours and overtime compensation provisions] of this code, the term 'employer' does not include any individual, partnership, association, corporation, person or group of persons, or similar unit if 80 percent of the persons employed by him or her are subject to any federal act relating to maximum hours and overtime compensation.").

13

## GENERAL ALLEGATIONS

44.     Defendants employed Plaintiffs as Hourly Managers in the following states: Arizona, Arkansas, Colorado, Connecticut, Illinois, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Jersey, New Mexico, New York, Ohio, Pennsylvania, South Carolina, Washington and West Virginia.  In that position, Plaintiffs were compensated pursuant to an hourly wage and typically worked a rotating schedule consisting of five to six days and up to 40 or more hours each week, resulting in overtime hours on a weekly basis.

45.     Throughout their employment with Defendants, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their jobs as Hourly Managers.

46.     Defendants' Department Managers are responsible for, among other things: (a) opening and closing the retail store; (b) leading and enabling a team of associates to deliver the best possible customer experience in the store by coaching and training associates, managing performance, and ensuring adequate department coverage at all times; (c) assuming responsibility for both customer facing activities (e.g., greeting customers, clarifying needs and identifying solutions, and closing sales) and non-facing activities (e.g., down stocking, inventory management, and area recovery); (d) ensuring his/her area of the store is in-stock and customer ready at all times while inspiring engaging, customer-focused behavior and driving his/her team to achieve sales and margin goals; (e) keeping management informed, delegating and following-up on daily tasks, and maintaining a clean, safe and secure work environment; (f) supervising associates in his/her own area; (g) leading associates in other departments, as needed, to meet the demands of the store, which requires broad product knowledge and the ability to engage associates and customers across departments; (h) at times, serving as manager-on-duty (MOD); and (i) moving large, bulky and/or

heavy merchandise and performing tasks that may require prolonged standing, sitting, and other activities necessary to perform job duties.

47. Defendants' Service Managers are responsible for, among other things: (a) opening and closing the retail store; (b) enabling and empowering a team of Customer Service Associates ("CSAs") to deliver the best possible customer service experience in the store by assuming responsibility for customer facing activities on the sales floor (e.g., greeting customers, listening and probing to understand needs, and identifying solutions), as well as non-customer facing activities (e.g., down stocking, inventory management and area recovery); (c) ensuring department(s) are customer ready at all times while inspiring engaging, customer-focused behavior, mitigating and reducing customer complaints, and driving positive first impressions for customers upon entering the store; (d) coaching, mentoring, training, and continually monitoring CSAs in their assigned areas; (e) leading CSAs in other departments, as needed, to meet the demands of the store, which requires broad product knowledge and the ability to engage employees and customers across departments; and (f) moving large, bulky and/or heavy merchandise and performing tasks that may require prolonged standing, sitting, and other activities necessary to perform job duties.

48. Defendants' Support Managers are responsible for, among other things: (a) opening and closing the retail store; (b) planning, scheduling, monitoring, and successfully implementing all non-selling operations in the front-end of the store (i.e., cashier and administrative functions); (c) facilitating the store's ability to provide a superior customer shopping experience and maximize sales and profitability by overseeing the Administrative office, researching shortages or overages, depositing cash in the bank, handling register pulls and loans, managing exchange and loaner accounts, and monitoring Customer Service desk activity; (d) planning, scheduling, monitoring,

15

and successfully implementing all non-selling operations in the back-end of the store (during the overnight shift or the Night Ops role); (e) leading a team responsible for critical support processes including receiving and stocking inventory, assembling product, and delivery; (f) training associates, managing performance, and creating schedules for the team to ensure adequate department coverage at all times; (g) collaborating and communicating with peers on the leadership team to ensure that critical information is being shared and to determine the most effective methods for meeting service objectives and customer needs; and (h) moving large, bulky and/or heavy merchandise and performing tasks that may require prolonged standing, sitting, and other activities necessary to perform job duties.

49. Defendants require their Hourly Managers to clock in/out for their shifts but do not accurately record the Hourly Managers' compensable work time as required by law.

A. **The Kronos Timekeeping System**

50. All hourly employees—including Hourly Managers—across all of Defendants' retail stores use the computer software program "Kronos" to track their hours worked for purposes of compensation.

51. The Kronos timekeeping system, however, fails to properly account for and compensate Hourly Managers for all time worked, including their overtime hours, during each day and during each workweek. This is because Hourly Managers are required to perform compensable work tasks before and after their shifts and outside of the retail store, when they are unable to log into the Kronos timekeeping system. This policy results in Hourly Managers not being paid for all time worked, including overtime.

52. Hourly Managers cannot log into the Kronos timekeeping system (i.e., "punch in" or "punch out") until they are physically inside the retail store where Defendants' desktop

16

computer is available. In fact, hourly employees cannot log into the Kronos timekeeping system unless they are ground-connected to Defendants' internet system, meaning they cannot log into Kronos using Wi-Fi or any other wireless technology, which is to say that hourly employees cannot log into Kronos for purposes of tracking their time unless and until they are physically inside the retail store.

53.     Thus, it is impossible for hourly employees, including Hourly Managers, to log into Kronos before entering a Lowe's retail store, meaning that Hourly Managers who are responsible for performing any work activities outside of the retail store—such as conducting perimeter checks, unlocking the main entrance, and disarming the alarm system—necessarily perform these activities *before* "punching in" to Kronos, i.e., off the clock. In fact, *all* activities that take place outside of the store location go uncaptured by the Kronos system.

54.     Hourly employees are only compensated for the time spent logged into the Kronos timekeeping system, meaning that any time worked "off the clock" that is not inputted into Kronos goes unpaid. Hourly Managers have override capability to retroactively adjust other employees' work hours as recorded in Kronos, but cannot retroactively adjust their own work hours because that feature is blocked within Kronos.

55.     Every Lowe's retail store has a main entrance that must be locked and unlocked and an alarm system that must be armed and disarmed when the retail store opens and closes each morning and each evening, meaning that certain work activities—namely, opening and closing the retail store itself—necessarily occur at *every* Lowe's retail store but cannot be captured by the Kronos timekeeping system.

**B.**     **Pre-Shift Off-the-Clock Work**

56.     Plaintiffs and the Hourly Managers work a rotating schedule requiring them to work five to six days per week and are required to open the retail store multiple times per week.

57.     Pursuant to Defendants' policies, training and direction, Hourly Managers responsible for opening the retail store are required to perform a series of essential work tasks *before* their scheduled shift and *before* clocking into the Kronos timekeeping system. These pre-shift work activities take substantial time, ranging from 10 to 15 minutes per shift, or even longer. Before each shift and before clocking into the Kronos timekeeping system, Hourly Managers responsible for opening the retail store must undertake the following essential work tasks:

- Immediately upon arriving at the retail store, the Hourly Manager must perform a perimeter check of the premises by slowly driving their vehicle around the outer perimeter of the retail store to ensure that nothing out of the ordinary has occurred overnight (such as burglary, vandalism, weather-related damage, or anything else that could pose a safety hazard to employees or customers).[2] If the Hourly Manager spots anything out of the ordinary, they must exit their vehicle to investigate, and, if necessary, extinguish, remove or otherwise eliminate the safety hazard.

- After performing a perimeter check of the retail store's premises, the Hourly Manager must park their vehicle, walk to the main entrance of the retail store, and unlock the entrance using a key.

- After unlocking the main entrance, the Hourly Manager must walk to the alarm system and disarm the alarm by punching in a passcode (the Hourly Manager has one minute to disarm the alarm system before the alarm goes off).

- After disarming the alarm system, the Hourly Manager must walk back to the main entrance to let in any other employees who have arrived for the morning shift so that they can get into the store, stow their personal belongings, and clock in on time.

- Finally, the Hourly Manager must walk to Defendants' desktop computer, turn on/wake up the computer, open Google Chrome or Internet Explorer by clicking the Google Chrome or Internet Explorer icon, search for and log into the Kronos time and attendance software using a username and password, and click "Start Shift."

---

[2] Hourly Managers must perform a perimeter check of the premises before *each and every shift*, not just the opening shift. This is because Defendants want Hourly Managers to be "aware" of the building and its surroundings before entering the retail store.

18

58.     The Hourly Managers are not compensated for this time because they cannot log into the Kronos timekeeping system (i.e., "punch in" or "punch out") until they are physically inside the retail store where Defendants' desktop computer is available.

59.     From the time that the Hourly Managers arrive to work and start performing the perimeter check of the premises until the time that they clock into the Kronos timekeeping system takes substantial time, ranging from 10 to 15 minutes per shift, or even longer if the Hourly Manager had to exit his or her vehicle to investigate or resolve a safety hazard, meaning that the Hourly Manager who opens the retail store performs a minimum of 10 to 15 minutes of off-the-clock work without compensation.

60.     The unpaid off-the-clock work performed by Plaintiffs and all other Hourly Managers before their shifts directly benefits Defendants, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Hourly Managers.

**C.     Meal-Period Off-the-Clock Work**

61.     Defendants promise their Hourly Managers one unpaid 60-minute meal period each shift.

62.     Under applicable state wage acts, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break.

63.     The interpreting regulations of the Arkansas Wage Act state:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The **employee must be completely relieved from duty** for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved

19

> if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. It is not necessary that an employee be permitted to leave the premises if he is otherwise completely freed from duties during the meal period.

Ark. Code R. § 010.14-108(C)(2)(emphasis added).

64.     Under Colorado law, "[e]mployees are entitled to an uninterrupted and duty-free 30-minute unpaid meal period when their work shift exceeds 5 consecutive hours." Colorado Minimum Wage Order Number 35 ("Order 35").

65.     During that meal period, "[t]he employee must be completely relieved of all duties." Order 35.

66.     If the employees are not completely relieved of all duties during the meal period, "then the employee *must be allowed to consume a meal on-duty, and be compensated for the entire on-duty meal period*." Order 35 (emphasis added).

67.     Under Connecticut law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. The relevant Connecticut statute states:

> "Hours worked" include all time during which an employee is required by the employer to be on the employer's premises or to be on duty, or to be at the prescribed work place, and all time during which an employee is employed or permitted to work, whether or not required to do so, provided time allowed for meals shall be excluded *unless the employee is required or permitted to work*.

Conn. Gen. Stat. § 31-76b(2)(A) (emphasis added).

68.     Under Illinois law, "'[h]ours worked' means all the time an employee is required to be on duty, or on the employer's premises, or at other prescribed places of work, and any

additional time he or she is required or permitted to work for the employer." 56 Ill. Admin. Code § 210.110.

69.     Under Kentucky law, Defendant's Hourly Managers are entitled to a "reasonable period for lunch." KRS § 337.355.

70.     In order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. The relevant administrative regulations states:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The ***employee must be completely relieved from duty*** for the purpose of eating regular meals. Ordinarily, thirty (30) minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. ***The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating***. It is not necessary that an employee be permitted to leave the premises if he is otherwise completed freed from duties during the meal period.

