**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**MDL DOCKET NO. 5:20-MD-2947-KDB-DSC**

| | |
|---|---|
| **IN RE: LOWE'S COMPANIES, INC.** ) | **DEFENDANTS' REPLY IN SUPPORT OF** |
| **FAIR LABOR STANDARDS ACT** ) | **THEIR CONSOLIDATED MOTION TO** |
| **(FLSA) AND WAGE AND HOUR** ) | **COMPEL ARBITRATION UNDER** |
| **LITIGATION** ) | **FED. R. CIV. P. 12(B)(1), TO DISMISS** |
| ) | **UNDER FED. R. CIV. P. 12(B)(6), AND** |
| ) | **FOR JUDGMENT ON THE PLEADINGS** |
| **THIS DOCUMENT APPLIES TO** ) | **UNDER FED. R. CIV. P. 12(C)** |
| **ALL MEMBER CASES** ) | |
| ) | |

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

    I.      Plaintiffs' State-Law Overtime Claims Are Preempted By The FLSA ................ 2

    II.     Plaintiffs Have Not Plausibly Alleged Contractual Entitlements
         To Overtime ............................................................................................................ 4

    III.    ARIZONA: Grove's & Garcia's Claims Must Be Dismissed (Count II) .............. 4

    IV.    ARKANSAS: Estes's & Rookey's Claims Must Be Dismissed (Count III) ......... 6

    V.     COLORADO: Bogaert Must Be Compelled To Arbitrate, And Bogaert's
         & Evans's Overtime Claims Must Be Dismissed (Count IV) .............................. 6

    VI.    CONNECTICUT: Belaski's Overtime Claims Must Be Dismissed
         (Count V) ............................................................................................................... 7

    VII.   ILLINOIS: Fitzsimmons's & Weekley's Overtime Claims Must Be
         Dismissed (Counts VI–VIII) ................................................................................ 8

    VIII.  KENTUCKY: Anderson's Overtime Claims Must Be Dismissed
         (Count IX) ............................................................................................................. 8

    IX.    MARYLAND: Hyde's And Hursey's Claims, And All Three Plaintiffs'
         Overtime Claims, Must Be Dismissed (Count X) ................................................ 9

    X.     MASSACHUSETTS: Lavelle's Overtime Claims Must Be Dismissed
         (Counts XI–XIII) ................................................................................................ 10

    XI.    MINNESOTA: Neal's Overtime Claims Must Be Dismissed
         (Counts XIV–XVI) ............................................................................................. 10

    XII.   MISSOURI: West's Claims Must Be Dismissed (Count XVII) .......................... 11

    XIII.  NEVADA: Ricks's & Pennington's Claims Must Be Dismissed
         (Count XVIII) ...................................................................................................... 11

    XIV.  NEW JERSEY: Gerber's & Suazo's Claims Must Be Dismissed In Part
         (Count XIX) ........................................................................................................ 12

    XV.   NEW MEXICO: Martinez's & Lomax's Claims Must Be Dismissed
         (Count XX) ......................................................................................................... 12

i

Page

XVI.   NEW YORK: Tirado's Overtime Claims Must Be Dismissed (Count XXI) ...... 13

XVII.   NORTH CAROLINA: Danford's State-Law Claims Must Be Dismissed
(Count XXII) ......................................................................................................... 13

XVIII.  OHIO: Rumpke's, Frank's & Wolfe's Claims Must Be Dismissed
(Counts XXIII–XXIV) .......................................................................................... 15

XIX.   PENNSYLVANIA: Martin's Claim Must Be Dismissed (Count XXV) ............. 16

XX.   SOUTH CAROLINA: Forte's Overtime Claims Must Be Dismissed
(Count XXVI) ....................................................................................................... 16

XXI.   WASHINGTON: Cleavenger's Claims, And Both Plaintiffs'
Overtime And Minimum Wage Claims, Must Be Dismissed
(Counts XXVII–XXVIII) ....................................................................................... 16

XXII.   WEST VIRGINIA: Fyfe's Claims Must Be Dismissed (Count XXIX) .............. 17

CONCLUSION .................................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adkins v. Labor Ready, Inc.*,
185 F. Supp. 2d 628 (S.D.W. Va. 2001) ...............................................................18

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*,
367 F.3d 212 (4th Cir. 2004) ...............................................................................18

*Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*,
96 F.3d 88 (4th Cir. 1996) .....................................................................................7

*Anderson v. Sara Lee Corp.*,
508 F.3d 181 (4th Cir. 2007) ............................................................................1, 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................11

*Banks v. Wet Dog, Inc.*,
No. CIV.A. RDB-13-2294, 2014 WL 4271153 (D. Md. Aug. 28, 2014)................3

*Brown v. United States*,
976 F.2d 1104 (7th Cir. 1992) .............................................................................13

*Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*,
310 F.R.D. 631 (D.N.M. 2015)............................................................................13

*Cavallaro v. UMass Mem'l Healthcare, Inc.*,
678 F.3d 1 (1st Cir. 2012)....................................................................................10

*DeHoll v. Eckerd Corp.*,
No. 1:18CV280, 2018 WL 5624150 (M.D.N.C. Oct. 30, 2018) ...........................14

*Dominguez v. Micro Ctr. Sales Corp.*,
No. 11-c-8202, 2012 WL 1719793 (N.D. Ill. May 15, 2012)..................................8

*Flores v. Ethicon, Inc.*,
No. 2:14-CV-24748, 2018 WL 3130421 (S.D.W. Va. June 25, 2018)....................3

*Goff v. Frontier Commc'ns of Am., Inc.*,
No. 2:16-CV-05689, 2017 WL 440731 (S.D.W. Va. Feb. 1, 2017).........................5

*Hall v. DIRECTV, LLC*,
846 F.3d 757 (4th Cir. 2017) ...............................................................................11

# TABLE OF AUTHORITIES (cont'd)

Page(s)

*Hanson-Kelly v. Weight Watchers Int'l, Inc.*,
   No. 1:10CV65, 2011 WL 2689352 (M.D.N.C. July 11, 2011) ...............................15

*Ins. Co. of N. Am. v. Superior Court*,
   784 P.2d 705 (Ariz. Ct. App. 1989)........................................................................5

*Liscomb v. Boyce*,
   No. 3:17-CV-00036 BSM, 2018 WL 342017 (E.D. Ark. Jan. 9, 2018) ...................6

*Martin v. Lowe's Cos.*,
   No. 5:20-cv-00015, 2020 WL 5369074 (W.D.N.C. Sept. 8, 2020)........................14

*Martinez-Hernandez v. Butterball, LLC*,
   578 F. Supp. 2d 816 (E.D.N.C. 2008).................................................................14