803 KY. Admin. Regs. 1:065 § 4 (emphasis added).

71.     Under Maryland law, "[m]eal periods are included in computing hours of work if the individual is required to perform any duties during the meal period." Md. Code Regs. 09.12.41.10B.

72.     Under Massachusetts law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. Massachusetts Department of Labor Standards ("MDLS"), 454 CMR §§ 27.02 and 27.04(2); *see also DeVito v. Longwood Security Services, Inc.*, No. 2013-01724-BLS1 (December 23, 2016).

73.     Under Minnesota law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely freed of his or her employment duties for the entire meal break. The Minnesota Administrative Rules state:

21

Bona fide meal periods are not hours worked. Bona fide meal periods do not include rest periods such as coffee breaks or time for snacks. The employee must be completely relieved from duty for the purpose of eating regular meals. Thirty minutes or more is ordinarily long enough for a bona fide meal period. A shorter period may be adequate under special conditions. The employee is not completely relieved from duty if required to perform any duties, whether active or inactive, while eating. It is not necessary that an employee be permitted to leave the premises, if the employee is otherwise completely freed from duties during the meal period. *If the meal period is frequently interrupted by calls to duty, the employee is not relieved of all duties and the meal periods must be considered as hours worked.*

(emphasis added).

74.     Under Missouri law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. *See* Mo. Code Regs. Ann. tit. 8, § 30-4.010(1) ("the [Missouri Department of Labor and Industrial Relations], in interpreting and enforcing the Missouri Minimum Wage Law, will follow the written regulations established by the United States Department of Labor pertaining to the Fair Labor Standards Act, which are incorporated by reference."); *see also* 29 C.F.R. § 785.19(a) ("The employee must be *completely relieved* from duty for the purposes of eating regular meals . . . The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating").

75.     Under New Jersey law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties. N.J. Admin. Code tit. 12, § 56-12.3.

76.     Under New York law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. The employee is not completed relieved if he or she is required to perform any duties, whether active or inactive, while eating. If an employee is not completely relived of

22

his or her duties during the meal period, then the employer must pay the employee for period of time. *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 499 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

77.     Under Ohio law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. *Twaddle v. RKE Trucking Co.*, No. 2:04-CV-557, 2006 WL 840388, at *8 (S.D. Ohio Mar. 29, 2006) (interpreting both the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111, *et seq.* and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*).

78.     Under Pennsylvania law, "[t]he term [hours worked] includes . . . time during which an employee is employed or permitted to work; provided, however, that time allowed for meals shall be excluded unless the employee is required or permitted to work during that time." 34 PA. CODE § 231.1(b).

79.     Under Washington law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. The relevant administrative code states:

> Employees shall be allowed a meal period of at least thirty minutes which commences no less than two hours nor more than five hours from the beginning of the shift. ***Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer***.

Wash. Admin. Code § 296-126-092(1) (emphasis added).

80.     Under the West Virginia Wage Payment and Collection Act (WPCA), short rest breaks - i.e., breaks of five to 20 minutes - must be paid and counted toward hours worked. *See also* W. Va. Code R. § 42-8-11.3a ("When an employer authorizes one or more employee break times or meal times of twenty (20) consecutive minutes or less during a work day, the employer shall treat the break time or meal time as compensable time."). Under W. Va. Code R. § 42-8-

11.3b, "When an employer authorizes one or more employee break times or meal times, typically of thirty (30) consecutive minutes or more during a work day, the employer may treat the break time or meal time as non-work time."

81.     Defendants do not provide Hourly Managers with bona fide meal periods because they require the Hourly Managers to read and respond to work-related smartphone communications during their unpaid meal breaks.

82.     The work performed by Hourly Managers during their unpaid meal breaks takes substantial time, in the range of 5 minutes per shift or more, but Hourly Managers are not paid for this time.

83.     Because Hourly Managers are constantly interrupted by work-related smartphone communications during their unpaid meal breaks, which they are required to promptly read and respond to, they are deprived of the opportunity to take uninterrupted meal breaks lasting more than 20 consecutive minutes. In fact, due to the constant interruptions, the Hourly Managers' 60-minute meal breaks effectively operate as a series of five to 20 minute breaks, meaning that the entire 60-minute meal break is compensable under West Virginia law. Nevertheless, Defendants treat the entire 60-minute meal break as non-work time, and do not compensate the Hourly Managers for such time.

84.     Because Hourly Managers are constantly interrupted by work-related smartphone communications during their unpaid meal breaks, which they are required to promptly read and respond to, they are deprived of the opportunity to take uninterrupted meal breaks lasting 30 consecutive minutes or more, meaning that the entire 60-minute meal break is compensable under West Virginia law. Nevertheless, Defendants treat the entire 60-minute meal break as non-work time, and do not compensate the Hourly Managers for such time.

24

85.	Plaintiffs and the Hourly Managers work a rotating schedule requiring them to work five to six days per week and are required to close the retail store multiple times per week. For security reasons, Hourly Managers typically close the retail store in pairs, as it is rare for Hourly Managers to close the store alone.

86.	Pursuant to Defendants' policies, training and direction, Hourly Managers responsible for closing the retail store are required to perform a series of essential work tasks *after* their scheduled shift and *after* clocking out of the Kronos timekeeping system. After each shift and after clocking out, Hourly Managers responsible for closing the retail store must walk to the alarm system and arm the alarm by punching in a passcode. Then, the Hourly Managers must walk to the main entrance, and, subsequent to exiting the store, close the main entrance, lock it using a key, and ensure that the main entrance is securely locked. This post-shift process takes substantial time, in the range of 2 to 3 minutes per shift, but can take upwards of 10 to 15 minutes or more if the Hourly Managers encounter security issues while attempting to arm the alarm system.

87.	Oftentimes, when attempting to arm the alarm system, the system will display a warning or error message alerting the Hourly Managers of a security issue, such as a partially open or unlocked door, that needs to be resolved before the system can be properly armed. The Hourly Managers must then walk to the area of the store that is the source of the security issue, resolve the issue, walk back to the main entrance where the alarm system is located, and arm the alarm system.

88.	After arming the alarm system and securely locking the main entrance, it is not unusual for the Hourly Managers to observe unattended shopping carts or flatbeds in the parking lot because the hourly staff responsible for the carts either failed to retrieve them or retrieved them

25

early and then there were late customers bringing carts out. Thus, it is not atypical for Hourly Managers to retrieve and collect shopping carts and flatbeds even after having already clocked out and locking the main entrance.

89.     The unpaid off-the-clock work performed by Plaintiffs and Hourly Managers after their shifts directly benefits Defendants, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Hourly Managers.

### E.     Off-the-Clock Smartphone Communications

90.     In addition to the pre-shift, meal-period, and post-shift off-the-clock work activities described above, Hourly Managers are also required to perform substantial amounts of off-the-clock work when they are off-duty and not at the retail store.

91.     Pursuant to Defendants' policies, training and direction, Hourly Managers are required to read and respond to work-related smartphone communications during non-work hours.

92.     Many of the Hourly Managers were required to download onto their smartphones the WhatsApp Messenger ("WhatsApp") application, the GroupMe Messenger ("GroupMe") application, or other similar applications to promptly respond to any work-related messages that are directed to them or that are otherwise within their sphere of responsibility.

93.     These applications use the internet to send messages, images, audio or video. The applications are very similar to text messaging services, however, because the applications use internet to send messages, the cost of using the applications is significantly less than texting. Further, the applications allows users to communicate with each other in groups of individual users, meaning users can communicate with multiple people at the same time.

26

94.     Even those Hourly Managers that were not directly instructed to download WhatsApp, GroupMe, or similar applications, were required to respond to phone calls and text messages during non-work hours, including during meal breaks.

95.     Reading and responding to these work-related messages during non-work hours took a substantial time, generally anywhere from 10 to 20 or more minutes per day, but Hourly Managers are not compensated for this time.

### F.     Defendants Benefited from the Uncompensated Off-the-Clock Work

96.     At all relevant times, Defendants directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above-described off-the-clock activities performed by Hourly Managers.

97.     At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their Hourly Managers.

98.     At all relevant times, Defendants were able to track the amount of time Hourly Managers spent in connection with the off-the-clock activities. However, Defendants failed to do so and failed to compensate Hourly Managers for the off-the-clock work they performed.

99.     At all relevant times, Hourly Managers were non-exempt employees.

100.     At all relevant times, Defendants used their attendance and adherence policies against the Hourly Managers in order to pressure them into performing the off-the-clock work.

101.     At all relevant times, Defendants' policies and practices deprived Hourly Managers of wages owed for the off-the-clock activities they performed. Because Defendants' Hourly Managers typically worked 40 hours or more in a workweek, Defendants' policies and practices also deprived them of overtime pay.

102.     Defendants knew or should have known that the time spent by Hourly Managers in connection with the off-the-clock activities was compensable under the law. Indeed, in light of Defendants' express instructions to the Hourly Managers that they were required to (a) perform a perimeter check of the premises before entering the retail store and clocking in, and (b) promptly respond to work-related smartphone communications during non-work hours, there is no conceivable way for Defendants to establish that they acted in good faith.

103.     Despite knowing Hourly Managers performed work before and after their scheduled shifts and during their unpaid meal breaks, Defendants failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

104.     Unpaid wages related to the off-the-clock work described herein are owed to Hourly Managers at the mandated overtime premium of one and one-half their regular hourly rate when Hourly Managers regularly worked in excess of 40 hours in a workweek.

### G.     The Off-the-Clock Work Results in Viable Overtime Claims in Weeks When the Hourly Managers Worked More than 40 Hours

105.     Plaintiffs and the Hourly Managers regularly worked hours for which they were not paid, as described in this Complaint. During many workweeks, this unpaid time, when added to the total time worked during that workweek, exceeded 40 hours. In such workweeks, the off-the-clock work described herein constitutes unpaid overtime wages, for which Plaintiffs and the Hourly Managers are entitled to be paid at one and one-half times the regular hourly rates at which they are employed.

### H.     The Off-the-Clock Work Results in Viable "Gap Time" Claims in Weeks When the Hourly Managers Worked Less than 40 Hours

106.     "Gap Time" is the time for which employees worked and were not paid, but when added to the total time worked still would not make that total exceed the threshold for overtime hours. For example, if an employee was paid for working 37.5 hours in a given workweek, but

28

worked an additional 2.5 hours off the clock, the unpaid time between 37.5 and 40 hours constitutes unpaid "gap time" wages.

107.    Plaintiffs and the Hourly Managers regularly worked hours for which they were not paid, as described in this Complaint. During some workweeks, this unpaid time, when added to the total time worked during that workweek, did not exceed 40 hours. In such workweeks, the off-the-clock work described herein constitutes unpaid "gap time" wages, for which Plaintiffs and the Hourly Managers are entitled to be paid at the regular hourly rates at which they are employed.

**I.    Plaintiffs' and Defendants' Employment Contracts and Defendants' Breach**

108.    Shortly before Plaintiffs began working for Defendants, Defendants offered Plaintiffs the opportunity to work for Defendants as Hourly Managers.