*Monahan v. Smyth Automotive, Inc.*,
   1:10-CV-00048, 2011 WL 379129 (S.D. Ohio Feb. 2, 2011) ...............................15

*Moodie v. Kiawah Island Inn Co.*,
   124 F. Supp. 3d 711 (D.S.C. 2015)........................................................................4

*O'Brien v. Ed Donnelly Enters.*,
   575 F.3d 567 (6th Cir. 2009) ...............................................................................15

*Perez v. First Am. Title Ins. Co.*,
   810 F. Supp. 2d 986 (D. Ariz. 2011) ....................................................................5

*Pugh v. Evergreen Hosp. Med. Ctr.*,
   311 P.3d 1253 (Wash. Ct. App. 2013)................................................................17

*Sampson v. Knight Transp., Inc.*,
   448 P.3d 9 (Wash. 2019).....................................................................................17

*Scheck v. Maxim Healthcare Servs., Inc.*,
   333 F. Supp. 3d 751 (N.D. Ohio 2018).................................................................15

*Scruggs v. Skylink, Ltd.*,
   No. CIV.A. 3:10-0789, 2011 WL 6026152 (S.D.W. Va. Dec. 2, 2011)...................4

*Strauch v. Computer Scis. Corp.*,
   322 F.R.D. 157 (D. Conn. 2017).........................................................................14

*Sutka v. Yazaki N. Am. Inc.*,
   256 F. Supp. 3d 677 (E.D. Mich. 2017)...............................................................15

*Williams v. Gen. Nutrition Ctrs., Inc.*,
  166 A.3d 625 (Conn. 2017) ................................................................7

**Statutes**

Arizona Wage Act, Ariz. Rev. Stat. Ann. § 23-350 *et seq.* .........................................4, 5

Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201 *et seq.* ...........................6, 12

Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-103(1)(a) *et seq.* ...........................7

Conn. Gen. Stat. § 31-58(i) ............................................................................12

Conn. Gen. Stat. § 31-60(a) ............................................................................7

Conn. Gen. Stat. § 31-76c ...............................................................................7

Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ............................................... *passim*

Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.* .............................8, 12

Illinois One Day Rest In Seven Act, 820 Ill. Comp. Stat. 140/6 *et seq.* .........................1

Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.* ..............8

Kentucky Wages and Hours Act, Ky. Rev. Stat. Ann. § 337.010 *et seq.* ...................8, 9

Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.* .....................9, 10

Maryland Wage Payment and Collection Law,
  Md. Code Ann. Lab. & Empl. § 3-501 et seq. ....................................................9, 10

Massachusetts Minimum Fair Wages Act, Mass. Gen. Laws ch. 151, § 1 ...................................10

Massachusetts Overtime Act, Mass. Gen. Laws ch. 151, § 1A .....................................10

Massachusetts Timely Payment of Wages Act, Mass. Gen. Laws ch. 149, § 148 .......................10

Minnesota Fair Labor Standards Act, Minn. Stat. § 177.21 *et seq.* .........................10, 11

Missouri Wage Act, Mo. Rev. Stat. § 290.500 *et seq.* ............................................11

Nevada Wage and Hour Law, Nev. Rev. Stat. § 608.005 *et seq.* .................................12

New Jersey Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a *et seq.* ...........................12

Case 5:20-md-02947-KDB-DSC   Document 23   Filed 12/22/20   Page 6 of 28

Page(s)

New Jersey Wage Payment Law, N.J. Stat. Ann. § 34:11-4.1 *et seq.* ............................................12

New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-20 *et seq.* ....................................12, 13

N.M. Stat. Ann. § 50-4-2 ............................................................................................13

New York Minimum Wage Act, N.Y. Lab. Law § 650 *et seq.* ......................................................13

N.Y. Lab. Law § 191(1)(d) ............................................................................................13

North Carolina Wage and Hour Act, N.C. Stat. § 95-25.1 *et seq.* ............................................13, 14

Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code Ann. § 4111.01 *et seq.* .....................15

Ohio Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15 ................................................................15

Pennsylvania Minimum Wage Act, 43 Pa. Cons. Stat. § 333.101 *et seq.* ....................................16

Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. § 260.1 *et seq.*.................16

South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.* ...............................16

Washington Minimum Wage Act, Wash. Rev. Code § 49.46 ..................................................16, 17

Washington Wage Rebate Act, Wash. Rev. Code § 49.52 ......................................................16, 17

West Virginia Minimum Wage and Maximum Hours Standards Act,
 W. Va. Code § 21-5C-1 *et seq.* ......................................................................................17, 18

West Virginia Wage Payment and Collection Act, W. Va. Code § 21-5-1 *et seq.*.................17, 18

**Regulations**

Ark. Code R. § 010.14-100-113 ............................................................................................6

12 NYCRR § 142-2.2 ............................................................................................13

W. Va. Code R. § 42-8-6.2 ............................................................................................18

**Rules**

Fed. R. Civ. P. 12(c) ............................................................................................13

Fed. R. Civ. P. 23 ............................................................................................10

# TABLE OF AUTHORITIES (cont'd)

Page(s)

**Other Authorities**

Wright & Miller, *Fed. Prac. & Proc.* (4th ed.)

§ 3866.................................................................................................................................13

§ 3867 .................................................................................................................................3

Case 5:20-md-02947-KDB-DSC   Document 23   Filed 12/22/20   Page 8 of 28

# INTRODUCTION

In their opposition, Plaintiffs criticize Lowe's for seeking dismissal of many of Plaintiffs' "nuanced state law claims." Opp. 1. Yet Plaintiffs concede that many of those same claims cannot survive Lowe's motion. For example, despite repeatedly invoking state minimum wage laws, *see, e.g.*, FAC ¶¶ 280–86, Plaintiffs now abandon their minimum wage claims for 17 of 20 states. *See* Opp. 1. Additionally, the Illinois Plaintiffs withdrew their claims under the Illinois One Day Rest In Seven Act (Opp. 16 n.8); a Maryland Plaintiff has agreed to arbitrate all claims (Opp. 22 n.12); the sole Missouri Plaintiff withdrew his "gap-time" claims (Opp. 28 n.15); the Nevada Plaintiffs withdrew their meal-break claims (Opp. 29 n.16); the New York Plaintiff withdrew her meal-break claim (Opp. 32 n.17); one Ohio Plaintiff agrees his claims under one of the state statutes he invokes are untimely (Opp. 35 n.19); and the South Carolina Plaintiff concedes there is no entitlement to overtime under South Carolina law (Opp. 39). Although Plaintiffs attempt to avoid dismissal of the remaining claims at issue, their arguments in support of these claims fall short.