109.    In consideration for Plaintiffs' work as Hourly Managers, Defendants promised to pay Plaintiffs an hourly wage for each hour they worked for Defendants.

110.    Plaintiffs accepted Defendants' offers of employment and began working for Defendants, creating a valid contract between Defendants and Plaintiffs whereby Defendants were obligated to pay Plaintiffs their regular hourly rates of pay for each hour that they worked for Defendants, including the off-the-clock work described herein.

111.    Throughout their employment with Defendants as Hourly Managers, Plaintiffs performed all of the work required by Defendants, including the off-the-clock work described herein. In performing this work, Plaintiffs fulfilled all of their duties under the contract.

112.    However, throughout Plaintiffs' entire employment with Defendants, Defendants repeatedly and systematically breached the contracts by not paying Plaintiffs their regular hourly rates of pay for the off-the-clock work described herein. Defendants' failure to pay Plaintiffs for each hour they performed the work required of them as Hourly Managers was a material breach by Defendants.

29

113. Because of Defendants' breaches, Plaintiffs were deprived of wages owed to them under the contracts, including unpaid "gap time" wages.

114. Upon information and belief, all of the other Hourly Managers who worked for Defendants had a similar valid contract with Defendants.

115. Upon information and belief, Defendants repeatedly and systematically breached their contracts with all the other Hourly Managers they employed in the same way that they breached their contracts with Plaintiffs.

116. Defendants' contractual promises to pay Plaintiffs and each Hourly Manager's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the Hourly Managers.

117. Plaintiffs and the Hourly Managers are owed wages at their contractual hourly wage rates for the time that they worked off the clock during their employment with Defendants, including unpaid "gap time" wages.

118. The Hourly Managers earned these wages at the moment they performed the off-the-clock work, and the wages were due to be paid to the Hourly Managers no later than the pay day for the period in which the off-the-clock work was performed.

119. Despite the fact that the Hourly Managers performed the off-the-clock work before and after their scheduled shifts and during their unpaid meal breaks, these off-the-clock hours were not peripheral tasks for which they were owed additional compensation. Instead, the off-the-clock work, which was performed by the Hourly Managers pursuant to Defendants' express instructions, constituted principal work activities that were integral and indispensable to the Hourly Managers' work, and Defendants were contractually obligated to pay the Hourly Managers for this time at the regular hourly rates at which they were employed. The fact that Defendants deliberately chose not

30

to compensate the Hourly Managers for this work, and that the off-the-clock work was performed before and after the Hourly Managers' scheduled shifts and during their unpaid meal breaks, does not somehow relieve Defendants of their contractual obligations to pay the Hourly Managers for this time.

120.    Defendants were contractually obligated to pay the Hourly Managers their regular rates of pay for *all hours worked*, including hours worked before after their scheduled shifts and during their unpaid meal breaks.

## RULE 23 CLASS ACTION ALLEGATIONS

121.    Plaintiffs bring this proceeding pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following putative Classes (hereinafter collectively referred to as the "Rule 23 Classes"):

The Rule 23 Arizona Class is defined as follows:

> ***All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Arizona at any time during the applicable statutory period.***

The Rule 23 Arkansas Class is defined as follows:

> ***All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Arkansas at any time during the applicable statutory period.***

The Rule 23 Colorado Class is defined as follows:

> ***All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Colorado at any time during the applicable statutory period.***

The Rule 23 Connecticut Class is defined as follows:

> ***All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Connecticut at any time during the applicable statutory period.***

The Rule 23 Illinois Class is defined as follows:

31

> *All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Illinois at any time during the applicable statutory period*.

The Rule 23 Kentucky Class is defined as follows:

> *All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Kentucky at any time during the applicable statutory period*.

The Rule 23 Maryland Class is defined as follows:

> *All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Maryland at any time during the applicable statutory period*.

The Rule 23 Massachusetts Class is defined as follows:

> *All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Massachusetts at any time during the applicable statutory period*.

The Rule 23 Minnesota Class is defined as follows:

> *All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Minnesota at any time during the applicable statutory period*.

The Rule 23 Missouri Class is defined as follows:

> *All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Missouri at any time during the applicable statutory period*.

The Nevada Class is defined as follows:

> *All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Nevada at any time during the applicable statutory period*.

The Rule 23 New Jersey Class is defined as follows:

> *All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in New Jersey at any time during the applicable statutory period*.

The Rule 23 New Mexico Class is defined as follows:

32

*All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in New Mexico at any time during the applicable statutory period.*

The Rule 23 New York Class is defined as follows:

*All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in New York at any time during the applicable statutory period.*

The Rule 23 Ohio Class is defined as follows:

*All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Ohio at any time during the applicable statutory period.*

The Rule 23 Pennsylvania Class is defined as follows:

*All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Pennsylvania at any time during the applicable statutory period.*

The Rule 23 South Carolina Class is defined as follows:

*All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in South Carolina at any time during the applicable statutory period.*

The Rule 23 Washington Class is defined as follows:

*All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in Washington at any time during the applicable statutory period.*

The Rule 23 West Virginia Class is defined as follows:

*All similarly situated current and former Hourly Managers who work or have worked for Defendants at any of their retail locations in West Virginia at any time during the applicable statutory period.*

Plaintiffs reserve the right to amend the putative class definitions as necessary.

122. Excluded from the Rule 23 Classes are Defendants' exempt executives and administrative and professional employees, including computer professionals and outside sales persons.

33

123.   *Numerosity:*   The putative Class members from Arizona, Arkansas, Colorado, Connecticut, Illinois, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Jersey, New Mexico, New York, Ohio, Pennsylvania, South Carolina, Washington and West Virginia are so numerous that joinder of all members in the case, or even by each state class, would be impracticable.

124.   *Commonality/Predominance:*   There is a well-defined community of interest among members of the Rule 23 Classes and common questions of *both* law and fact predominate in the action over any questions affecting individual members.   These common legal and factual questions, include, but are not limited to, the following:

a.   Whether the off-the-clock time worked by the members of the Rule 23 Classes in connection with the activities described in this Complaint is compensable time;

b.   Whether the members of the Rule 23 Classes are owed wages under the law(s) pleaded for the off-the-clock time worked in connection with the activities described in this Complaint;

c.   Whether Defendants engaged in a policy or practice of failing to record off the clock work/time for each member of the Rule 23 Classes regular wages or minimum wage for each non-overtime hour worked;

d.   Whether Defendants engaged in a policy or practice of failing to pay each member of the Rule 23 Classes regular wages or minimum wage for each non-overtime hour worked;

e.   Whether Defendants engaged in a policy or practice of enacting and auditing a system for capturing the off the clock work/time as described in this Complaint for each member of the Rule 23 Classes;

f.   Whether Defendants engaged in a policy or practice of failing to pay each member of the Rule 23 Classes overtime compensation for each overtime hour worked; and

g.   Whether Defendants should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 Classes.

125. *Typicality:* Plaintiffs' claims are typical of claims of the Rule 23 Classes they seek to represent in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. In each respective state, Plaintiffs' claims arise from Defendants' similar policies, practices, and course of conduct as all other Class members' claims and Plaintiffs' legal theories are based on the same or similar facts.

126. *Adequacy:* Plaintiffs will fully and adequately protect the interests of the Rule 23 Classes and have retained national counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Classes.

127. *Superiority:* A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for the members of the Rule 23 Classes to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

128. This case will be manageable as a Rule 23 Class action, or sub-classes. Plaintiffs and their counsel know of no unusual difficulties in this case and Defendants and its corporate clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

129. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

130.     Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Classes and declaratory relief is appropriate in this case with respect to the Rule 23 Classes as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**RULE 23 ARIZONA CLASS ACTION**
**VIOLATIONS OF THE ARIZONA WAGE ACT, A.R.S. §§ 23-350 *et seq.***
**("ARIZONA WAGE ACT")**

131.     The Arizona Plaintiffs re-allege and incorporate all previous paragraphs herein.

132.     The Arizona Wage Act, A.R.S. § 23-351(c), provides: "[e]ach employer, on each of the regular paydays, shall pay to the employees all wages due the employees up to that date."

133.     The Arizona Wage Act, A.R.S. § 23-355(a), provides that "if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages."

134.     At all times relevant to the action, Defendants were employers of Plaintiffs and the Rule 23 Arizona Class members within the meaning of the term under the Arizona Wage Act.

135.     At all times relevant to the action, the Arizona Plaintiffs and the Arizona Rule 23 Class members were employees of Defendants within the meaning of the term under the Arizona Wage Act.

136.     At all times relevant to the action, Defendants promised to pay the Arizona Plaintiffs and the Rule 23 Arizona Class members their wages for all hours worked within the meaning of the term under the Arizona Wage Act.

36

137. At all times relevant to the action, Defendants promised to pay and were required to pay the Arizona Plaintiffs and the Rule 23 Arizona Class Members overtime wages at the rate of one and one-half their regular rate of pay for all hours over 40 hours in the workweek.

138. Defendants violated the Arizona Wage Act by regularly and repeatedly failing to compensate the Rule 23 Arizona Class for the time spent on the work activities described in this Complaint.

139. Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

140. As a result, the Rule 23 Arizona Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Arizona Class is entitled to recover unpaid wages owed, treble damages, plus costs and attorneys' fees, interest, and other appropriate relief under the Arizona Wage Act in an amount to be proven at trial.

**COUNT II**
**RULE 23 ARKANSAS CLASS ACTION**
**VIOLATIONS OF THE ARKANSAS MINIMUM WAGE ACT, ARK. CODE ANN. §§ 11-4-201 *et seq.*, ARK. CODE R. §§ 010.14-100-113 ("ARKANSAS WAGE ACTS")**

141. The Arkansas Plaintiffs re-allege and incorporate all previous paragraphs herein.

142. The Minimum Wage Act of the State of Arkansas provides that employees are entitled to minimum wage, A.C.A. § 11-4-210 and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). A.C.A. § 11-4-211.

37

143.     A.C.A. § 11-4-218 allows an employee who has not been paid in accordance with the Minimum Wage Act of the State of Arkansas to bring a civil action to recover all unpaid amounts, plus liquidated damages, costs, and reasonable attorneys' fees.

144.     At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Arkansas Minimum Wage Act, §§ 11-4-201 *et seq.*, and Ark. Code. R. §§ 010.14-100-113 (collectively referred to as the "Arkansas Wage Acts"), and the Arkansas Plaintiffs and the Rule 23 Arkansas Class are employees entitled to the Arkansas Wage Acts' protections. *See* Ark. Code Ann. § 11-4-203.

145.     The Arkansas Wage Acts entitle employees to compensation for every hour worked in a workweek. *Id.*; Ark. Code R. §§ 010.14-100-113.

146.     Defendants violated the Arkansas Wage Acts by regularly and repeatedly failing to compensate the Arkansas Plaintiffs and the Rule 23 Arkansas Class for the time spent on the work activities described in this Complaint.

147.     Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

148.     As a result, the Rule 23 Arkansas Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Arkansas Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Arkansas Wage Acts at an amount to be proven at trial.