*First*, Plaintiffs incorrectly assert that the FLSA does not preempt their state-law overtime claims. But because this is an MDL, the law of the Fourth Circuit governs whether Plaintiffs' state-law overtime claims can coexist with their FLSA claims in this lawsuit. And under *Anderson*, they cannot. *See Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007).

*Second*, Plaintiffs attempt to save their overtime claims under 19 states' payday laws by arguing that these claims are based not on a ***statutory*** entitlement to overtime, but on an alleged ***contractual*** right to overtime. *See* Opp. 7–8. The problem for Plaintiffs, however, is that they failed to plead a viable contractual right to overtime in the FAC. *See* Mot. 10 & n.10.

*Third*, Plaintiffs now assert that Lowe's failed to pay them their agreed-upon hourly rates for hours worked under 40 hours in a workweek, and that these "gap time" claims are what they intended to pursue in the FAC. *See* Opp. 6. In actuality, the FAC does not contain the phrase "gap

1

time" in *any* of Plaintiffs' state-law counts, which is why Lowe's originally understood Plaintiffs to be pursuing claims for the statutorily-required *minimum* wage for hours worked under 40 in a workweek. *See* Mot. 2 n.2. If Plaintiffs now seek to transform their minimum-wage claims into ones for contractually agreed-upon wages, their efforts fail in five states, in which the statutes they cite provide no right of action for such wages. *See infra* at 6, 12–13, 13–15, 15–16. In a sixth—Pennsylvania—the gap-time claims fail because Plaintiffs do not invoke the state payday statute.

For all these reasons, and those set forth in its motion, Lowe's asks that the Court dismiss with prejudice Counts II, III, VI, VIII, XI, XII, XV–XVII, XX, XXII–XXV, XXVII (in full); and Counts IV, V, VII, IX, X, XIII, XIV, XVIII, XIX, XXI, XXVI, XXVIII, XXIX (in part).

## ARGUMENT

### I.    Plaintiffs' State-Law Overtime Claims Are Preempted By The FLSA

In the Fourth Circuit, "state claims [are] preempted by the FLSA where those claims have merely duplicated FLSA claims" because "Congress prescribed exclusive remedies in the FLSA for violations of its mandates." *Anderson*, 508 F.3d at 194. The FLSA's savings clause only "saves" from preemption state laws that "provide workers with more beneficial minimum wages and maximum workweeks than those mandated by the FLSA itself." *Anderson*, 508 F.3d at 193. The key question then is whether the state statutes that Plaintiffs invoke establish a "maximum work week lower than the maximum [40-hour] workweek established" by the FLSA. *See* 29 U.S.C. § 218(a). If not, the FLSA's savings clause does not apply, and the claim is preempted. *See Anderson*, 508 F.3d at 193. That is the case for each state overtime statute at issue here.

To avoid preemption, Plaintiffs focus on whether state statutes provide greater *remedies* than the FLSA—such as larger penalties—for violation of the same substantive overtime mandate. *See* Opp., Ex. B. But different "remedies" for alleged violations of the same substantive right are what the FLSA preempts. *See Anderson*, 508 F.3d at 194. If remedies had to be identical under

the FLSA and state law for preemption to apply, preemption would only be an academic exercise, since it would not matter which statute a plaintiff invoked—either way, the recovery would be the same. For preemption to have actual effect, then, the FLSA must preempt something. And under Fourth Circuit law, the FLSA preempts alternative (more generous) *remedies* for the same rights.[1]

Plaintiffs also cite cases from other circuits that have allowed parallel FLSA and state-law overtime claims to proceed. *See, e.g.*, Opp. 28, 35. But it is Fourth Circuit preemption law that applies here, because in an MDL, "the transferee court applies its own interpretation of federal law." Wright & Miller, *Fed. Prac. & Proc.* § 3867 & n.32 (4th ed.); *see Flores v. Ethicon, Inc.*, No. 2:14-CV-24748, 2018 WL 3130421, at *3 (S.D.W. Va. June 25, 2018).

In addition, Plaintiffs rely on cases that have found no preemption for claims based on an alleged right *over-and-above* that provided by the FLSA. *See, e.g.*, Opp. 2–5. Those cases are inapposite. To be clear, Lowe's only argues that the following types of state-law overtime claims are preempted: (i) those under state statutes that provide the same substantive right to time-and-a-half for hours worked over 40 in a week as the FLSA; and (ii) those under state payday statutes premised on preempted substantive state-law overtime claims (or on the right to overtime provided by the FLSA itself). Lowe's does *not* contend that the FLSA preempts contractual gap-time claims, or statutory payday claims based on an alleged *contractual* entitlement to overtime. Those claims do *not* duplicate rights provided by the FLSA, and must be evaluated (and often fail) on their own terms.[2]

---

[1] Plaintiffs rely (*see* Opp. 22) on several Maryland district court cases that fail to make this critical distinction—and thus, cannot be reconciled with *Anderson*. *See, e.g.*, *Banks v. Wet Dog, Inc.*, No. CIV.A. RDB-13-2294, 2014 WL 4271153, at *5 (D. Md. Aug. 28, 2014) (focusing on "entitle[ment] to additional remedies").

[2] Plaintiffs primarily rely on cases that have allowed a payday claim for overtime to proceed. *See* Mot. 4 n.2. However, allowing payday claims based on a failure to pay overtime required by state-law cannot be reconciled with *Anderson*, as payday statutes simply add conditions

3

## II.    Plaintiffs Have Not Plausibly Alleged Contractual Entitlements To Overtime

Plaintiffs also argue that, as an alternative to preempted substantive overtime statutes, they can rely on contractual rights to overtime to bring overtime claims under state payday statutes.  *See* Opp. 7–8.  They appear to assert this theory in 19 states (*i.e.*, all states except North Carolina).

Plaintiffs' effort fails for the simple reason that they did not plead a contractual entitlement to overtime.  Plaintiffs assert that allegations supporting their alleged contractual right to overtime are "abundant throughout the [FAC]," and they cite 54 paragraphs of the Complaint.  *See* Opp. 8. But a review of the cited paragraphs undermines Plaintiffs' contention: Only one—Paragraph 166—alleges that Lowe's "promised to pay and [was] required to pay … overtime wages."  FAC ¶ 166.  That allegation, however, is made only by the "Arizona Plaintiffs."  *Id.*  This conclusory allegation is insufficient to support an alleged contractual right to overtime even for the Arizona Plaintiffs, *see* Mot. 32, and the other Plaintiffs allege nothing to support such a contractual right.[3]

## III.    ARIZONA: Grove's & Garcia's Claims Must Be Dismissed (Count II)

The two Arizona Plaintiffs (Grove and Garcia) advance overtime and gap-time claims under the Arizona Wage Act (Count II).  Both should be dismissed.