### COUNT III
### RULE 23 COLORADO CLASS ACTION
### VIOLATIONS OF THE COLORADO WAGE CLAIM ACT, COL. REV. STAT. §§ 8-4-101 *et seq.*; COLORADO MINIMUM WAGES OF WORKERS ACT, COL. REV. STAT. §§ 8-6-101, *et seq.*; COLORADO MINIMUM WAGE ORDER 35, 7 CCR 1103-1 ("COLORADO WAGE ACTS")

149.     The Colorado Plaintiffs re-allege and incorporate all previous paragraphs herein.

150.    Pursuant to Colorado's "Minimum Wage Act," C.R.S. §§ 8-6-101, *et seq.*, the Director of the Colorado Division of Labor is authorized to issue orders establishing minimum wages for Colorado employees. C.R.S. § 8-6-107.

151.    Pursuant to Colorado Minimum Wage Order Number 35, employers must pay their employees minimum wages "for all hours worked," 7 CCR 1103-1(3), as well as time and one-half of the regular rate of pay for any work in excess of: (1) forty (40) hours per workweek; (2) twelve (12) hours per workday; or (3) twelve (12) consecutive hours without regard to the starting and ending time of the workday (excluding duty free meal periods), whichever calculation results in the greater payment of wages.

152.    A Colorado employee receiving less than the legal minimum wage applicable to such employee is entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage, together with costs of suit, notwithstanding any agreement to work for a lesser wage.  C.R.S. § 8-6-118.

153.    The Colorado Wage Claim Act, C.R.S. §§ 8-4-101, *et seq*. provides "[a]ll wages or compensation, other than those mentioned in section 8-4-109, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer…." C.R.S. § 8-4-103(1)(a).

154.    An employee whose wages have not been paid as required by the Colorado Wage Claim Act may bring a civil action to recover his or her unpaid wages, plus reasonable attorneys' fees and costs. C.R.S. § 8-4-110.

155.    At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Colorado Wage Claim Act, Col. Rev. Stat. §§ 8-4-101 *et seq.*,

39

Colorado Minimum Wages of Workers Act, Col. Rev. Stat. §§ 8-6-101, *et seq.*, and Colorado Minimum Wage Order 35, 7 CCR 1103-1 (collectively referred to as the "Colorado Wage Acts") and the Colorado Plaintiffs and the Rule 23 Colorado Class are employees entitled to the Colorado Wage Acts' protections.

156.    The Colorado Wage Acts entitle employees to compensation for every hour worked in a workweek.

157.    The Colorado Wage Acts entitle employees to an uninterrupted and duty free meal period of at least a thirty minute duration when the scheduled work shift exceeds 5 consecutive hours of work.

158.    The Colorado Wage Acts entitle employees to be paid their wages earned in a timely manner.

159.    Defendants violated the Colorado Wage Acts by regularly and repeatedly failing to compensate the Colorado Plaintiffs and the Rule 23 Colorado Class for the time spent on the work activities described in this Complaint.

160.    Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

161.    As a result, the Rule 23 Colorado Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Colorado Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Colorado Wage Acts at an amount to be proven at trial.

40

## COUNT IV
## RULE 23 CONNECTICUT CLASS ACTION
## VIOLATIONS OF THE CONNECTICUT MINIMUM WAGE ACT, CONN. GEN. STAT. §§ 31-58, *et seq.*; CONNECTICUT WAGE COLLECTION STATUTES, CONN. GEN. STAT. §§ 31-70, *et seq.* ("CONNECTICUT WAGE ACTS")

162.    The Connecticut Plaintiff re-alleges and incorporates all previous paragraphs herein.

163.    Under the Connecticut Minimum Wage Act, Conn. Gen. Stat. § 31-58 *et seq.* an employer is prohibited from paying "an employee less than the minimum fair wage or overtime wage." Conn. Gen. Stat. § 31-60(a).

164.    Conn. Gen. Stat. § 31-76c provides "No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

165.    Pursuant to Conn. Gen. Stat. § 31-68(a), "[i]f any employee is paid by his employer less than the minimum fair wage or overtime wage to which he is entitled under sections 31-58, 31-59 and 31-60 or by virtue of a minimum fair wage order he may recover, in a civil action, twice the full amount of such minimum wage less any amount actually paid to him by the employer, with costs and … reasonable attorney's fees…."

166.    Under Connecticut's Wage Acts, "each employer, or the agent or representative of an employer, shall pay weekly all moneys due each employee on a regular pay day…." Conn. Gen. Stat. § 31-71b(a)(1).

167.    An employee whose wages have not been paid in accordance with Conn. Gen. Stat. § 31-71b(a)(1) "may recover, in a civil action, twice the full amount of such wages, with costs and … reasonable attorney's fees…." Conn. Gen. Stat. § 31-72.

41

168. At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Connecticut Wage Acts and the Connecticut Plaintiff and the Rule 23 Connecticut Class are employees entitled to the Connecticut Wage Acts' protections.

169. The Connecticut Wage Acts entitle employees to compensation for every hour worked in a workweek.

170. Defendants violated the Connecticut Wage Acts by regularly and repeatedly failing to compensate the Connecticut Plaintiff and the Rule 23 Connecticut Class for the time spent on the work activities described in this Complaint.

171. Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

172. As a result, the Rule 23 Connecticut Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Connecticut Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Connecticut Wage Acts at an amount to be proven at trial.

## COUNT V
## RULE 23 ILLINOIS CLASS ACTION
## VIOLATIONS OF THE ILLINOIS MINIMUM WAGE LAW, §§ 820 ILCS 105/1, *et seq.* ("ILLINOIS WAGE ACT")

173. The Illinois Plaintiffs re-allege and incorporate all previous paragraphs herein.

174. The Illinois Minimum Wage Law, §§ 820 ILCS 105/1 *et. seq.* requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay of hours worked in excess of forty (40) per week. *See* § 820 ILCS 105/4; 820 ILCS 105/4a.

175. 820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "the employee may recover in a civil action the amount of any such underpayments together with costs and such reasonable attorney's fees as may be allowed by

42

the Court, and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid."

176.    At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Illinois Minimum Wage Law and the Illinois Plaintiffs and Rule 23 Illinois Class are employees entitled to its protections.

177.    The Illinois Minimum Wage Law entitles employees to compensation for every hour worked in a workweek.

178.    The Illinois Minimum Wage Law entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week. *See* § 820 ILCS 105/4a.

179.    Defendants violated the Illinois Minimum Wage Law by regularly and repeatedly failing to compensate the Illinois Plaintiffs and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

180.    Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

181.    As a result, the Rule 23 Illinois Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Illinois Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Illinois Minimum Wage Law at an amount to be proven at trial.

## COUNT VI
## RULE 23 ILLINOIS CLASS ACTION
## VIOLATIONS OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT §§ 820 ILCS 115/1, *et seq*. ("ILLINOIS WAGE ACT")

182.    The Illinois Plaintiffs re-allege and incorporate all previous paragraphs herein.

43

183.    The Illinois Wage Payment and Collection Act, §§ 820 ILCS 115/1 *et seq.* requires that "[a]ll wages earned by any employee … shall be paid." 820 ILCS 115/4.

184.    Under 820 ILCS 115/14(a), an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

185.    At all times relevant to the action, Defendants were employers covered by the mandates of the Illinois Wage Payment and Collection Act and the Illinois Plaintiffs and Rule 23 Illinois Class are employees entitled to its protections.

186.    Defendants violated the Illinois Wage Payment and Collection Act by regularly and repeatedly failing to compensate the Illinois Plaintiffs and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

187.    Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

188.    As a result, the Rule 23 Illinois Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Illinois Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief in an amount to be proven at trial.

## COUNT VII
## RULE 23 ILLINOIS CLASS ACTION
## VIOLATIONS OF THE ILLINOIS ONE DAY REST IN SEVEN ACT, § 820 ILCS 140/3 ("ILLINOIS WAGE ACT")

189.    The Illinois Plaintiffs re-allege and incorporate all previous paragraphs herein.

44

190.     The Illinois One Day Rest in Seven Act entitles employees to a 20 minute meal period beginning no later than 5 hours after the start of the work period during each shift in which the employee works for 7 ½ continuous hours or longer. *See* § 820 ILCS 140/3.

191.     Defendants violated the Illinois One Day Rest in Seven Act by failing to provide proper meal periods, as described in this Complaint.

192.     Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

193.     As a result, the Rule 23 Illinois Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Illinois Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief in an amount to be proven at trial.

**COUNT VIII**
**RULE 23 KENTUCKY CLASS ACTION**
**VIOLATIONS OF THE KENTUCKY WAGE AND HOURS LAWS, KY. REV. STAT.**
**ANN., §§ 337.010, *et seq.* ("KENTUCKY WAGE ACT")**

194.     The Kentucky Plaintiff re-alleges and incorporates all previous paragraphs herein.

195.     Kentucky's Wage and Hours Act, KRS §§ 337.010, *et. seq.*, requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay of hours worked in excess of forty (40) per week. *See* KRS § 337.275; KRS § 337.285.

196.     KRS § 337.020 provides that "Every employer doing business in this state shall, as often as semimonthly, pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days prior to the date of that payment."

197.     Under KRS § 337.385, an employee who has not been paid in accordance with Kentucky's Wages and Hours Act may bring a civil action to recover "full amount of such wages and overtime compensation, less any amount actually paid to such employee by the employer, for

an additional equal amount as liquidated damages, and for costs and such reasonable attorney's fees as may be allowed by the court."

198.    At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Kentucky Wage Act and the Kentucky Plaintiff and the Rule 23 Kentucky Class are employees entitled to the Kentucky Wage Act's protections.

199.    The Kentucky Wage Act entitles employees to compensation for every hour worked in a workweek.

200.    The Kentucky Wage Act entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week. *See* Ky. Rev. Stat. Ann. § 337.285. The Kentucky Wage Act also entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for any work performed on the seventh work day of any workweek. *See* Ky. Rev. Stat. Ann. § 337.050.

201.    The Kentucky Wage Act entitles employees to a reasonable uninterrupted meal period during each work shift. *See* Ky. Rev. Stat. Ann. § 337.355.

202.    Defendants violated the Kentucky Wage Act by regularly and repeatedly failing to compensate the Kentucky Plaintiff and the Rule 23 Kentucky Class for the time spent on the work activities described in this Complaint.

203.    Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

204.    As a result, the Rule 23 Kentucky Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Kentucky Class is entitled to recover unpaid

wages owed, plus costs and attorneys' fees, and other appropriate relief under the Kentucky Wage

Act at an amount to be proven at trial.

**COUNT IX**
**RULE 23 MARYLAND CLASS ACTION**
**VIOLATIONS OF THE MARYLAND WAGE AND HOUR LAW, MD. CODE ANN.**
**LAB. & EMPL., §§ 3-401, *et seq.*; MD. CODE ANN. LAB. & EMPL. § 3-505**
**("MARYLAND WAGE ACTS")**

205.    The Maryland Plaintiffs re-allege and incorporate all previous paragraphs herein.

206.    At all times relevant to the action, Defendants were employers covered by the

overtime and wage mandates of the Maryland Wage and Hour Law, Md. Code Ann. Lab. & Empl.,

§§ 3-401, *et seq.*, and Md. Code Ann. Lab. & Empl., §§ 3-505 ("MWHL"), and the Rule 23 Class

are employees entitled to the MWHL's protections. *See* Md. Code Ann. Lab. & Empl., §§ 3-401.