*First*, the Arizona Plaintiffs' claims are time-barred.  Plaintiffs agree their claims are subject to a one-year statute of limitations (*see* Opp. 8) and they filed their action either two (Grove) or three (Garcia) years after leaving Lowe's.  *See* FAC ¶¶ 10, 11.  Plaintiffs nonetheless

---

(*e.g.*, timing) to an existing requirement to pay.  In other words, requiring the payment of wages "when due" is dependent on an existing obligation to pay, and thus, is not "separate and distinct" from the FLSA's overtime mandate.  *Moodie v. Kiawah Island Inn Co.*, 124 F. Supp. 3d 711, 725 (D.S.C. 2015) (quotation omitted); *Scruggs v. Skylink, Ltd.*, No. CIV.A. 3:10-0789, 2011 WL 6026152, at *9 (S.D.W. Va. Dec. 2, 2011) (dismissing duplicative overtime claims under West Virginia law as preempted).

[3] Many of the FAC paragraphs Plaintiffs cite to support their alleged contractual right to overtime assert that Lowe's was "obligated" by "contract" to pay them at their "*regular hourly rates*"—*i.e.*, not at overtime rates, *see, e.g.*, FAC ¶¶ 112–116, 123–24 (emphasis added).

4

argue that their cause of action did not accrue until they discovered the facts giving rise to their claims—a date they do not identify (but that presumably would make their claims timely). *See* Opp. 9. Plaintiffs' theory does not pass muster. "The discovery rule applies to the facts which give rise to the cause of action, not to the legal significance of such facts. If the law were otherwise, the statute would not begin to run until a plaintiff consults an attorney who recognizes that there is a cause of action." *Ins. Co. of N. Am. v. Superior Court*, 784 P.2d 705, 708 (Ariz. Ct. App. 1989), *vacated on other grds.*, 800 P.2d 585 (Ariz. 1990). Plaintiffs cannot plausibly allege they did not discover the "facts underlying the cause" of action at the time they transpired, *Perez v. First Am. Title Ins. Co.*, 810 F. Supp. 2d 986, 994–95 (D. Ariz. 2011) (quotation omitted), because the "facts" relevant to their claims are the alleged off-the-clock work that *they* performed; that *they* did not enter into Lowe's timekeeping system; and that *they* allegedly were not paid for. None of these supposed "facts" were hidden from Plaintiffs; they just failed to timely act on them.[4]

*Second*, even if Plaintiffs' claims under the Arizona Wage Act were not time-barred, their overtime claim still fail. Plaintiffs' Arizona Wage Act claim for overtime is premised on the threadbare assertion that Lowe's "promised to pay … overtime wages at the rate of one and one-half their regular rate of pay for all hours over 40 hours in the workweek." FAC ¶ 166. Plaintiffs do not explain when Lowe's made this promise; the form in which it was made (oral or written); or who allegedly made it. *See id*. That is insufficient as a matter of law. *See, e.g.*, *Goff v. Frontier Commc'ns of Am., Inc.*, No. 2:16-CV-05689, 2017 WL 440731, at *6 (S.D.W. Va. Feb. 1, 2017)

---

[4] Plaintiff also suggest that the relevant question is whether they had a "reasonable expectation" of compensation for hours allegedly worked off-the-clock and—quite remarkably—they allege they "had no reasonable expectation of compensation." Opp. 9. Yet, on the very next page of their brief, Plaintiffs reverse course, asserting that they are contractually entitled to "overtime compensation under Arizona law because they **had a 'reasonable expectation to be paid' overtime**." Opp. 10 (emphasis added). Regardless of the expectations that Plaintiffs may or may not have had—or whether they were "reasonable"—their claims are time-barred.

(dismissing contract claim for lack of "essential details").

## IV. ARKANSAS: Estes's & Rookey's Claims Must Be Dismissed (Count III)

The two Arkansas Plaintiffs (Estes and Rookey) bring one count (Count III) under the Arkansas Minimum Wage Act. It must be dismissed for two reasons.

*First*, any claim for overtime under Arkansas law is duplicative of Plaintiffs' claims under the FLSA, and thus, is preempted. Plaintiffs' contention that "Arkansas state law provides more generous remedies than the FLSA" (Opp. 11) is incorrect, and in any event, a state's provision of more generous *remedies* than the FLSA is insufficient to avoid preemption, *see supra* at 2–4. Nor can the Arkansas Plaintiffs fall back on a supposed contractual entitlement to overtime as the basis of their overtime claims, having failed to plead one. *See* FAC ¶¶ 170–77.

*Second*, despite originally invoking "entitl[ement] to minimum wage," *see* FAC ¶ 171, the Arkansas Plaintiffs now recast their reference to the Arkansas Minimum Wage Act ("AMWA") as a claim for "gap time," based on an alleged failure to be paid their contractual hourly rate for hours worked under 40 in a week. But the AMWA provides no private right of action for contractual wage claims. As made clear in the provision they cite, "[t]he only private lawsuits permitted under the statute are for payment of minimum or overtime wages." *Liscomb v. Boyce*, No. 3:17-CV-00036 BSM, 2018 WL 342017, at *3 (E.D. Ark. Jan. 9, 2018), *aff'd*, 954 F.3d 1151 (8th Cir. 2020) (discussing Ark. Code Ann. § 11-4-218, cited at FAC ¶ 172). Moreover, the regulation that Plaintiffs cite as "guarantee[ing] payment for every hour worked in the work week" literally does not exist. *See* FAC ¶ 174, Opp. Ex. B. at 2 (citing Ark. Code R. § 010.14-100-113).

## V. COLORADO: Bogaert Must Be Compelled To Arbitrate, And Bogaert's & Evans's Overtime Claims Must Be Dismissed (Count IV)

Bogaert's claims must be dismissed because she is bound to arbitrate. Bogaert does not dispute that she signed an arbitration agreement that covers her claims in this case. Instead, she

argues only that because the agreement was not produced earlier, it cannot be enforced. *See* Opp. 12–13. That argument misses the mark. The party arguing waiver bears a "heavy burden" of showing that the moving party's delay caused "actual prejudice." *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 95 (4th Cir. 1996). Here, Bogaert does not even allege that she suffered any prejudice, claiming only that enforcement of her agreement would prejudice the putative Colorado class and "Plaintiffs' Counsel." Opp. 13 n.7. But the prejudice inquiry does not turn on alleged prejudice to an uncertified class (or its counsel). In any event, Bogaert's dismissal would not impact the putative class, as she is not the only Colorado Plaintiff.