207.    The Maryland Wage Acts entitle employees to compensation for every hour worked

in a workweek. *See* Md. Code Ann. Lab. & Empl., §§ 3-505.

208.    The Maryland Wage Acts entitle employees to overtime compensation at a rate

equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of

40 hours per week. *See* Md. Code Ann. Lab. & Empl., §§ 3-415, 3-420.

209.    Defendants violated the Maryland Wage Acts by regularly and repeatedly failing to

compensate the Maryland Plaintiffs and the Rule 23 Maryland Class for the time spent on the work

activities described in this Complaint.

210.    Defendants' uniform policy and practice, as described above, was/is willful,

intentional, unreasonable, arbitrary, and in bad faith.

211.    As a result, the Rule 23 Maryland Class has and will continue to suffer loss of

income and other damages.  Accordingly, the Rule 23 Maryland Class is entitled to recover unpaid

47

wages owed, plus costs and attorneys' fees, and other appropriate relief under the Maryland Wage

Acts at an amount to be proven at trial.

**COUNT X**
**RULE 23 MASSACHUSETTS CLASS ACTION**
**VIOLATIONS OF THE MASSACHUSETTS MINIMUM FAIR WAGES ACT, M.G.L.**
**CH 151, §§ 1, _et seq._ ("MASSACHUSETTS WAGE ACT")**

212.    The Massachusetts Plaintiff re-alleges and incorporates all previous paragraphs

herein.

213.    Pursuant to the Massachusetts Minimum Fair Wages Act, M.G.L. ch. 151, §§ 1, _et

seq._, the Massachusetts Department of Labor is authorized to promulgate orders and regulations

requiring employers to pay minimum wage and overtime for hours in excess of forty (40) per week.

_See_ M.G.L. ch. 151, § 7.

214.    The Massachusetts Department of Labor's regulation 454 CMR § 27.03(1) requires

employers to pay minimum wages for all "working time," which is defined as "all time during

which an employee is required to be on the employer's premises or to be on duty, or to be at the

prescribed work site or at any other location, and any time worked before or after the end of the

normal shift to complete the work." 454 CMR § 27.02.

215.    Under Massachusetts law, "[a]ny time worked before or after the end of the normal

shift to complete the work" is compensable working time. 454 CMR § 27.02.

216.    Massachusetts regulations also require employers to pay employees time-and-a-

half of their regular rate of pay for all hours worked each week in excess of forty (40). 454 CMR

§ 27.03(3).

217.    An employee whose wages have not been paid as required by the Massachusetts

Minimum Fair Wages Act may bring "a civil action for injunctive relief, for any damages incurred

and for the full amount of the minimum wages less any amount actually paid to him by the

48

employer," as well as "treble damages, as liquidated damages, for any loss of minimum wage and shall also be awarded the costs of the litigation and reasonable attorneys' fees." M.G.L. ch. 151, § 20.

218.    At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Massachusetts Wage Act and the Massachusetts Plaintiff and the Rule 23 Massachusetts Class are employees engaged in an occupation entitled to the Massachusetts Wage Act's protections.

219.    The Massachusetts Wage Act entitles employees to compensation for every hour worked in a workweek.

220.    Defendants violated the Massachusetts Wage Act by regularly and repeatedly failing to compensate the Massachusetts Plaintiff and the Rule 23 Massachusetts Class for the time spent on the work activities described in this Complaint.

221.    Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

222.    As a result, the Rule 23 Massachusetts Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Massachusetts Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Massachusetts Wage Act at an amount to be proven at trial.

**COUNT XI**
**RULE 23 MASSACHUSETTS CLASS ACTION**
**VIOLATIONS OF M.G.L. CH 151, §1A,** *et seq.*
**("MASSACHUSETTS OVERTIME ACT")**

223.    The Massachusetts Plaintiff re-alleges and incorporates all previous paragraphs herein.

224.     Pursuant to the Massachusetts Overtime Act and governing regulations, employers must compensate employees for hours worked in excess of forty in a workweek at a rate not less than one-and-one-half times their regular rate of pay.  M.G.L. ch. 151 §1A; 454 CMR § 27.03(3).

225.     For purposes of calculating hours worked, the Massachusetts Department of Labor's regulation 454 CMR § 27.02 defines "working time" as "all time during which an employee is required to be on the employer's premises or to be on duty, or to be at the prescribed work site or at any other location, and any time worked before or after the end of the normal shift to complete the work." 454 CMR § 27.02.

226.     An employee whose wages have not been paid as required by the Massachusetts Overtime Act may bring "a civil action for injunctive relief, for any damages incurred, and for the full amount of the overtime rate of compensation less any amount actually paid to him by the employer."  An employee "who prevails in such an action shall be awarded treble damages, as liquidated damages, for lost overtime compensation and shall also be awarded the costs of the litigation and reasonable attorneys' fees.  M.G.L. ch. 151 §1B.

227.     At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Massachusetts Overtime Act and the Massachusetts Plaintiff and the Rule 23 Massachusetts Class are employees engaged in an occupation entitled to the Massachusetts Overtime Act's protections.

228.     The Massachusetts Overtime Act entitles non-exempt employees to overtime compensation for every hour worked in excess of forty in a workweek.

229.     Defendants violated the Massachusetts Overtime Act by regularly and repeatedly failing to pay overtime to the Massachusetts Plaintiff and the Rule 23 Massachusetts Class for hours worked in excess of forty in a workweek.

50

230. Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

231. As a result, the Rule 23 Massachusetts Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Massachusetts Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Massachusetts Wage Act at an amount to be proven at trial.

**COUNT XII**
**RULE 23 MASSACHUSETTS CLASS ACTION**
**VIOLATIONS OF M.G.L. CH 149 §148**
**("MASSACHUSETTS TIMELY PAYMENT OF WAGES ACT")**

232. The Massachusetts Plaintiff re-alleges and incorporates all previous paragraphs herein.

233. Defendants are employers within the meaning of the Massachusetts Timely Payment of Wages Act.

234. The Massachusetts Plaintiff and the members of the Rule 23 Massachusetts Class are employees engaged in an occupation within the meaning of the Massachusetts Timely Payment of Wages Act.

235. The Massachusetts Timely Payment of Wages Act requires Defendants to pay the Massachusetts Plaintiff and the members of the Rule 23 Massachusetts Class all wages they are owed, at the correct rate, and within a certain time period.

236. Defendants violated these requirements by not paying wages earned by the Massachusetts Plaintiffs and the members of the Rule 23 Massachusetts Class at the appropriate rate and the appropriate time.

237.    As a result, the Massachusetts Plaintiff and the members of the Rule 23 Massachusetts Class are entitled to damages authorized by law, including lost wages, treble damages, attorneys' fees, interest, and costs.

**COUNT XIII**
**RULE 23 MINNESOTA CLASS ACTION**
**VIOLATION OF MINNESOTA PAYMENT OF WAGES ACT, MINN. STAT. § 181.14**
**("MINNESOTA WAGE ACTS")**

238.    The Minnesota Plaintiff re-alleges and incorporates all previous paragraphs herein.

239.    Defendants are employers as defined by Minn. Stat. § 181.171 subd. 4.

240.    The Minnesota Plaintiff and the Rule 23 Minnesota Class earned wages during the entire duration of their employment with Defendants.

241.    At the time of the Minnesota Plaintiff's and the Rule 23 Minnesota Class members' resignation, Defendants refused to pay Plaintiff's and the Rule 23 Minnesota Class members' earned wages.

242.    Defendants have not paid the Minnesota Plaintiff and the Rule 23 Minnesota Class wages earned for the hours worked as described above and more than 30 days have passed since their final day of employment.

243.    Pursuant to Minn. Stat. § 181.14(a), "the wages or commissions earned and unpaid at the time the employee quits or resigns shall be paid in full not later than the first regularly scheduled payday following the employee's final day of employment"; or, "[i]f the first regularly scheduled payday is less than five calendar days following the employee's final day of employment, full payment may be delayed until the second regularly scheduled payday but shall not exceed a total of 20 calendar days following the employee's final day of employment."

244.    The Minnesota Plaintiff made a written demand for his unpaid wages in written correspondence sent to Defendants on April 20, 2020. *See **Exhibit A***.

52

245. Despite the Minnesota Plaintiff's demand, Defendants refused to pay the Minnesota Plaintiff's unpaid wages.

246. Because Defendants failed to fulfill their obligations under Minn. Stat. § 181.14, Defendants are liable to the Minnesota Plaintiff for the statutory penalty described in Minn. Stat. § 181.14.

247. The statutory penalty owed is 15 days of the Minnesota Plaintiff's average daily earnings, which equals $1,320.00 (15 multiplied by $88.00).

248. Minn. Stat. § 181.171 subd. 1, provides that the Minnesota Plaintiff "may bring a civil action seeking redress for violations of sections . . . 181.14 . . . directly to district court."

249. Further, Minn. Stat. § 181.171 subd. 3, provides that as a remedy for a violation of the Act, "the court shall order an employer who is found to have committed a violation to pay to the aggrieved party reasonable costs, disbursements, witness fees, and attorneys' fees."

250. Defendants violated the Minnesota Payment of Wages Act by regularly and repeatedly failing to compensate the Rule 23 Minnesota Class the wages that they were due within 20 calendar days of their final day of employment.

## COUNT XIV
## RULE 23 MINNESOTA CLASS ACTION
## VIOLATION OF MINN. STAT. § 177.24 ("MINNESOTA WAGE ACTS")

251. The Minnesota Plaintiff re-alleges and incorporates all previous paragraphs herein.

252. Defendants are large employers as defined by Minn. Stat. § 177.24 subd. 1(a)(1).

253. The minimum wage rate for Minnesota in the 2017 calendar year was $9.50 per hour, the 2018 calendar year was $9.65 per hour, and the 2019 calendar year was $9.86 per hour. *See* Minn. Stat. § 177.24 subd. 1(f).

254. Minn. Stat. § 177.24 subd. 4 states:

No deductions, direct or indirect, may be made for the items listed below which when subtracted from wages would reduce the wages below the minimum wage: (1) purchased or rented uniforms or specially designed clothing required by the employer, by the nature of the employment, or by statute as a condition of employment, which is not generally appropriate for use except in that employment[.]

255.     Defendants unlawfully deducted wages from the Minnesota Plaintiff's and the Rule 23 Minnesota Class members' paychecks by regularly and routinely depriving them of their wages for the time spent on the work activities described in this Complaint.

256.     Defendants paid the Minnesota Plaintiff and the Rule 23 Minnesota Class less than the applicable minimum wage rate and "is liable to the employee for the full amount of the wages, gratuities, and overtime compensation, less any amount the employer is able to establish was actually paid to the employee and for an additional equal amount as liquidated damages." Minn. Stat. § 177.27 subd. 8.