Irrespective of Bogaert's arbitration agreement, the state-law overtime claims of both Colorado Plaintiffs must be dismissed. The protections offered by the Colorado Minimum Wage Order are the same as the FLSA, which means that any overtime claims under the Minimum Wage Order are preempted, as are any Colorado Wage Claim Act ("CWCA") claims for overtime based on the Order. *See supra* at 2–4. Plaintiffs alternatively argue that "'[w]hile [the] CWCA does not create a substantive new entitlement to overtime, it can enforce preexisting entitlements under the FLSA.'" Opp. 13 (citation omitted). But using a state law to enforce a "preexisting entitlement[]" under the FLSA" is what *Anderson* disallows. *See supra* at 2. Plaintiffs also do not allege any contractual entitlement to overtime, eliminating that potential source for a CWCA overtime claim.

## VI. CONNECTICUT: Belaski's Overtime Claims Must Be Dismissed (Count V)

The Connecticut Plaintiff (Belaski) brings claims for overtime under Sections 31-60(a) and 31-76c, both of which must be dismissed. Connecticut's "overtime requirement[] is nearly identical to the federal overtime statute." *Williams v. Gen. Nutrition Ctrs., Inc.*, 166 A.3d 625, 630 (Conn. 2017). Thus, the FLSA preempts Belaski's substantive state-law overtime claims. *See supra* at 2–4. Belaski does not dispute that her overtime claim under the payday statute is dependent on her substantive state-law overtime claim, since she does not plead any contractual

entitlement to overtime.  *See* Opp. 15.  As a result, all of Belaski's state-law overtime claims fail.

## VII.  ILLINOIS: Fitzsimmons's & Weekley's Overtime Claims Must Be Dismissed (Counts VI–VIII)

The overtime claims by the two Illinois Plaintiffs (Fitzsimmons and Weekley) under the Illinois Minimum Wage Law ("IMWL") (Count VI), and the Illinois Wage Payment and Collection Act ("IWPCA") (Count VII) must be dismissed.

As a threshold matter, the overtime portion of the Illinois Plaintiffs' IMWL claim seeks to enforce the same overtime mandate as the FLSA and thus is preempted.  Preemption is not negated by the availability of more generous state *remedies*.  *See supra* at 2–4.  As Plaintiffs have disavowed any IMWL claim for minimum wage (Opp. 7), the entire Count must be dismissed.

The overtime portion of the Illinois Plaintiffs' IWPCA claim also must be dismissed, as that law requires a contractual entitlement to the allegedly due compensation, and Plaintiffs have not alleged any contractual entitlement to an overtime premium.  *See* FAC ¶¶ 112–24, 211–17; *Dominguez v. Micro Ctr. Sales Corp.*, No. 11-c-8202, 2012 WL 1719793, at *1 (N.D. Ill. May 15, 2012) (dismissal because there was no promise "entitling [plaintiff] to overtime pay").[5]

## VIII.  KENTUCKY: Anderson's Overtime Claims Must Be Dismissed (Count IX)

The Kentucky Plaintiff (Anderson) brings an overtime claim under the Kentucky Wages and Hours Act (Count IX), but he is not covered by the Act's overtime provisions.  Anderson was an "[e]mployee of [a] retail store engaged in work connected with selling, purchasing, and distributing merchandise, wares, goods, articles, or commodities," and thus, is exempt from the Act.  Ky. Rev. Stat. Ann. § 337.285(2)(a).  Anderson claims the "retail store" employee exemption

---

[5]  In its motion, Lowe's noted that when the Illinois Plaintiffs' actual dates of employment as hourly managers were before the Court, it would be clear that the Illinois Plaintiffs (among others) had no timely claims.  *See* Mot. 3 n.3.  Upon further review of the Illinois Plaintiffs' claims, Lowe's maintains that Fitzsimmons's IMWL claim and the portion of Weekley's IMWL claim for the period before March 18, 2017 are time-barred.

8

does not apply, *see* Opp. 21, but it is difficult to imagine more quintessential "retail store" duties than those Anderson performed: managing "customer facing activities on the sales floor" (*i.e.*, "selling") and being responsible for "down stocking," "inventory management" and physically "moving" merchandise (*i.e.*, "purchasing" and "distributing"). FAC ¶ 50. Regardless, if he were covered by the statute—he is not—Anderson's claims would be preempted. *See supra* at 2–4.

Nor does Anderson have a viable overtime claim under the payday statute, Ky. Rev. Stat. Ann. § 337.020. Anderson cannot rely on the state-law right to overtime (due to exemption or preemption) and he does not plead a contractual entitlement to overtime, *see supra* at 4.

## IX.   MARYLAND: Hyde's And Hursey's Claims, And All Three Plaintiffs' Overtime Claims, Must Be Dismissed (Count X)

The three Maryland Plaintiffs (Hyde, Hursey, and Staley) bring claims under the Maryland Wage and Hour Law ("MWHL") and the Maryland Wage Payment and Collection Law ("MWPCL") (Count X). Hyde has agreed he must arbitrate his claims (Opp. 22 n.12). And all of Hursey's claims and both remaining Plaintiffs' overtime claims also must be dismissed.

Hursey's claims must be dismissed because he released all state-law claims against Lowe's. Hursey argues that his release is unenforceable because "[a]n agreement to work for less than the wage required under this subtitle is void." Md. Code Ann., Lab. & Empl. § 3-405; *id.* § 3-502. But this language governs employment contracts; it does not bar settlements. Under Plaintiff's view, state law would preclude settlement or separation agreements addressing any aspect of wage-and-hour law, before or after litigation. In contrast to the FLSA's provision for Department of Labor approval of a settlement, Maryland has no such mechanism, meaning a court would have to be involved every time an employee wished to settle a wage-and-hour claim. That is not the law.

The Maryland Plaintiffs also fail to plausibly state overtime claims. Plaintiffs' substantive overtime claim under the MWHL is preempted because the MWHL provides the same overtime

mandate as the FLSA. As to the overtime component of the MWPCL payday statute claim, Plaintiffs cannot rely on the preempted MWHL claim as the underlying source of their alleged right to overtime, and they do not allege a contractual right to overtime. *See supra* at 2–4.

## X. MASSACHUSETTS: Lavelle's Overtime Claims Must Be Dismissed (Counts XI–XIII)

The sole Massachusetts Plaintiff (Lavelle) brings claims under three state statutes: The Massachusetts Minimum Fair Wages Act (Count XI), the Overtime Act (Count XII), and the Timely Payment of Wages Act (Count XIII). All of his overtime claims must be dismissed.