257.     Because Defendants violated Minn. Stat. § 177.24 subd. 1(a)(1) and subd. 4, Defendants are liable "to pay to the employee or employees reasonable costs, disbursements, witness fees, and attorney fees."

### COUNT XV
### RULE 23 MINNESOTA CLASS ACTION
### VIOLATION OF MINN. STAT. § 177.25 ("MINNESOTA WAGE ACTS")

258.     The Minnesota Plaintiff re-alleges and incorporates all previous paragraphs herein.

259.     Defendants are large employers as defined by Minn. Stat. § 177.24 subd. 1(a)(1).

260.     Minn. Stat. § 177.25 subd. 1 states:

No employer may employ an employee for a workweek longer than 48 hours, unless the employee receives compensation for employment in excess of 48 hours in a workweek at a rate of at least 1-1/2 times the regular rate at which the employee is employed.

261.      Defendants unlawfully failed to pay overtime wages to the Minnesota Plaintiff and the Rule 23 Minnesota Class members who worked over 48 hours in a workweek by regularly and

routinely depriving them of their wages for the time spent on the work activities described in this Complaint.

262.    Defendants paid the Minnesota Plaintiff and the Rule 23 Minnesota Class less than the applicable minimum wage rate and "is liable to the employee for the full amount of the wages, gratuities, and overtime compensation, less any amount the employer is able to establish was actually paid to the employee and for an additional equal amount as liquidated damages." Minn. Stat. § 177.27 subd. 8.

263.    Because Defendants violated Minn. Stat. § 177.25 subd. 1, Defendants are liable "to pay to the employee or employees reasonable costs, disbursements, witness fees, and attorney fees."

**COUNT XVI**
**RULE 23 MISSOURI CLASS ACTION**
**VIOLATIONS OF THE MISSOURI MINIMUM WAGE LAW, §§ 290.500 R.S. MO., *et seq.* ("MISSOURI WAGE ACT")**

264.    The Missouri Plaintiff re-alleges and incorporates all previous paragraphs herein.

265.    Missouri's Minimum Wage Law provides that employees are entitled to minimum wage, § 290.502 R.S.Mo., and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). § 290.505 R.S.Mo.

266.    § 290.527 R.S.Mo., allows an employee may bring a civil action against to recover "for the full amount of the wage rate and an additional equal amount as liquidated damages, less any amount actually paid to the employee by the employer and for costs and such reasonable attorney fees as may be allowed by the court or jury."

267.    At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Missouri Wage Act and the Missouri Plaintiff and the Rule 23

55

Missouri Class are employees entitled to the Missouri Wage Act's protections. *See* § 290.500 R.S. Mo.

268.    The Missouri Wage Act entitles employees to compensation for every hour worked in a workweek. *Id.*

269.    The Missouri Wage Act entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week. *See* § 290.505 R.S. Mo.

270.    Defendants violated the Missouri Wage Act by regularly and repeatedly failing to compensate the Missouri Plaintiff and the Rule 23 Missouri Class for the time spent on the work activities described in this Complaint.

271.    Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

272.    As a result, the Rule 23 Missouri Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Missouri Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Missouri Wage Act at an amount to be proven at trial.

## COUNT XVII
## RULE 23 NEVADA CLASS ACTION
## VIOLATIONS OF THE NEVADA WAGE AND HOUR LAWS, NRS §§ 608.005, *et seq.*
## ("NEVADA WAGE ACT")

273.    The Nevada Plaintiffs re-allege and incorporate all previous paragraphs herein.

274.    The Nevada Wage Act, NRS §§ 608.005, *et seq.* provides that employees are entitled to minimum wages "for each hour the employee works," NRS § 608.016, and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40) or more than eight (8) hours in a day. NRS § 608.018.

275.     NRS § 608.140 provides that an employee has a private right of action for unpaid wages. *See Neville v. Eighth Judicial Dist. Court of Nev.*, 406 P.3d 499, 504 (Nev. 2017).

276.     At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Nevada Wage Act and the Nevada Plaintiffs and the Rule 23 Nevada Class are employees entitled to the Nevada Wage Act's protections. *See* NRS §§ 608.010, 608.011.

277.     The Nevada Wage Act entitles employees to compensation for every hour worked in a workweek. *See* NRS §§ 608.012, 608.016.

278.     The Nevada Wage Act entitles employees to overtime compensation at a rate equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per week or eight (8) hours per day assuming the employee earns less than 1.5 times the Nevada minimum wages. *See* NRS § 608.018.

279.     The Nevada Wage Act entitles employees to an uninterrupted and duty free meal period of at least a thirty minute duration when the scheduled work shift exceeds 8 consecutive hours of work. *See* NRS § 608.019.

280.     Defendants violated the Nevada Wage Act by regularly and repeatedly failing to compensate the Nevada Plaintiffs and the Rule 23 Nevada Class for the time spent on the work activities described in this Complaint.

281.     Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

282.     As a result, the Rule 23 Nevada Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Nevada Class is entitled to recover unpaid wages

owed, plus costs and attorneys' fees, and other appropriate relief under the Nevada Wage Act at an amount to be proven at trial.

<strong><u>COUNT XVIII</u></strong><br>
<strong><u>RULE 23 NEW JERSEY CLASS ACTION</u></strong><br>
<strong><u>VIOLATION OF NEW JERSEY WAGE AND HOUR LAWS, N.J.S.A. 34:11-56a, <em>et seq.</em></u></strong><br>
<strong><u>FAILURE TO PAY OVERTIME WAGES; VIOLATION OF NEW JERSEY WAGE</u></strong><br>
<strong><u>PAYMENT LAW, N.J.S.A. 34:11-4.1, <em>et seq.</em></u></strong><br>
<strong><u>FAILURE TO PAY STRAIGHT TIME WAGES ("NEW JERSEY WAGE ACTS")</u></strong>

283.    The New Jersey Plaintiffs re-allege and incorporate all previous paragraphs herein.

284.    At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the New Jersey Wage Acts, and the New Jersey Plaintiffs and the Rule 23 New Jersey Class are employees entitled to the protections of the New Jersey Wage Acts. N.J.S.A. 34:11-56a1(h) and N.J.S.A. 34:11-4.1b.

285.    Defendants "suffered or permitted" the New Jersey Plaintiffs and other Rule 23 New Jersey Class members to work and thus "employed" them within the meaning of N.J.S.A. 34:11-56a1(f).

286.    Under New Jersey law, employees are entitled to be paid for "all hours worked." N.J. Admin. Code tit. 12, § 56-5.1.

287.    Defendants violated the New Jersey Wage Act by regularly and repeatedly failing to compensate New Jersey Plaintiffs and the Rule 23 New Jersey Class for the time spent on the work activities described in this Complaint.

288.    Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

289.    As a result, the Rule 23 New Jersey Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 New Jersey Class is entitled to recover unpaid wages owed, including overtime wages, liquidated damages in the amount of 200% of the wages

58

owed, plus costs and attorneys' fees, and other appropriate relief under the New Jersey Wage Acts at an amount to be proven at trial. *See* N.J. Stat. § 34:11-58.

**COUNT XIX**
**RULE 23 NEW MEXICO CLASS ACTION**
**VIOLATIONS OF THE NEW MEXICO MINIMUM WAGE ACT, N.M. STAT. ANN. §§**
**50-4-19, *et seq.* ("NEW MEXICO MINIMUM WAGE ACT")**

290.     The New Mexico Plaintiffs re-allege and incorporate all previous paragraphs herein.

291.     The New Mexico Minimum Wage Act, N.M. Stat. Ann. §§ 50-4-19, *et seq.* provides that employees are entitled to minimum wages and overtime compensation calculated at time-and-a-half of their regular rate of pay for each hour worked each week in excess of forty (40). N.M. Stat. Ann. § 50-4-22.

292.     N.M. Stat. Ann. § 50-4-26 allows an employee who has not been paid in accordance with the New Mexico Minimum Wage Act to bring a civil action to recover all unpaid amounts, liquidated damages, interest, costs, and reasonable attorneys' fees.

293.     At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the New Mexico Minimum Wage Act, and the New Mexico Plaintiffs and the Rule 23 New Mexico Class are employees entitled to the New Mexico Minimum Wage Act's protections. *See* N.M. Stat. Ann. § 50-4-21.

294.     The New Mexico Minimum Wage Act entitles employees to compensation for every hour worked in a workweek. *See* N.M. Stat. Ann. §§ 50-4-19, *et seq.*; § 50-4-2.

295.     The New Mexico Minimum Wage Act entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week *See* N.M. Stat. Ann. § 50-4-22.

296.     Defendants violated the New Mexico Minimum Wage Act by regularly and repeatedly failing to compensate the New Mexico Plaintiffs and the Rule 23 New Mexico Class for the time spent on the work activities described in this Complaint.

297.     Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

298.     As a result, the Rule 23 New Mexico Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 New Mexico Class is entitled to recover unpaid wages owed, plus an amount equal to twice the unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the New Mexico Minimum Wage Act at an amount to be proven at trial.

**COUNT XX**
**RULE 23 NEW YORK CLASS ACTION**
**VIOLATIONS OF THE NEW YORK MINIMUM WAGE LAWS, 12 NYCRR §§ 142-1, *et seq.*, NEW YORK LABOR LAW, NY CLS LABOR § 160 *et seq.* and 12 N.Y. COMP. CODES. R. & REGS. PT. 125 *et seq.* ("NEW YORK WAGE ACTS")**

299.     The New York Plaintiff re-alleges and incorporates all previous paragraphs herein.

300.     The New York Minimum Wage Act, NY CLS Labor §§ 650, *et seq.* requires employers to pay their employees minimum wages "for each hour worked…." § 652.

301.     Pursuant to authorization by the New York Minimum Wage Act, the New York Department of Labor has promulgated a "Minimum Wage Order for Miscellaneous Industries and Occupations," 12 N.Y.C.R.R. §§ 142, *et seq.*, which requires, *inter alia*, that "An employer shall pay an employee for overtime at a wage rate of 1 ½ times the employee's regular rate…" §§ 142-2.2.

302.    NY CLS Labor § 663 allows an employee who has not been paid in accordance with the New York Minimum Wage Act to bring a civil action to recover all unpaid amounts, liquidated damages, interest, costs, and reasonable attorneys' fees.

303.    New York's Wage Theft Prevention Act (and previously the Unpaid Wages Prohibition Act), NY CLS Labor §§ 191, *et seq.* ("New York Labor Law") provides that employees "shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer." NY CLS Labor § 191(d).

304.    NY CLS Labor § 198 allows an employee who has not been paid in accordance with New York's Wage Theft Prevention Act to bring a civil action to recover all unpaid amounts, liquidated damages, interest, costs, and reasonable attorneys' fees.

305.    At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the New York Wage Acts, and the New York Plaintiff and the Rule 23 New York Class are employees entitled to the New York Wage Acts' protections. *See* 12 NYCRR §142-2.14.