Lavelle does not dispute that the state-law overtime mandate he invokes is the same as that provided by the FLSA: time-and-a-half for hours worked over 40 in a week. An action for an alleged violation of that mandate, under either the Overtime Act (Count XII) or the Minimum Fair Wages Act (Count XI), is preempted. *See supra* at 2–4. Lavelle's claim for overtime under the state's payday statute (Count XIII) also must be dismissed: The Timely Payment of Wages Act provides a method of enforcing a right provided by another statute or a contract. *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 8 (1st Cir. 2012). The two substantive state laws purporting to provide that right are preempted, and Lavelle does not claim that his employment agreement provided an overtime premium. *See supra* at 2–4. His overtime claims thus all fail.

## XI. MINNESOTA: Neal's Overtime Claims Must Be Dismissed (Counts XIV–XVI)

The overtime claims of the sole Minnesota Plaintiff (Neal) also must be dismissed.

*First*, Neal has failed to plausibly plead facts to establish a claim under the Minnesota Fair Labor Standards Act ("MFLSA") (Count XVI), which has an overtime threshold of 48 hours. *See* Minn. Stat. § 177.25, subd. 1. The FAC's only mention of working 48 hours comes in Paragraph 290, in which Neal alleges Lowe's "failed to pay overtime wages to [him] and the Rule 23 Minnesota Class members *who worked over 48 hours*." FAC ¶ 290 (emphasis added). Nowhere does Neal *himself* plead that *he* worked over 48 hours. The only *facts* that Neal pleads are that he

performed 27 to 55 minutes of off-the-clock work per day, five or six days per week, beyond his regular 40 hours. *See* FAC ¶¶ 60, 86, 90, 99. Thus, even making generous assumptions in Neal's favor, Neal alleges working 42.7 to 45.5 hours per week—not 48. Neal claims that the standard is whether "it appears beyond a doubt that plaintiffs can prove no set of facts that would entitle [him] to relief." Opp. 27 (citation omitted). But after *Iqbal*, a plaintiff must plead more than mere facts that allow for the "sheer possibility" of liability in order to "nudg[e] his claim" "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 680 (2009) (quotations omitted). He "must provide sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than [48] hours in a given week." *Hall v. DIRECTV, LLC*, 846 F.3d 757, 777 (4th Cir. 2017) (quotation omitted). Neal has not done so.

*Second*, preemption further precludes Neal's MFLSA overtime claim, as well as the derivative overtime portion of the payday statute claim (Count XIV). Without a doubt, preemption also applies to any payday claim based on "alleged violations of … the FLSA." Opp. 28. And Neal does not assert a contractual right to overtime. *See supra* at 2–4.

## XII. MISSOURI: West's Claims Must Be Dismissed (Count XVII)

The sole Missouri plaintiff (West) brings an overtime claim under the Missouri Wage Act (Count XVII). But that claim is preempted by the FLSA, and West cannot fall back on a non-existent allegation of a contractual right to overtime. *See supra* at 2–4. Indeed, he does not even identify a payday statute that would support such a right of action.

## XIII. NEVADA: Ricks's & Pennington's Claims Must Be Dismissed (Count XVIII)

The two Nevada Plaintiffs (Ricks and Pennington) have withdrawn their meal-break claims, *see* Opp. 1, 29 n.16, and their overtime claims are preempted because they seek to enforce the same right to time-and-a-half provided by the FLSA. Moreover, neither Plaintiff has pled any contractual right to overtime as an alternative basis for this claim. *See supra* at 2–4.

In addition, Ricks's claims are untimely under the applicable two-year statute of limitations. *See* Opp. 29; Nev. Rev. Stat. § 608.260. Ricks pleads leaving his job in February 2018. FAC ¶ 26. Even assuming he worked as an hourly manager on the last possible date (February 28, 2018), his cause of action would have accrued, at the latest, seven days later, on March 7, 2018. *See* Nev. Rev. Stat. § 608.030 (wages due no later than 7 days after employee resigns). That is more than two years before he filed his complaint, on March 12, 2020.

## XIV.  NEW JERSEY: Gerber's & Suazo's Claims Must Be Dismissed In Part (Count XIX)

The two New Jersey Plaintiffs (Gerber and Suazo) bring claims under the state's Wage and Hour Law and its Wage Payment Law (Count XIX). Plaintiffs' overtime claims under both statutes are preempted, and they have not pled a contractual right to overtime as an alternative basis for their wage payment law claim. *See supra* at 2–4. Plaintiffs' overtime claims thus fail.

## XV.  NEW MEXICO: Martinez's & Lomax's Claims Must Be Dismissed (Count XX)

The two New Mexico Plaintiffs (Martinez and Lomax) bring claims under the New Mexico Minimum Wage Act ("NMMWA") (Count XX). But their overtime claim is duplicative of their FLSA claim, and thus, is preempted. Plaintiffs also have not pled an alternative contractual basis for overtime. *See supra* at 2–4. In addition, Martinez and Lomax cannot pursue a minimum wage claim. They argue that New Mexico does not permit workweek averaging, since the statute sets a per hour or "an hour" rate. Opp. 31; N.M. Stat. Ann. § 50-4-22(A). But if that phrasing were determinative, workweek averaging would be unavailable in many other states with similar language—but where it is accepted. *See, e.g.*, Ark. Code Ann. § 11-4-210(a)(1) ("per hour"); Conn. Gen. Stat. § 31-58(i) ("per hour"); 820 ILCS 105/4 ("per hour"); *see also* Mot. 13, 20, 21.

And while not addressed in the New Mexico portion of their brief, elsewhere Plaintiffs assert that they are bringing gap-time claims in every state, apparently including in New Mexico. *See* Opp. 6. But the New Mexico statute Plaintiffs cite as providing their right of action, N.M.

Stat. Ann. § 50-4-26 (*see* FAC ¶ 321), only covers violations of Section 50-4-22, which, in turn, addresses only minimum wage and overtime—not gap time.  And there is no private right of action to enforce Section 50-4-2—a timing statute—which Plaintiffs cite for the proposition that they are supposedly entitled to be paid "for every hour worked."  *See Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 674 (D.N.M. 2015) ("[T]here is no … private cause of action under § 50-4-2(b) for wages of disputed compensability.").  This flaw is also fatal to any claim the New Mexico Plaintiffs seek to bring under Section 50-4-2 based on an alleged contractual right to overtime.  Because Plaintiffs cite no provision of state law that provides them with a statutory right of action to enforce *contractual* obligations (for gap time or overtime), any such claims fail.

## XVI.  NEW YORK: Tirado's Overtime Claims Must Be Dismissed (Count XXI)

Tirado brings claims under three provisions of New York's Labor Law and one state regulation (Count XXI).  She has abandoned her meal break claims.  Opp. 32 n.17.  Tirado's substantive overtime claim and derivative payday claim are preempted, and she has not pled a contractual entitlement to overtime upon which a payday claim could be based. *See supra* at 2–4.