306.    The New York Wage Acts entitle employees to compensation for every hour worked in a workweek. *See* 12 NYCRR §142-2.1.

307.    The New York Wage Acts entitle employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week *See* 12 NYCRR §142-2.2.

308.    The New York Wage Acts entitle employees to 30 minute meal period during each work shift. *See* NY CLS Labor § 162.

309.     Defendants violated the New York Wage Acts by regularly and repeatedly failing to compensate the New York Plaintiff and the Rule 23 New York Class for the time spent on the work activities described in this Complaint.

310.     Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

311.     As a result, the Rule 23 New York Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 New York Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the New York Wage Acts at an amount to be proven at trial.

## COUNT XXI
## RULE 23 OHIO CLASS ACTION
## VIOLATIONS OF THE OHIO MINIMUM WAGE LAWS, OHIO REV.
## CODE ANN. §§ 4111.01, *et seq.* ("OHIO WAGE ACT")

312.     The Ohio Plaintiffs re-allege and incorporate all previous paragraphs herein.

313.     The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 hours in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1).

314.     The Ohio Plaintiffs and the Rule 23 Ohio Class were or have been employed by Defendants within the past three years and have been covered employees entitled to the protections of the Ohio Wage Act.

315.     At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Ohio Wage Act, and the Ohio Plaintiff and the Rule 23 Ohio Class are employees entitled to the Ohio Wage Act's protections. *See* O.R.C. Ann. § 4111.03.

316.     The Ohio Plaintiffs and Rule 23 Ohio Class have not been exempted from receiving overtime benefits under the Ohio Wage Act.

317.     The Ohio Wage Act entitles employees to compensation for every hour worked in a workweek. *See* O.R.C. Ann. § 4111.01.

318.     The Ohio Plaintiffs and the Rule 23 Ohio Class worked more than 40 hours in workweeks during times relevant to this case, however, Defendants violated the Ohio Wage Act by failing to pay the Ohio Plaintiffs and other Rule 23 Ohio Class members the full and proper overtime compensation for hours worked over 40 hours in a workweek.

319.     Defendants violated the Ohio Wage Act by regularly and repeatedly failing to compensate the Ohio Plaintiffs and the Rule 23 Ohio Class for the time spent on the work activities described in this Complaint.

320.     Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

321.     The Ohio Plaintiffs and the Rule 23 Ohio Class are entitled to unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available as compensation for Defendants' violations of O.R.C. §4111.03, by which the Ohio Plaintiffs and Rule 23 Ohio Class members have suffered and continue to suffer damages. O.R.C. Ann. § 4111.10.

### COUNT XXII
### RULE 23 OHIO CLASS ACTION
### VIOLATIONS OF THE OHIO MINIMUM WAGE LAWS, OHIO REV. CODE ANN. §§ 4113.15, *et seq.* ("OPPA")

322.     The Ohio Plaintiffs re-allege and incorporate all previous paragraphs herein.

323.     The Ohio Prompt Pay Act, O.R.C. § 4113.15 requires an employer to "pay all its employees the wages earned by them during the first half of the preceding month ending with the

63

fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month." O.R.C. § 4113.15(A).

324.     The Ohio Prompt Pay Act further provides that "[w]here wages remain unpaid for thirty days beyond the regularly scheduled payday … and no contest court order or dispute of any wage claim including the assertion of a counterclaim exists accounting for nonpayment, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater." O.R.C. Ann. § 4113.15(B).

325.     At all times relevant to the action, Defendants were employers covered by the OPPA and the Ohio Plaintiffs and the Rule 23 Ohio Class are employees entitled to the OPPA's protections. *See* O.R.C. Ann. § 4111.03.

326.     During all times relevant to this action, Defendants have failed to pay the Ohio Plaintiffs and the Rule 23 Ohio Class all wages due within 30 days of performing the work. *See* O.R.C. § 4113.15(B), including overtime wages at one and one-half times their regular rate.

327.     The Ohio Plaintiffs' and the Rule 23 Ohio Class members' unpaid wages remain unpaid for more than 30 days beyond their regularly scheduled payday.

328.     In violating the OPPA, Defendants have acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law

329.     As a result, the Rule 23 Ohio Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Ohio Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Ohio Wage Acts at an amount to be proven at trial.

64

## COUNT XXIII
## RULE 23 PENNSYLVANIA CLASS ACTION
## VIOLATIONS OF THE PENNSYLVANIA MINIMUM WAGE ACT,
## 43 P.S. §§ 333.101, *et seq.* ("PENNSYLVANIA WAGE ACT")

330. The Pennsylvania Plaintiff re-alleges and incorporates all previous paragraphs herein.

331. Defendants are employers covered by the Pennsylvania Minimum Wage Act, and the Pennsylvania Plaintiff and the Rule 23 Pennsylvania Class are employees entitled to the Pennsylvania Minimum Wage Act's protections.

332. The Pennsylvania Minimum Wage Act requires Defendants to pay the Pennsylvania Plaintiff and the Rule 23 Pennsylvania Class overtime premium compensation "not less than one and one-half times" the regular pay rate for all hours worked over 40 per week. *See* 43 P.S. § 333.104(c).

333. Defendants violated the Pennsylvania Minimum Wage Act by failing to pay the Pennsylvania Plaintiff and the Rule 23 Pennsylvania Class overtime premium compensation for time associated with the tasks described in this Complaint during weeks in which such time was worked above the 40-hour overtime threshold.

334. As a result, the Rule 23 Pennsylvania Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 Pennsylvania Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Pennsylvania Minimum Wage Act at an amount to be proven at trial.

65

## COUNT XXIV
## RULE 23 SOUTH CAROLINA CLASS ACTION
## VIOLATIONS OF THE SOUTH CAROLINA PAYMENT OF WAGES ACT, S.C.
## CODE ANN. §§ 41-10-10, *et seq.* ("SOUTH CAROLINA WAGE ACT")

335.    The South Carolina Plaintiff re-alleges and incorporates all previous paragraphs herein.

336.    The South Carolina Payment of Wages Act, S.C. Code Ann. §§ 41-10-10, *et seq.*; provides that "[e]very employer in the State shall pay all wages due in lawful United States money or by negotiable warrant or check bearing even date with the payday." S.C. Code Ann. § 41-10-40(A).

337.    Pursuant to S.C. Code Ann. § 41-10-80(C), an employee who has not been paid in accordance with the South Carolina Payment of Wages Act "may recover in a civil action an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees as the court may allow."

338.    At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the South Carolina Wage Act, and the South Carolina Plaintiff and the Rule 23 South Carolina Class are employees entitled to the South Carolina Wage Act's protections.

339.    The South Carolina Wage Act entitles employees to compensation for every hour worked in a workweek.

340.    The South Carolina Wage Act entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week

66

341. Defendants violated the South Carolina Wage Act by regularly and repeatedly failing to compensate the South Carolina Plaintiff and the Rule 23 South Carolina Class for the time spent on the work activities described in this Complaint.

342. Defendants' uniform policy and practice, as described above, left them without any bona fide dispute as to why they failed to pay the South Carolina Plaintiff and the Rule 23 South Carolina Class for all time worked.

343. As a result, the Rule 23 South Carolina Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 South Carolina Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the South Carolina Wage Act at an amount to be proven at trial.

**COUNT XXV**
**RULE 23 WASHINGTON CLASS ACTION**
**VIOLATIONS OF THE WASHINGTON MINIMUM WAGE ACT,**
**REV. CODE WASH. (RCW) Ch. 49.46 ("MWA")**

344. The Washington Plaintiff re-alleges and incorporates all previous paragraphs herein.

345. At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the Washington MWA, and the Washington Plaintiff and the Rule 23 Washington Class are employees entitled to the MWA protections. *See* Rev. Code Wash. § 49.46.010.

346. The MWA entitles employees to compensation for every hour worked in a workweek.

347. The MWA entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week *See* Rev. Code Wash. § 49.46.130.

67

348.    Defendants violated the MWA by regularly and repeatedly failing to compensate the Washington Plaintiff and the Rule 23 Washington Class for the time spent on the work activities described in this Complaint.

349.    As a result, the Rule 23 Washington Class has and will continue to suffer loss of income and other damages.  Accordingly, the Rule 23 Washington Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the MWA in an amount to be proven at trial.

**COUNT XXVI**
**RULE 23 WASHINGTON CLASS ACTION**
**VIOLATIONS OF THE WASHINGTON WAGE REBATE ACT,**
**REV. CODE WASH. (RCW) Ch. 49.52 ("WRA")**

350.    The Washington Plaintiff re-alleges and incorporates all previous paragraphs herein.

351.    The Washington Wage Rebate Act, Wash. Rev. Code § 49.52.050, provides in relevant part that any employer who "willfully and with intent to deprive the employee of any part of his wage, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by any statute, ordinance or contract" shall be guilty of a misdemeanor.

352.    Wash Rev. Code 49.52.070 provides that any employer who violates the provisions of Wash. Rev. Code 49.52.050 shall be liable in a civil action for twice the amount of wages withheld, and attorneys' fees and costs.

353.    Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

354.    As a result, the Rule 23 Washington Class is entitled to recover double the unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the Wage Rebate Act in an amount to be proven at trial.

68

## COUNT XXVII
## RULE 23 WEST VIRGINIA CLASS ACTION
## VIOLATIONS OF THE WEST VIRGINIA MINIMUM WAGE AND MAXIMUM HOURS LAWS, W. VA. CODE, §§ 21-5C-1, *et seq.*, THE WEST VIRGINIA WAGE PAYMENT AND COLLECTION ACT, W. Va. C.S.R. 42-5-1, *et seq.*, AND §§ W.VA. CODE § 21-3-10A ("WEST VIRGINIA WAGE ACTS")

355.   The West Virginia Plaintiff re-alleges and incorporates all previous paragraphs herein.

356.   At all times relevant to the action, Defendants were employers covered by the overtime and wage mandates of the West Virginia Wage Acts, and the West Virginia Plaintiff and the Rule 23 West Virginia Class are employees entitled to the protections of the West Virginia Wage Acts. *See* W. Va. Code § 21-5-1, § 21-5c-1.

357.   The West Virginia Minimum Wage and Maximum Hours Law; W. Va. Code §§ 21-5c-1, *et seq.* requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay of hours worked in excess of forty (40) per week. *See* W. Va. Code §§ 21-5C-2, 21-5C-3.

358.   W. Va. Code § 21-5C-8 provides that an employee who is not paid in accordance with the West Virginia Minimum Wage and Maximum Hours Law may bring a civil action to recover all unpaid amounts, plus costs and reasonable attorneys' fees.

359.   The West Virginia Wage Payment and Collection Act, W. Va. Code §§ 21-5-1, *et seq.* provides that every employer "shall settle with its employees at least twice every month and with no more than nineteen days between settlements, unless otherwise provided by special agreement, and pay them the wages due, less authorized deductions and authorized wage assignments, for their work or services." W. Va. Code § 21-5-3(a).