## XVII.  NORTH CAROLINA: Danford's State-Law Claims Must Be Dismissed (Count XXII)

Danford incorrectly asserts that Lowe's is precluded from bringing a Rule 12(c) motion because Rule 12(c) is not available "until all defendants file an answer."  Opp. 34.  But Defendants *did* file an answer in *Danford*.  *See Danford* Dkt. 31.  To the extent Danford is suggesting Lowe's cannot bring a Rule 12(c) motion in *any* MDL member case until Lowe's has answered in *all* of them, he is incorrect, since each member case "retain[s] [its] individual status."  Wright & Miller, *Fed. Prac. & Proc.* § 3866 (4th ed.); *Brown v. United States*, 976 F.2d 1104, 1107 (7th Cir. 1992).

And Danford's state-law claims cannot withstand Lowe's motion.  Danford only brings claims under two specific provisions of the North Carolina Wage and Hour Act (the "NCWHA"): N.C. Stat. § 95-25.3 (minimum wage) and N.C. Stat. § 95-25.4 (overtime).  *See* FAC ¶¶ 343–44.

He now appears to concede that the NCWHA's carve-out for FLSA-covered enterprises—found at N.C. Stat. § 95-25.14(a)—is fatal to both of his claims against Lowe's (a covered enterprise). *See* Opp. 34. Yet he claims he can still advance a "gap time" claim because he "invokes N.C.G.S. §§ 95-25.6 and 95-25.8"—the state's payday statute and bar on unlawful deductions. *Id.* Not so.

The first problem with this belated theory is that the FAC does not invoke these sections of North Carolina law. Instead, the FAC only alleges violations of Section 95-25.3 (minimum wage) and Section 95-25.4 (overtime). The FAC's reference to the *entire* Wage and Hour Act with an "*et seq.*" cite does not save Danford's after-the-fact gap-time claim, especially when he has cited other provisions of North Carolina law with particularity. *See Strauch v. Computer Scis. Corp.*, 322 F.R.D. 157, 180 (D. Conn. 2017) (rejecting alleged overtime violation under Section 25.6 based on "violation of N.C. Gen Stat. § 95–25.1 *et seq*.'" (quoting complaint)).[6]

The second problem for Danford is that even if he *had* pled a violation of Section 95-25.6 (the payday provision), that provision does not allow an end-run around Section 95.214. "[T]o bring a claim under the NCWHA payday provision, the claim must be separate and distinct from the plaintiff's FLSA minimum wage and overtime claims." *DeHoll v. Eckerd Corp.*, No. 1:18CV280, 2018 WL 5624150, at *5 (M.D.N.C. Oct. 30, 2018) (dismissing payday claim relying on the "very same [allegations] upon which [Plaintiff] relies to support his minimum wage and overtime claims."). But Danford uses exactly the same allegations to support both his FLSA claims and what he now casts as his payday claims. That is not allowed. Danford's citations to *Martin v. Lowe's Cos.*, No. 5:20-cv-00015, 2020 WL 5369074 (W.D.N.C. Sept. 8, 2020), and *Martinez-Hernandez v. Butterball, LLC*, 578 F. Supp. 2d 816 (E.D.N.C. 2008), do not change the

---

[6] In contrast, in *Martin v. Lowes Cos.*, the plaintiff—represented by the same counsel as Danford—specifically alleged violations of Sections 25.6 and 25.8. *See* Compl. ¶ 101, No. 5:20-cv-00015 (W.D.N.C. Feb. 14, 2020), Dkt. 1.

analysis, as those decisions both addressed the preemptive effect of the FLSA itself, and neither even mentions Section 95.214.

The final problem for Danford is that neither section applies here on its own terms: Section 25.6 is not available where, as here, a "genuine dispute exist[s] over whether the hours that the plaintiffs claimed were actual hours worked." *Hanson-Kelly v. Weight Watchers Int'l, Inc.*, No. 1:10CV65, 2011 WL 2689352, at *3 (M.D.N.C. July 11, 2011). And as to Section 25.8, it speaks to *deductions **from** wages* for things like taxes, union dues, and uniforms, not what counts as compensable time or the amounts due for it—topics covered by other provisions of the same law.

## XVIII. OHIO: Rumpke's, Frank's & Wolfe's Claims Must Be Dismissed (Counts XXIII–XXIV)

The three Ohio Plaintiffs (Rumpke, Frank, and Wolfe) bring claims under the Ohio Minimum Fair Wage Standards Act ("OMFWSA") (Count XXIII) and the Ohio Prompt Pay Act ("OPPA") (Count XXIV). All must be dismissed for three reasons.

*First*, Wolfe concedes his OMFWSA claim is untimely (Opp. 35 n.19). While he does not address his OPPA claim, that claim is subject to the same two-year statute of limitations, and thus, also fails. *Scheck v. Maxim Healthcare Servs., Inc.*, 333 F. Supp. 3d 751, 760 (N.D. Ohio 2018).

*Second*, the Ohio Plaintiffs' overtime claim under the OMFWSA is preempted, as is any derivative claim under the OPPA. *See supra* at 2–4.

*Third*, the Ohio Plaintiffs' claims under the OPPA must be dismissed because the statute does not cover disputed wages. Plaintiffs rely on *Monahan v. Smyth Automotive, Inc.*, 1:10-CV-00048, 2011 WL 379129, at *9 (S.D. Ohio Feb. 2, 2011) to argue that their OPPA claim is viable. But the Sixth Circuit rejected *Monahan*'s reasoning in *O'Brien v. Ed Donnelly Enterprises*, affirming that under the OPPA, "disputes" include both legal and "factual dispute[s] over the hours worked." 575 F.3d 567, 577–78 (6th Cir. 2009); *see also Sutka v. Yazaki N. Am. Inc.*, 256 F. Supp. 3d 677, 682 (E.D. Mich. 2017) ("*Monahan* is in conflict with *O'Brien*."). Here, Lowe's strongly

disputes that the claimed wages are owed, so the OPPA does not apply.

## XIX. PENNSYLVANIA: Martin's Claim Must Be Dismissed (Count XXV)

The Pennsylvania Plaintiff (Martin)'s only claim is for overtime under the state's Wage Act, 43 Pa. Cons. Stat. § 333.104(c) (Count XXV). The overtime mandate in that law duplicates that of the FLSA, so this claim is preempted. *See supra* at 2–4. Although Pennsylvania has a Wage Payment and Collection Law that might provide for a "gap time" claim, it is located in a different part of the state code (43 Pa. Cons. Stat. § 260.1) and Martin does not invoke it.

## XX. SOUTH CAROLINA: Forte's Overtime Claims Must Be Dismissed (Count XXVI)

The South Carolina Plaintiff (Forte) brings claims under the state's Payment of Wages Act (Count XXVI). His claim for overtime under that statute must be dismissed.