69

360.    Under W. Va. Code § 21-5-12, an employee aggrieved by an employer's violation of the West Virginia Wage Payment and Collection Act may bring a civil action to recover all unpaid amounts, plus costs and reasonable attorneys' fees.

361.    The West Virginia Wage Act entitles employees to compensation for every hour worked in a workweek. *See* W. Va. Code § 21-5-1, § 21-5c-1.

362.    The West Virginia Wage Acts entitle employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week *See* W. Va. Code § 21-5c-3.

363.    The West Virginia Wage Acts entitle employees to 20 minute meal period, wherein the employee is relieved off all duties, during each work shift that exceeds 6 hours. *See* W. Va. Code § 21-3-10a.

364.    Defendants violated the West Virginia Wage Acts by regularly and repeatedly failing to compensate the West Virginia Plaintiff and the Rule 23 West Virginia Class for the time spent on the work activities described in this Complaint.

365.    Defendants' uniform policy and practice, as described above, was/is willful, intentional, unreasonable, arbitrary, and in bad faith.

366.    As a result, the Rule 23 West Virginia Class has and will continue to suffer loss of income and other damages. Accordingly, the Rule 23 West Virginia Class is entitled to recover unpaid wages owed, plus costs and attorneys' fees, and other appropriate relief under the West Virginia Wage Acts at an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Rule 23 Classes, request judgment as follows:

a.   Certifying this action as a class action(s) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' claims;

b.   Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all members of the Rule 23 Classes and permitting Plaintiffs to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the members of the Rule 23 Classes of their rights by law to opt out of this lawsuit;

c.   Designating Plaintiffs Slade Grove and Eugene Garcia as the representatives of the Rule 23 Arizona Class, and undersigned counsel as Class counsel for the same;

d.   Designating Plaintiffs Kindsay Estes and Brian Rookey as the representatives of the Rule 23 Arkansas Class, and undersigned counsel as Class counsel for the same;

e.   Designating Plaintiffs Nicole Cheree Bogaert and Zachary Evans as the representatives of the Rule 23 Colorado Class, and undersigned counsel as Class counsel for the same;

f.   Designating Plaintiff Jennifer Belaski as the representative of the Rule 23 Connecticut Class, and undersigned counsel as Class counsel for the same;

g.   Designating Plaintiffs Nicole Kent Fitzsimmons and Nicole Weekley as the representatives of the Rule 23 Illinois Class, and undersigned counsel as Class counsel for the same;

h.   Designating Plaintiff Ronald Anderson as the representative of the Rule 23 Kentucky Class, and undersigned counsel as Class counsel for the same;

i.   Designating Plaintiffs Jason Hyde and Antoine Hursey as the representatives of the Rule 23 Maryland Class, and undersigned counsel as Class counsel for the same;

j.   Designating Plaintiff Jeffrey Lavelle as the representative of the Rule 23 Massachusetts Class, and undersigned counsel as Class counsel for the same;

k.   Designating Plaintiff Robert Neal as the representative of the Rule 23 Minnesota Class, and undersigned counsel as Class counsel for the same;

l.   Designating Plaintiff Jeremy West as the representative of the Rule 23 Missouri Class, and undersigned counsel as Class counsel for the same;

m.   Designating Plaintiffs Gregory Ricks and Stephanie Pennington as the representatives of the Rule 23 Nevada Class, and undersigned counsel as Class counsel for the same;

n.   Designating Plaintiffs Daniel Gerber and Stephanie Suazo as the representatives of the Rule 23 New Jersey Class, and undersigned counsel as Class counsel for the

same;

o.     Designating Plaintiffs Christopher Martinez and Peter Lomax as the representatives of the Rule 23 New Mexico Class, and undersigned counsel as Class counsel for the same;

p.     Designating Plaintiff Iris Tirado as the representative of the Rule 23 New York Class, and undersigned counsel as Class counsel for the same;

q.     Designating Plaintiffs Brian Rumpke, Nicholl Frank and Sean Wolfe as the representatives of the Rule 23 Ohio Class, and undersigned counsel as Class counsel for the same;

r.     Designating Plaintiff Jason Martin as the representative of the Rule 23 Pennsylvania Class, and undersigned counsel as Class counsel for the same;

s.     Designating Plaintiff Kaitlin Forte the representative of the Rule 23 South Carolina Class, and undersigned counsel as Class counsel for the same;

t.     Designating Plaintiff Kerry Cleavenger as the representative of the Rule 23 Washington Class, and undersigned counsel as Class counsel for the same;

u.     Designating Plaintiff Thomas Fyfe as the representative of the Rule 23 West Virginia Class, and undersigned counsel as Class counsel for the same;

v.     Declaring Defendants violated the state wage and hour laws/acts of the states of Arizona, Arkansas, Colorado, Connecticut, Illinois, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Jersey, New Mexico, New York, Ohio, Pennsylvania, South Carolina, Washington and West Virginia, as cited herein;

w.     Declaring Defendants' violations of the state wage and hour laws/acts were willful;

x.     Granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the Rule 23 Classes the full amount of damages and liquidated damages available by law;

y.     Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

z.     Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

aa.     Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their

attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: September 21, 2020                    Respectfully submitted,

                                             /s/ *Kevin J. Stoops*
                                             Kevin J. Stoops (*Pro hac vice*)
                                             Jason J. Thompson (*Pro hac vice*)
                                             SOMMERS SCHWARTZ, P.C.
                                             One Towne Square, 17th Floor
                                             Southfield, Michigan 48076
                                             Phone: (248) 355-0300
                                             kstoops@sommerspc.com
                                             jthompson@sommerspc.com

                                             Seth R. Lesser (*Pro hac vice*)
                                             Fran L. Rudich (*Pro hac vice*)
                                             KLAFTER OLSEN & LESSER LLP
                                             Two International Drive, Suite 350
                                             Rye Brook, New York 10573
                                             Phone: (914) 934-9200
                                             seth@klaferolsen.com
                                             fran@klafterolsen.com

                                             James J. Mills, NC Bar No. 36529
                                             BURNS, DAY & PRESNELL, P.A.
                                             2626 Glenwood Avenue, Suite 560 Raleigh,
                                             North Carolina 27608
                                             Phone: (919) 782-1441
                                             jmills@bdppa.com

                                             *Attorneys for All Plaintiffs and the Putative*
                                             *Class Members*

73

Seth R. Lesser (*Pro hac vice*)
Fran L. Rudich (*Pro hac vice*)
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Phone:  (914) 934-9200
seth@klaferolsen.com
fran@klafterolsen.com
Attorneys for Plaintiff Tirado and the
New York Class

John Holleman, ABN 91056
Timothy A. Steadman, ABN 2009113
HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, Arkansas 72201
jholleman@johnholleman.net
tim@johnholleman.net
Attorney for Plaintiffs Estes, Rookey and
the Arkansas Class

Robert B. Carey (011186)
Leonard W. Aragon (020977)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona  85003
Telephone: (602) 840-5900
rob@hbsslaw.com
Attorneys for Plaintiffs Grove, Garcia and
the Arizona Class

Bruce E. Newman
Brown, Paindiris & Scott, LLP
747 Stafford Avenue
Bristol, Connecticut  06010
(860) 583-5200
bnewman@bpslawyers.com
Attorney for Plaintiff Belaski and the
Connecticut Class

74

Edward A. Wallace
Mark R Miller
Wexler Wallace LLP
55 West Monroe Street, Suite3300
Chicago, Illinois 60603
(312) 346-2222
eaw@wexlerwallace.com
mrm@wexlerwallace.com
Attorneys for Plaintiff Fitzsimmons and the
Illinois Class

Charles W. Miller
Charles W. Miller Associates
Waterfront Plaza, Suite 2104
325 West Main Street
Louisville, Kentucky 40202
(502) 583-2300
Attorney for Plaintiff Anderson and the
Kentucky Class

Benjamin Knox Steffans (BBO #568535)
Steffans Legal PLLC
7 North Street, Suite 307
Pittsfield, MA 01201
bsteffans@steffanslegal.com
(413)418-4176
Attorney for Plaintiff Lavell and the
Massachusetts Class

Jacob R Rusch (MN Bar No. 0391892)
Timothy J. Becker MN Bar No. 0256663)
Johnson Becker PLLC
444 Cedar Street, Suite 1800
St. Paul, Minnesota  55101
(612) 436-1804
Jrusch@johnbecker.com
tbecker@johnsonbecker.com
Attorneys for Plaintiff Neal and the
Minnesota Class

Brendan J. Donelon, MO#43901
Donelon, P.C.
4600 Madison, Suite 810
Kansas City, Missouri  64112
(816) 221-7100
Attorney for Plaintiff West and the
Missouri Class

Jason T. Brown
Brown, LLC
111 Town Square Place, Suite 400
Jersey City, New Jersey 07310
(877) 561-0000
jtb@jtblawgroup.com
Attorney for Gerber, Suazo and the
New Jersey Class

Christopher Moody
Repps D. Standford
Moody & Stanford, P.C.
4169 Montgomery Blvd., NE
Albuquerque, New Mexico 87109
(505) 994-0033
moody@nmlaborlaw.com
Stanford@nmlaborlaw.com
Attorneys for Lomax, Martinez and the
New Mexico Class

Don Springmeyer, (SBN 1021)
Daniel Bravo (SBN 13078)
Wolf Rifkin Shapiro Schulman & Rabkin, LLP
3556 East Russell Road, 2nd Floor
Las Vegas, Nevada 89120
(702) 341-5200
dspringmeyer@wrslawyers.com
dbravo@wrslawyers.com
Attorneys for Plaintiffs Ricks, Pennington
and the Nevada Class

Robert E. DeRose II (0055214)
Jessica R. Doogan (0092105)
Barkan Meizlish Derose
Wentz Mcinerney Peifer, LLP
250 East Broad Street, 10th Floor
Columbus, Ohio 43215
(614) 221-4221
bderose@barkanmeizlish.com
Attorneys for Plaintiffs Rumpke, Frank,
Wolfe and the Ohio Class

Peter Winebrake (PA Attorney No. 80496)
R. Andrew Santillo (PA Attorney # 93041)
Mark J. Gottesfeld (PA Attorney # 307752)
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491
Attorneys for Plaintiff Martin and the
Pennsylvania Class

Bruce E. Miller, Esq.
Bruce E. Miller, P.A.
Charleston, South Carolina 29412
(843) 579-737
bmiller@brucemillerlaw.com
Attorneys for Plaintiff Forte and the South
Carolina Class

Adam J. Berger (WSBA# 20714)
Schroeter Goldmark & Bender
810 Third Avenue, Suite 500
Seattle, Washington  98104
(206) 622-8000
berger@sgb-law.com
Attorneys for Plaintiff Cleavenger and the
Washington Class

Kristina Thomas Whiteaker (SBN 9434)
The Grubb Law Group, PLLC
1114 Kanawha Boulevard, East
Charleston, West Virginia  25301
(304) 345-3356
kwhiteaker@grubblawgroup.com
Attorney for Plaintiff Fyfe and the West
Virginia Class

*Attorneys for Plaintiffs and the Putative
Class Members*