Forte alleges in the FAC that "[t]he South Carolina Wage Act entitles employees to overtime compensation at a rate equal to one and one-half the amount of their regular rate of pay for all hours worked in excess of 40 hours per week." FAC ¶ 377. However, he has now conceded there is no substantive entitlement to overtime under South Carolina law. *See* Opp. 39 (citing FAC ¶ 109). In a futile attempt to rescue his claim, he suggests it has always been "contractually based." *Id.* But that is not what he pled, nor does the paragraph he cites say anything about a contract. *Id.*

## XXI. WASHINGTON: Cleavenger's Claims, And Both Plaintiffs' Overtime And Minimum Wage Claims, Must Be Dismissed (Counts XXVII–XXVIII)

The Washington Plaintiffs allege violations of the Washington Minimum Wage Act (Count XXVII) and the Washington Wage Rebate Act (Count XXVIII). All of Cleavenger's claims must be dismissed; all the overtime claims are preempted; and the minimum wage claim is not viable.

*First*, Cleavenger does not dispute that he accepted $17,769.60 in exchange for releasing his claims against Lowe's. *See* Mot. 43–44; *id.*, Schwartz Decl., Ex. 2. Rather, he argues that his release is not enforceable under RCW 49.46.090—a statute that applies to employment agreements

to work for less than the minimum wage. Cleavenger does not cite a single Washington case for the proposition that RCW 49.46.090 should be applied to prohibit a settlement agreement. And Washington courts have enforced releases of wage claims like the one at issue here. *See, e.g.*, *Pugh v. Evergreen Hosp. Med. Ctr.*, 311 P.3d 1253, 1258–59 (Wash. Ct. App. 2013).

*Second*, the overtime claims under both Washington statutes are preempted. *See supra* at 2–4. Certainly, the Wage Rebate statute cannot be used to enforce "alleged violations of … the FLSA." Opp. 41. Nor do the Washington Plaintiffs advance any contractual right to overtime to support their Wage Rebate Act overtime claim. *See supra* at 4.

*Third*, the Washington Plaintiffs' minimum wage claim (Count XXVII) must be dismissed. The claim can only proceed if Washington is in the minority of jurisdictions that bars workweek averaging. The most recent, and authoritative, word on the subject is from the state Supreme Court, sitting *en banc* in 2019, which said: "workweek averaging is a valid measure of compliance with the [Minimum Wage Act] for nonagricultural workers." *Sampson v. Knight Transp., Inc.*, 448 P.3d 9, 16 (Wash. 2019) (en banc). Thus, the minimum wage claim should be dismissed.

## XXII.  WEST VIRGINIA: Fyfe's Claims Must Be Dismissed (Count XXIX)

The West Virginia Plaintiff (Fyfe) brings claims under the West Virginia Overtime Act and  Wage Payment and Collection Act.  (Count XXIX).  For several reasons, both claims fail.

*First*, Fyfe does not dispute that he was, in fact, a *salaried* Assistant Store Manager.  Nor does he dispute the authenticity of his employment contract demonstrating as much.  Instead, he argues that the Court cannot consider the agreement because "the FACC never mentions a written employment agreement, offer letter, or any other written instrument." Opp. 44.  Not so.  Under the heading "Defendants Employment Contracts," Plaintiffs allege that they "accepted … offers of employment and began working for Defendants, creating a valid contract," and they then use the term "contract" or "contractually" 13 times in two pages.  FAC ¶¶ 112–24.  Moreover, Fyfe

argues that he "explicitly pled the existence of a contract requiring Lowe's to pay him an hourly wage for all hours worked." Opp. 46. Fyfe's employment agreement is fatal to his claims. *See, e.g.*, *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

*Second*, even if Fyfe had been an hourly manager (and he was not), his Overtime Act claims (and thus, associated Wage Payment and Collection Act claims) fail for additional reasons. If the Overtime Act applied to Lowe's, its effect would be preempted. *See supra* at 2–4. But Lowe's is subject to FLSA-enterprise coverage, and is therefore exempt from the Overtime Act under the state law's exclusion for employers with 80% or more of their employees covered by the FLSA. *See* Mot. 46. To avoid this outcome, Fyfe claims that there is no such thing as enterprise-coverage exclusion, and that if there were, Lowe's would not qualify. *See* Opp. 45. But state law directs regulators to assess "first whether the employer is a covered enterprise as defined in federal law" before pursuing enforcement activities. W. Va. Code R. § 42-8-6.2; *see Adkins v. Labor Ready, Inc.*, 185 F. Supp. 2d 628, 643 (S.D.W. Va. 2001) (finding defendant exempt from Overtime Act due to enterprise coverage because that meant "[t]he FLSA … covere[d] *all* employees of [the] enterprise." (emphasis added)). Nor can Fyfe rely on a bald assertion that less than 80% of Lowe's employees are subject to the FLSA, while in the same pleading, alleging that Lowe's was "engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA." FAC ¶ 150. That is the literal definition of FLSA enterprise coverage. *See* 29 U.S.C. § 203(s)(1)(A)(i)–(ii). That leaves a contract as the only possible support for an overtime claim under the Wage Payment and Collection Act. But Fyfe does not allege a contractual right to an overtime premium—only to a regular hour wage. *See supra* at 4. His claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Lowe's respectfully requests that the Court dismiss portions of the First Amended Consolidated Complaint with prejudice as outlined above.

Dated:  December 22, 2020                     Respectfully submitted,

                                              /s/ Jason C. Schwartz
Adam K. Doerr (Bar Number: 37807)             Jason C. Schwartz
ROBINSON, BRADSHAW & HINSON, P.A.             Molly T. Senger
101 N. Tryon St., Ste. 1900                   David A. Schnitzer
Charlotte, North Carolina 28246               GIBSON, DUNN & CRUTCHER LLP
Telephone:  (704) 377-2536                    1050 Connecticut Avenue, N.W.
Facsimile:  (704) 378-4000                    Washington, DC 20036
adoerr@robinsonbradshaw.com                   Telephone:  (202) 955-8500
                                              Facsimile:  (202) 467-0539
                                              jschwartz@gibsondunn.com
                                              msenger@gibsondunn.com
                                              dschnitzer@gibsondunn.com

                                              Karl G. Nelson
                                              GIBSON, DUNN & CRUTCHER LLP
                                              2001 Ross Ave., Ste. 2100
                                              Dallas, TX 75201
                                              Telephone:  (214) 698-3100
                                              Facsimile:  (214) 571-2900
                                              knelson@gibsondunn.com

                    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ Jason C. Schwartz
*Attorney for Defendants*