# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO. 5:20-MD-02947-KDB-DSC

|  |  |
|---|---|
| **IN RE: LOWE'S COMPANIES, INC. FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION** | <u>**ORDER**</u> |

**THIS MATTER** is before the Court on Defendant Lowe's Companies, Inc.'s ("Lowe's") Motion to Compel Arbitration Under Fed. R. Civ. P. 12(B)(1), to Dismiss Under Fed. R. Civ. P. 12(B)(6), and for Judgment on the Pleadings Under Fed. R. Civ. P. 12(C) (Doc. No. 17) (collectively, "MTD") in this multi-district litigation in which Plaintiffs assert claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the wage and hour laws of twenty different states. The Court has carefully considered these motions and the parties' extensive briefs and exhibits.[1] For the reasons and to the extent described below, the Court will **in part GRANT and in part DENY** the motions.

---

[1] With the benefit of the Parties' thorough briefs, the Court has determined that oral argument would not materially aid in the decisional process.

1

# I.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc*., 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id*. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Lowe's also moves for a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). A motion for judgment on the pleadings is governed by the standard applicable to a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Burbach Broadcasting Co. of Delaware v. Elkins Radio*, 278 F.3d

2

401, 405 (4th Cir. 2002); *Shipp v. Goldade*, No. 5:19-CV-00085-KDB-DCK, 2020 WL 1429248, at *1 (W.D.N.C. Mar. 19, 2020).

In analyzing a Rule 12 motion, a court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). In particular, when considering a Rule 12(c) motion, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint . . . so long as the authenticity of these documents is not disputed." *Chapman v. Asbury Auto. Grp., Inc.*, No. 3:13 cv 679, 2016 U.S. Dist. LEXIS 121043, at *3 (E.D. Va. Sept. 7, 2016) (quoting *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006)); *see also Goines v. Valley Cmty. Servs. Bd*., 822 F.3d 159 (4th Cir. 2016). "[I]n the event of conflict between the bare allegations of the complaint and any attached exhibit, the exhibit prevails." *Slater v. Bank of Am.*, No. 1:10-1091, 2012 U.S. Dist. LEXIS 101687, at *21 (S.D. W.Va. June 26, 2012) (citing *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)).

Finally, a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter jurisdiction to hear the dispute. *See* Fed. R. Civ. P. 12(b)(1). "Whether the parties have agreed to arbitrate their disputes is a jurisdictional question," and where all of the claims at issue in a lawsuit are arbitrable, the court may dismiss the lawsuit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See Wake Cnty. Bd. of Educ. v. Dow Roofing Sys., LLC*, 792 F. Supp. 2d 897, 900 (E.D.N.C. 2011) (citing *Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emp. v. Norfolk S. Ry. Co*., 143 F.2d 1015, 1017 (4th Cir. 1944) ("Arbitration deprives the judiciary of jurisdiction over the particular controversy and the courts

3

have long ruled that there must be strict adherence to the essential terms of the agreements to arbitrate.")); *see also Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc*., 252 F.3d 707, 709-10 (4th Cir. 2001) ("[D]ismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").

Federal policy strongly favors arbitration, and the FAA represents "a liberal federal policy favoring arbitration agreements" and applies "to any arbitration agreement within the coverage of the [FAA]." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983). Under the FAA, a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. At the same time, it is well-settled that a "party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Levin v. Alms & Assocs., Inc.,* 634 F.3d 260, 266 (4th Cir. 2011) (quotation omitted).

In order for federal district courts to compel parties to arbitrate under 9 U.S.C. § 4, four elements must be present: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party] to arbitrate the dispute. *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016); *see also Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc*. 807 F.3d 553, 563 (4th Cir. 2015). The party seeking to compel arbitration must establish an agreement to arbitrate. *See In re Mercury Constr. Corp.,* 656 F.2d 933, 939 (4th Cir. 1981), *aff'd sub nom. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1 (1983).

In determining whether the parties agreed to arbitrate, the Court looks to relevant state contract law principles. *Hill v. Peoplesoft USA, Inc*., 412 F.3d 540, 543 (4th Cir. 2005).

## II. FACTS AND PROCEDURAL HISTORY

Headquartered in Mooresville, North Carolina, Lowe's is a retail company that operates a chain of more than 2,000 home improvement and hardware stores in the United States and Canada. (Doc. No. 16, at ¶ 3). Lowe's employs non-exempt hourly managers, including Department Managers, Service Managers, and Support Managers (hereinafter collectively referred to as "Hourly Managers"), to supervise and oversee the retail stores, or various departments within the retail stores, and to manage the retail stores' employees. (*Id*. at ¶ 4).

Hourly Managers are required to work a full-time schedule, with occasional overtime; however, the Plaintiffs allege that the Hourly Managers were not compensated for all the hours worked during their shifts. (*Id.* at ¶ 5). Specifically, they allege that the Hourly Managers were required to perform work tasks before and after their scheduled shifts and during their unpaid meal periods, when they are not clocked into Lowe's timekeeping system. (*Id.* at ¶ 6). Plaintiffs argue that this time qualifies as overtime or "gap time" (unpaid time in weeks when the employee works less than the overtime hour threshold, typically 40 hours) within the meaning of applicable federal and state laws; therefore, Plaintiffs and Hourly Managers claim they are owed additional pay (as well as damages, injunctive relief, penalties, attorneys' fees and costs) related to this alleged uncompensated, off-the-clock work. (*See Id.*).

With respect to the details of this action's procedural history, North Carolina Plaintiff Daniel Danford first filed suit in this Court on April 11, 2019, asserting a claim under the FLSA on behalf of a putative nationwide collective and a claim under the North Carolina Wage and Hour

Act ("NCWHA"), N.C. Stat. § 95-25.1, on behalf of a putative state-wide Rule 23 class. Danford also brought common-law claims for unjust enrichment and breach of contract on behalf of putative nationwide Rule 23 classes. (*See Danford* Doc. No. 1). The Court conditionally certified an FLSA collective on October 2, 2019. (*Id*. at Doc. No. 50). 3,890 individuals opted-in to the collective, 1,039 of whom then were dismissed because they had valid and enforceable arbitration agreements with Lowe's (945 by stipulation and 94 on the basis of a motion to compel arbitration by Lowe's). (*See Danford* Doc. No. 185). All Plaintiffs currently pursuing state-law claims against Lowe's are also FLSA opt-in plaintiffs in *Danford*, with the exception of Plaintiff Hyde (Maryland).

In March and April 2020, Plaintiffs filed putative statewide class actions against Lowe's in 19 other courts across the country. All of these Plaintiffs were represented by the same counsel and made the same allegations as in *Danford*: namely, that Lowe's failed to compensate them and other hourly managers for alleged time spent opening and closing stores and responding to smartphone communications while off-the-clock. (*See* Doc. No. 1). Lowe's filed a motion with the Judicial Panel on Multidistrict Litigation to consolidate the 18 federal court cases as an MDL and that motion was granted on August 5, 2020. (*Id*). Lowe's then removed the final case, originally filed in the Philadelphia Court of Common Pleas, to federal court and that case was transferred as a tag-along action and became part of the MDL on August 31, 2020. (Doc. No. 8). On September 15, 2020, the Court entered Case Management Order No. 1. (*See* Doc. No. 13). The operative consolidated pleading is now Plaintiffs' First Amended Consolidated Complaint, which was filed on October 12, 2020 (Doc. No. 16) ("FACC").

The FACC includes (i) an FLSA claim, brought by Plaintiff Danford and 30 of the other 31 Plaintiffs (all but Hyde); and (ii) claims on behalf of putative statewide Rule 23 classes under wage-and-hour laws in the following 20 states: Arizona, Arkansas, Colorado, Connecticut, Illinois, Kentucky, Maryland, Massachusetts, Minnesota, Missouri, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Washington, and West Virginia. (*See* Doc. No. 16). In the present motion, Lowe's moves to dismiss the majority of Plaintiffs' state-law claims and in the case of the North Carolina claim, in which an answer has been filed, seeks a judgment on the pleadings.

## III.   DISCUSSION

### A.   FLSA Preemption

As its first and primary argument, Defendants ask the Court to dismiss Plaintiffs' claims seeking overtime pay under the wage laws of the Plaintiffs' states on the ground that those state law claims are preempted by the FLSA. Specifically,  Lowe's argues that the following state-law overtime claims are preempted: "(i) those under state statutes that provide the same substantive right to time-and-a- half for hours worked over 40 in a week as the FLSA; and (ii) those under state payday statutes premised on preempted substantive state-law overtime claims (or on the right to overtime provided by the FLSA itself)." *See* Doc. No. 23 at 3. Lowe's does not contend that the FLSA preempts Plaintiffs' contractual "gap-time" claims or statutory payday claims based on an alleged contractual entitlement to overtime. *Id*. In response, Plaintiffs argue that the FLSA only sets a "floor" that prohibits states from enacting state wage laws setting requirements lower than the FLSA requirements but does not preempt "parallel" state statutory schemes that give

employees "higher levels of recovery, longer statutes of limitations, or provide remedies different from those set by the FLSA." *See* Doc. No. 21 at 2.

The parties agree that the law of this Court, specifically the law of the Fourth Circuit, governs the application of federal law and federal principles in this MDL action. *See* Wright & Miller, *Fed. Prac. & Proc.* § 3867 & n.32 (4th ed.) (In an MDL, "the transferee court applies its own interpretation of federal law"); *see also Flores v. Ethicon, Inc.*, No. 2:14-CV-24748, 2018 WL 3130421, at *3 (S.D.W. Va. June 25, 2018) (applying law of the circuit of the transferee court in MDL). Unfortunately, and contrary to Lowe's repeated contention, there is no governing authority from the Fourth Circuit that controls the Court's decision on the fundamental question presented here. Nevertheless, our Court of Appeals has provided principles and an analytic framework to guide the Court's ruling. Based on that guidance, the Court concludes that while the FLSA does preempt state laws that are less generous to employees than the FLSA, it does not preempt state laws that provide employees the same or greater protections (although Plaintiffs of course may not recover more than once for the same time worked).

In *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 191 (4th Cir. 2007), the court explained the "longstanding principles of preemption" that guide the assessment of whether the FLSA invalidates a plaintiff's asserted state law claims. "The Supremacy Clause of the Constitution renders federal law 'the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' U.S. Const. art. VI, cl. 2." *Id*. Accordingly, federal statutes and regulations can nullify conflicting state or local actions. *Id*. (citing, *College Loan Corp. v. SLM Corp.,* 396 F.3d 588, 595 (4th Cir. 2005)).

Federal law may preempt state law under the Supremacy Clause in three ways—by "express preemption," by "field preemption," or by "conflict preemption." *See Pinney v. Nokia, Inc.,* 402 F.3d 430, 453 (4th Cir. 2005) (citing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516 (1992); *Hillsborough County v. Automated Med. Labs., Inc.,* 471 U.S. 707, 713 (1985); *S. Blasting Servs., Inc. v. Wilkes County,* 288 F.3d 584, 590 (4th Cir. 2002). There is no contention that Congress has expressly preempted state wage laws nor that the FLSA reflects a statutory intent to preempt the entire field of wage regulations. Therefore, at issue in this action is conflict preemption, which occurs when a state law "'actually conflicts with federal law.'" *Anderson*, 508 F. 3d. at 191 (citing *S. Blasting,* 288 F.3d at 590 (quoting *Hillsborough,* 471 U.S. at 713)). In assessing whether an actual conflict exists between state and federal law, the court must "resolve the more specific inquiries of whether 'it is impossible to comply with both state and federal law' or 'whether the state law stands as an obstacle to the accomplishment of the full purposes and objectives' of federal law." *Id*. at 191-192 (quoting *Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 248 (1984)). In *Anderson*, the court termed this doctrine "obstacle preemption." *Id*.

In determining whether "obstacle preemption" exists, the Court is instructed to start the inquiry "with the basic assumption that Congress did not intend to displace state law." *Id*. at 192 (quoting *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981)); *see also Cipollone,* 505 U.S. at 516 ("Consideration of issues arising under the Supremacy Clause starts with the assumption that the historic police powers of the States are not to be superseded by Federal Act unless that is the clear and manifest purpose of Congress." (internal quotation marks and alterations omitted)). The purpose of Congress is therefore the "ultimate touchstone" of a preemption analysis. *Cipollone,* 505 U.S. at 516 (internal quotation marks omitted). Indeed, "the presumption

9

that Congress did not intend to preempt state law is especially strong when it has legislated 'in a field which the States have traditionally occupied'" such as "protecting the health and safety of their citizens." *Id*. (citing *S. Blasting,* 288 F.3d at 590 (quoting *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 485 (1996) (internal quotation marks omitted))). Moreover, *Anderson* makes clear that the FLSA sits squarely in that field, holding that "Congress enacted the FLSA to eliminate 'labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.' 29 U.S.C. § 202(a)." *Anderson*, 508 F. 3d at 192.

In support of its preemption argument, Lowes relies almost exclusively on *Anderson*, claiming that in *Anderson* the Fourth Circuit holds that state law claims that address "the same substantive rights" as the FLSA (entitlement to minimum wage and overtime pay) are preempted by the FLSA. However, Lowe's exaggerates *Anderson's* holding and its impact on this action. The facts in *Anderson* – and how they raise a different issue than the one presented in this action – are significant. In *Anderson*, the plaintiff employees sued their employer (Sara Lee) to recover pay for time spent putting on and taking off their required uniforms before working their various production jobs, but in doing so they did *not* assert any claims under the FLSA. Instead, the plaintiffs attempted to recover for their "FLSA-based" claims only on state common law theories of recovery (breach of contract, negligence and fraud). *Id*. at 193-194.

In its ultimate ruling that Plaintiffs' state common law claims were preempted under the theory of "obstacle preemption," the *Anderson* court explained that because Congress prescribed "exclusive remedies" for FLSA violations it would improperly "stand[] as an obstacle to the accomplishment of the full purposes and objectives of the FLSA" to allow different state law remedies for FLSA violations. *Id*. The court also noted in dicta that "our conclusion is consistent

10

with the rulings of several district courts deeming state claims to be preempted by the FLSA where those claims have merely duplicated FLSA claims.*" *Id.* at 194-195. (citing to numerous cases holding that state common law claims based on FLSA violations are preempted).

Plaintiffs contend that *Anderson* does not address the circumstances of this case because, unlike the plaintiffs in *Anderson*, they seek to recover both under the FLSA and the various state law wage and hour and payday statutes they have asserted. In other words, they claim that *Anderson* does not prohibit a state from enacting parallel wage and hour regulations (which were pointedly not at issue in that case)[2] nor does it prevent a plaintiff from recovering under such a state statute even if the remedy or procedural rules under the state law is more favorable than under the FLSA[3] (although of course duplicate recovery is not permitted).

In reaching a decision on preemption in this action, it seems clear to the Court that *Anderson* is not in any way dispositive. *Anderson*'s holding in the context of its facts is easily understood because it would plainly impair the congressional judgment as to the proper remedy for FLSA violations to allow a violation of the FLSA itself to be derivatively subject to increased state law tort remedies for negligence or fraud. However, that is quite different from and simply does not reach the question of whether states can enact parallel wage and hour laws. Indeed, in *Anderson* the court specifically noted the absence of any state wage and hour claim. Thus, the

---

[2] *See Anderson*, 508 F. 3d at 193 ("The Class Members do not contend, however, that any North Carolina law entitles them to unpaid wages. Rather, as discussed above, they rely on the FLSA for their rights, and they invoke state law only as the source of remedies for the alleged FLSA violations.").

[3] For example, some state statutes may allow treble damages or a longer period of limitations for asserting claims.

Court agrees with Plaintiffs that *Anderson* does not decide whether the FLSA preempts more favorable state wage and hour laws asserted in addition to FLSA overtime claims, where the state claims seek recovery based on the same hours worked.

Since *Anderson*, district courts in the Fourth Circuit have reached different conclusions on the application of *Anderson* to the question of FLSA preemption of parallel state wage and hour laws. In some cases, the court parrots the statement in *Anderson* that claims that "merely duplicate" FLSA claims are preempted and in other cases the courts hold that a plaintiff can assert separate state wage and hour law claims outside FLSA preemption so long as there is no duplicative recovery. *See, e.g.*, *Moodie v. Kiawah Island Inn Co., LLC*, 124 F. Supp. 3d 711, 724 (D.S.C. 2015); *Throckmorton v. Summerville Police Dep't*, No. 2:20-CV-1936-RMG, 2020 WL 3490212, at *4 (D.S.C. June 26, 2020) (granting judgment on the pleadings "to the extent ... Plaintiff seeks compensation under the [South Carolina payday statute] for overtime pay otherwise required by the FLSA … [because] *Anderson* clearly provides that [those] claims are preempted by the FLSA"); *Nimmons v. RBC Ins. Holdings (USA) Inc.*, No. 6:07-cv-2637, 2007 WL 4571179, at *3 (D.S.C. Dec. 27, 2007); *Scruggs v. Skylink Ltd.*, No. 3:10-0789, 2011 U.S. Dist. LEXIS 138759, *30 (S.D. W. Va. Dec. 2, 2011) ("It is well established that the FLSA, in its core areas of protection—minimum wage and overtime regulation—has a relatively narrow pre-emptive effect as it does not completely preempt state laws but only preempts them to the extent that they are less generous than the FLSA." (internal citation omitted)); *Yong Le Xue v. J&B Spartanburg LLC*, No. 7:16-00340-MGL, 2016 U.S. Dist. LEXIS 68975, at *5-7 (D.S.C. May 26, 2016) ("the FLSA does not prevent states from creating a parallel regulatory scheme that provides additional protections for employees … claims that are 'separate and distinct' from a plaintiff's FLSA claims are not

12

preempted by the FLSA"); *Martinez-Hernandez v. Butterball, LLC*, 578 F. Supp. 2d 816, 820 (E.D.N.C. 2008) (applying this analysis to a claim alleging violation of the North Carolina Wage and Hour Act); *Regan v. City of Hanahan*, Civil Action No. 2:16-1077-RMG, 2017 U.S. Dist. LEXIS 50111, at *5, *9 (D.S.C. Apr. 3, 2017) ("Since the Fourth Circuit's 2007 decision in *Anderson*, courts in this circuit have frequently found that plaintiffs' state law [unpaid] wage claims are not preempted by the FLSA."). However, the cited cases often do not make explicit the preemption analysis necessary to apply *Anderson*'s teaching to our different circumstances. The Court seeks to do so below.

With due regard for the principles of federalism and the "basic presumption that Congress did not intend to displace state law," *Anderson*, 508 F. 3d 192, the Court finds that the FLSA is not intended to preempt independent state wage and hour laws that cover the same conduct as the FLSA, even if those laws offer Plaintiffs additional remedies or procedural protections. Again, the touchstone of the Court's analysis is the intent of Congress as expressed in the statute. Rather than indicate an intention to preempt state law, the FLSA expressly contemplates that states may enact stricter minimum wage and overtime requirements that an employer must follow notwithstanding the FLSA. *See* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum work week established under this chapter....").[4]

_____

[4] Because the overtime provisions of the states at issue in this motion allegedly establish the same, rather than higher, protections than the FLSA, they are not expressly preserved by this provision.

Moreover, a finding of preemption here would bar enforcement of all state wage and hour laws that did not exceed the standards of the FLSA, a significant intrusion on state authority and a reversal of the traditional presumption against preemption, which is particularly strong given states' lengthy history of regulating employees' wages and hours. *See Cal. Div. of Labor Standards Enforcement v. Dillingham Constr.,* 519 U.S. 316, 330 (1997) (presuming that ERISA did not preempt a state wage law in light of the state's lengthy history of wage regulation). Therefore, in light of the strong presumption against preemption in this area, the possibility for a plaintiff to obtain a more favorable recovery under a state wage and hour law does not stand as an "obstacle" to the purpose of the FLSA, which *Anderson* described as seeking to "eliminate labor conditions detrimental to … workers."[5] *See Knepper v. Rite Aid Corp.*, 675 F.3d 249, 262–64 (3d Cir. 2012) (holding that state wage laws were not preempted by the FLSA and distinguishing *Anderson* on the same grounds discussed above).

Finally, accepting Lowe's broad preemption claim further appears to be inconsistent with cases that hold that a claim under state wage and hour law filed in state court cannot be removed

---

Nevertheless, the savings clause is relevant to the question of preemption. Express preemption is improper here, as the statute's plain language evinces a clear intent to preserve rather than supplant state law. Also, the presence of the savings clause undermines any suggestion that Congress intended to occupy the field of wage and hour regulation.

[5] Viewed in a concrete example, an employer and employee would effectively be in the same practical position where state law provides employees with an extra hour of overtime (starting at 39 hours) as they would be if an employee worked more than 40 hours a week in a state that gives plaintiffs an opportunity to recover an extra hour of overtime pay as an additional remedy beyond the liquidated damages remedy in the FLSA. But, according to Lowe's the former would be clearly allowed under FLSA's savings clause but the latter would be preempted as a matter of law. When viewed in terms of the statutory goal of "protecting" workers, the Court does not discern a principled difference in these circumstances.

14

as a federal question under the FLSA. *See Mayo v. Pest Servs. Co.*, No. 8:20-CV-01047-PX, 2020 WL 3868992, at *2 (D. Md. July 9, 2020) (rejecting argument that state wage and hour claims necessarily invoked federal question jurisdiction because the claims "parallel" the FLSA and warning of the "gross overexpansion of federal question jurisdiction that would result if this argument were credited."); *Chandler v. Cheesecake Factory Restaurants, Inc.*, 239 F.R.D. 432, 436–38 (M.D.N.C. 2006) (holding that the FLSA did not so completely preempt plaintiff's state law "off the clock" claims that they are automatically converted into federal claims). If, as argued by Lowe's, the FLSA always preempts claims for overtime under a state wage and hour law as a matter of law (to the extent the conduct covered would also violate the FLSA) then all state wage and hour claims could arguably be removed to federal court as a federal question. The Court declines to endorse such a wide potential expansion of federal jurisdiction.

In summary, the Court finds that Plaintiffs' state law overtime claims or other overtime claims based on state payday statutes are not preempted by the FLSA unless the FLSA preempts the state law under the FLSA's savings clause.

B.  Plaintiffs' State Minimum Wage Claims

With respect to the merits of the Plaintiffs' various state claims, Lowe's first seeks dismissal of Plaintiffs' alleged claims for violation of state minimum wage provisions in 19 of the 20 states at issue (all but Pennsylvania).  In response, Plaintiffs disclaim that they are asserting minimum wage claims in any states other than Colorado, New Mexico and Washington.[6] Instead,

---

[6] As discussed below, Plaintiffs argue that they have viable minimum wage claims in these states because they do not allow workweek averaging. Accordingly, not being paid for hours worked, i.e. being paid $0.00 for those hours, allegedly violates the relevant minimum wage statutes.

Case 5:20-md-02947-KDB-DSC   Document 28   Filed 02/03/21   Page 15 of 50

Plaintiffs contend that they have asserted "gap time" claims in each of the 20 States. *See* FACC at ¶¶110-111 (and numerous paragraphs incorporating these allegations into each state claim).[7]  In the apparent absence of an actual dispute over minimum wage violations (in most of the states), the Court need not decide to what extent the FACC could be read to allege such claims nor reach out to "dismiss" claims that Plaintiffs say are not being made. Plaintiffs will simply be held to their representations that they do not seek any recovery for any alleged state law minimum wage violations outside of Colorado, New Mexico and Washington.  To the extent Lowe's challenges the merits of Plaintiffs' numerous "gap time" claims for "compensation for every hour worked in a workweek," *see, e.g.*, FACC ¶¶ 206, 228, 354, those arguments will be discussed below in the context of each of the particular state statutes.

C. Plaintiffs' "Contractual" Overtime Claims

Lowe's also generally raises an issue as to whether Plaintiffs have properly alleged a contractual as distinguished from a statutory right to overtime pay. Lowe's argues that in the absence of a specifically pled contractual right to "overtime" pay (i.e. pay beyond the employee's regular hourly rate, for example at the rate of "time and a half"), Plaintiffs are not entitled to recover wages beyond their regular rate unless additional pay is authorized by statute.  Plaintiffs respond that Lowe's has not provided legal authority for their argument that Plaintiffs are required to plead a contractual entitlement to overtime to assert their state law overtime claims (yet at the

---

[7] Lowe's reply brief (Doc. No. 23 at  2-3) misleadingly claims that "[i]n actuality, the FAC does not contain the phrase "gap time" in *any* of Plaintiffs' state law counts…." (emphasis in original). To the contrary, the state law claims each incorporate Plaintiffs' very specific "gap time" claims in each Count of the FACC.

same time fail to cite any authority of their own in support of their position) and say that in any event they have in fact pled those contractual rights.

In resolving this question, it is important to clarify what is and is not at issue. To the extent that Lowe's argues that Plaintiffs have not specifically alleged that they are entitled to be paid (and have not been paid) for all hours worked *at their regular hourly wage* then the Court agrees with Plaintiffs that such allegations have clearly been made. *See* FACC at ¶¶ 121, 124 ("Defendants were contractually obligated to pay the Hourly Managers their regular rates of pay *for all hours worked* ….) (emphasis in original). However, the Court agrees with Lowe's that Plaintiffs have not alleged that they had a contractual agreement in which Lowe's agreed to pay Plaintiffs *more* than their regular hourly wages for time worked in excess of 40 hours in a week. On the contrary, Plaintiffs specifically allege that they are entitled to be paid at their "contractual hourly wage rates" and "regular rates" for all time worked. *See* FACC at ¶¶ 121, 124.[8]

Accordingly, while the FLSA and numerous state statutes clearly give Plaintiffs a statutory right to be paid at least one and a half times their regular hourly rate for all hours worked in excess of 40 hours in a week, in the absence of a statutory entitlement (or a specific allegation of a contractual promise) Plaintiffs are not entitled to recover more than their regular rates of pay for "overtime" work under, for example, state laws requiring timely payment of wages for all hours worked. In the FACC, Plaintiffs have only alleged that they are contractually owed their regular

---

[8] However, for at least one state (Arizona), Plaintiffs alleged a contractual promise to pay "overtime wages" at the rate of one and one-half times their regular rate of pay. *See* FACC at ¶ 166. The Court will recognize that specific contractual claim notwithstanding Plaintiffs' more general allegations of a contractual entitlement to only regular pay.

hourly wages for all hours worked, whether less than or beyond 40 hours in a week. Thus, they are limited to that recovery without additional statutory authority.

D. <u>Arizona State Law Claims</u>

The two Arizona Plaintiffs (Slade Grove and Eugene Garcia) allege several violations of the Arizona Wage Act, A.R.S. §§ 23-350 *et seq.* based on Lowe's alleged failure to pay them for all hours worked (Count II). Lowe's seeks dismissal of these state law claims on the grounds that 1) the claims are time-barred and 2) Plaintiffs are not entitled to additional overtime pay because there is allegedly no substantive entitlement to overtime under Arizona law.

The Parties agree that the Arizona Wage Act has a one-year statute of limitations. *See Redhair v. Kinerk, Beal, Schmidt, Dyer & Sethi, P.C.*, 183 P.3d 544, 551 (Ariz. Ct. App. 2008) (citing Ariz. Rev. Stat. Ann. § 12-541(3), (5)); *see also Eichenberger v. Falcon Air Express Inc.*, No. 2:14-cv-168, 2014 WL 3819355, at *6 (D. Ariz. Aug. 4, 2014). Lowe's argues that the period of limitations starts running "[a]t the latest" on "the date that Plaintiffs[] ceased to be employed by Defendants," citing *Channel v. Home Mortg., Inc.*, No. 2:03-cv-100, 2006 WL 8440333, at *1 (D. Ariz. Nov. 30, 2006). If the limitations period runs from the last date of employment then neither Plaintiff Grove nor Plaintiff Garcia's claims are timely because both left Lowe's more than a year prior to their complaint.[9]

Plaintiffs argue, however, that their causes of action do not accrue to start the period of limitations "until the plaintiff knows or, *in the exercise of reasonable diligence, should know*, the

_____

[9] Grove and Garcia filed their original complaint in this case on March 20, 2020. *Grove* Dkt. 1. Grove stopped working at Lowe's almost two years earlier, in April 2018, FACC at ¶10, and Garcia's employment ended in March 2017, approximately three years before bringing suit. *Id.* at ¶11.

18

facts underlying the cause [of action]." *Perez v. First American Title Ins. Co.*, 810 F. Supp. 2d 986, 994- 995 (D. Ariz. 2011) (quoting *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 898 P.2d 964, 966 (1995)) (emphasis in original). More generally, they urge the Court to deny the motion because the "running of the statute of limitations is an affirmative defense, and '[i]n general, such disputes are questions of fact for the jury.'" *Id*. (quoting *Lee v. State*, 225 Ariz. 576, 242 P.3d 175, 178 (Ct. App. 2010)).

In applying this "discovery rule" to the governing statute of limitations, the Arizona Plaintiffs claim that they have "plausibly allege[d] that Lowe's engaged in a uniform policy and practice of willfully, intentionally, and unreasonably failing to compensate them, (FACC ¶¶ 142(b), 167-168)," because Lowe's timekeeping system did not allow Plaintiffs to track activities outside the store, such as pre- and post-shift opening and closing duties and off-the-clock smart phone communications. They conclude that "[b]ecause work-time incurred outside the store was not and could not be tracked, Plaintiffs (hourly employees) had no reason to believe that this time was compensable or that they were being underpaid … Further, there is no allegation that Plaintiffs *knew* they had a claim." *See* Doc. 21 at 8-9.

The Court finds that the discovery rule potentially tolling the statute of limitations would apply past the termination of Plaintiffs' employment; therefore, the dispositive question is whether a cause of action under the Arizona Wage Act accrues based on the Plaintiff employees' knowledge of the facts underlying their claims – i.e., that they spent time working for Lowe's for which they were not paid – or does it accrue only when the employees understand that they potentially have a legal claim for the time – i.e., that the unpaid time may be "compensable"? The

clear legal answer is that the claim accrues based on a plaintiff's knowledge of the facts underlying his claim rather than when he has reason to know he may have been legally wronged.

The running of a period of limitations is delayed by the discovery rule while the facts of the wrong remain unknown, but the statute of limitations is not tolled if only the legal theory is not yet understood. *See Ins. Co. of N. Am. v. Superior Court*, 784 P.2d 705, 708 (Ariz. Ct. App. 1989), *vacated on other grds.*, 800 P.2d 585 (Ariz. 1990) ("The discovery rule applies to the facts which give rise to the cause of action, not to the legal significance of such facts. If the law were otherwise, the statute would not begin to run until a plaintiff consults an attorney who recognizes that there is a cause of action."); *Catrone v. Thoroughbred Racing Ass'ns of N. Am., Inc.,* 929 F.2d 881, 885 (1st Cir.1991) (applying Massachusetts law); *see also Salazar v. American Sterilizer Co.,* 5 P.3d 357, 362 (Colo.Ct.App.2000) (focus of discovery rule is on plaintiff's knowledge of facts rather than the discovery of applicable legal theories); *Travis v. Knappenberger*, 204 F.R.D. 652, 656 (D. Or. 2001) (finding that the statute of limitations was not tolled when plaintiff "knew that she was classified as an independent contractor and she knew that this affected her withholdings and other wage-related matters. The only thing she did not appreciate was that defendant's conduct amounted to, allegedly, a legal wrong.").

Here, although the Arizona Plaintiffs may not have known or perhaps even reasonably believed that they were not entitled to be compensated for time spent pre- and post-closing and during breaks based on Lowe's time keeping and payment practices, they clearly knew that they were spending that time on behalf of Lowe's and were not being paid for it. Therefore, they "discovered" all of the relevant facts necessary to support their claims – and their Arizona Wage Act claim accrued – as early as their first paycheck, but certainly by the time that their employment

ended, more than one year prior to their complaint. Accordingly, the Arizona Plaintiffs' claims are barred by the applicable one year statute of limitations, and the Court will grant Lowe's motion to dismiss their state law claims.

Because the Court finds that the Arizona Plaintiffs claims are untimely it need not and does not reach Lowe's alternate argument that they had no entitlement to overtime under Arizona law.

E. <u>Arkansas State Law Claims</u>

The two Arkansas Plaintiffs (Kindsay Estes and Brian Rookey) allege one count (Count III) under the Arkansas Minimum Wage Act. Lowe's challenges this claim on two grounds, both of which have already been resolved above. First, it argues that Plaintiffs' overtime claim is preempted by the FLSA, which it is not. Second, Lowe's challenges Plaintiffs' alleged "minimum wage claim," which Plaintiffs say they are not asserting. Therefore, Lowe's motion to dismiss the Arkansas Plaintiffs' claims will be denied.

F. <u>Colorado State Law Claims</u>

The Colorado Plaintiffs (Nicole Bogaert and Zachary Evans) allege minimum wage, overtime, and "payday" claims under the Colorado Wage Claim Act, the Colorado Minimum Wages of Workers Act, and Colorado Minimum Wage Order 35 (Count IV). In addition to their recurring FLSA preemption argument, Lowe's contends that these Plaintiffs have failed to plausibly plead minimum wage claims under Colorado law. Lowe's also argues that Plaintiff Bogaert's claims all must be dismissed because she executed an arbitration agreement with Lowe's. The Court finds that both Colorado Plaintiffs have plausibly alleged claims under the asserted Colorado statutes that are not preempted by the FLSA.

Lowe's argument that Plaintiff Bogaert must be compelled to arbitrate her claims requires more discussion. Plaintiffs do not dispute that Bogaert accepted an agreement to arbitrate any disputes with Lowe's;[10] however, they contend that Lowe's has waived its right to enforce the arbitration agreement because it failed to produce the agreement until six months after the deadline for it to do so. Although Lowe's has not offered any reason for its lack of diligence in timely producing the agreement, it asks the Court to nevertheless enforce the agreement because Bogaert has not suffered "actual prejudice" as a result of Lowe's untimely production. *See MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249–50 (4th Cir. 2001); *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996); *Danford* Doc. No. 166 at 2 n.1.

In *MicroStrategy*, the Fourth Circuit described the guiding principles for analyzing the impact of a defendant's delay in asserting an arbitration agreement:

> "Under the Federal Arbitration Act, a party may demand a stay of federal judicial proceedings pending exercise of a contractual right to have the subject matter of the federal action decided by arbitration, unless the party seeking arbitration is 'in default' of that right." *Maxum Founds., Inc. v. Salus Corp.,* 779 F.2d 974, 981 (4th Cir.1985); *see* U.S.C.A. § 3 (West 1999). "Although this principle of 'default' is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred." *Maxum,* 779 F.2d at 981; *see also American Recovery Corp. v. Computerized Thermal Imaging, Inc.,* 96 F.3d 88, 95 (4th Cir.1996) ("Because of the strong federal policy favoring arbitration, ... we will not lightly infer the circumstances constituting waiver."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

---

[10] This arbitration agreement, which Bogaert signed, is materially identical to the arbitration agreements of the 94 FLSA opt-in plaintiffs that the Court previously found valid and enforceable in *Danford. See Danford v. Lowe's Cos., Inc.*, 5:19-cv-0041, 2020 WL 3893630, at *1 (W.D.N.C. July 10, 2020).

22

A party may waive its right to insist on arbitration if the party "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum,* 779 F.2d at 981. But even in cases where the party seeking arbitration has invoked the "litigation machinery" to some degree, "[t]he dispositive question is whether the party objecting to arbitration has suffered *actual prejudice.*" *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 817 F.2d 250, 252 (4th Cir.1987) (emphasis added). "Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration. However, delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." *Id.* (citation omitted).

We review *de novo* a district court's conclusion that a party's conduct amounts to waiver of the right to arbitrate, although the court's factual determinations upon which the waiver finding was based are entitled to deference. *See id.* at 251–52 & n. 2. The party opposing arbitration "bears the heavy burden of proving waiver." *American Recovery,* 96 F.3d at 95.

As noted above, delay in seeking arbitration is a factor to be considered when determining waiver. In this case, however, MicroStrategy's delay in seeking arbitration was relatively short. Although MicroStrategy filed three separate actions against Lauricia before seeking arbitration, it requested arbitration approximately one month after Lauricia filed her complaint, and the time between the filing of the first action and the arbitration request was less than six months. Nothing in the record suggests that this delay, in and of itself, caused Lauricia to suffer actual prejudice. *See, e.g., Maxum,* 779 F.2d at 982 ("[M]ere delay, without more, will not suffice to constitute waiver."); *In re Mercury Constr. Co.,* 656 F.2d 933, 939 (4th Cir.1981) (en banc) ("[I]t is only when ... delay results in actual prejudice that it may amount to 'default' within the [Federal Arbitration] Act."), *aff'd sub nom. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Any delay by MicroStrategy in asserting its right to arbitration, therefore, is insufficient to support a finding of waiver.

*MicroStrategy*, 268 F.3d at 249–50.

Lowe's lack of diligence and failure to timely produce the Boegeart's arbitration agreement is compounded by the fact that it was well aware of the importance of the deadline and in fact convinced the Court over Plaintiffs' objection to amend the Case Management Plan in *Danford* to effectively extend its deadline to produce any arbitration agreements related to the opt-in plaintiffs,

*Danford* Doc. No. 166. However, weighing and balancing all the circumstances, including Lowe's representation that sending Plaintiff Bogaert's claim to arbitration will not affect the absent putative Colorado class members who may have relied on Lowe's failure to timely produce Bogaert's arbitration agreement,[11] the Court finds that Lowe's has not "so substantially utiliz[ed] the litigation machinery that to … permit arbitration would prejudice" Plaintiff Bogaert. Bogaert agreed to arbitrate her claims against Lowe's and, at least as to her, the litigation is in its early stages. In particular, she has not been subject to any discovery or motions practice. Therefore, Plaintiff Bogaert has not met her "heavy burden" to show that Lowe's has waived its right to enforce the parties' agreement to arbitrate any claims that she has against Lowe's arising out of her employment.

The Court will accordingly grant Lowe's motion to compel arbitration of her claims but deny Lowe's motion as to Colorado Plaintiff Evans.

G. Connecticut State Law Claims

The Connecticut Plaintiff (Jennifer Belaski) has brought claims alleging violations of state-law requirements for minimum wage, Conn. Gen. Stat. § 31-60(a); overtime, *id.* §§ 31-60(a), 31-76(c); and regular payment of wages, *id.* § 31-71b(a)(1) (Count V). Lowe's challenges her claims on the grounds of FLSA preemption, which the Court has rejected as discussed above. Accordingly, Lowe's motion will be denied as to Plaintiff Belaski.

---

[11] If this representation turns out to be inaccurate, the Court will revisit this ruling. Although Lowe's argues that only prejudice to Plaintiff Bogaert can be considered, the Court may well not permit Lowe's to obtain an unfair litigation advantage over any absent class member (who perhaps could independently argue that they have been prejudiced) as a direct result of Lowe's unexcused litigation misconduct.

24

H. <u>Illinois State Law Claims</u>

In the FACC, the two Illinois Plaintiffs (Kent Fitzsimmons and Nicole Weekley) allege violations of three separate Illinois state statutes: the Illinois Minimum Wage Law ("IMWL") (Count VI), the Illinois Wage Payment and Collection Act ("IWPCA") (Count VII), and the One Day Rest In Seven Act ("ODRA") (Count VIII). Plaintiffs have agreed that the Court should dismiss their ODRA claim, *see* Doc. No. 21 at 16, n. 8, so only Counts VI and VII remain before the Court. Lowe's again argues FLSA preemption with respect to the IMWL claim and similarly reprises its argument that Plaintiffs' IWPCA claim for overtime fails because the FACC fails to adequately allege a contract entitling Plaintiffs to an overtime premium. Lowe's preemption argument is denied for the reasons previously stated.

With respect to the IWPCA claim, the IWPCA provides employees with a cause of action against employers to enforce what is promised by the employer "pursuant to an employment contract or agreement." 820 Ill. Comp. Stat. 115/2, 115/3. Based on this language, Lowe's argues that a plaintiff cannot state an IWPCA claim based only on a non-contractual statutory right to a wage or benefit. *See Brand v. Comcast Corp.*, No. 12 CV 1122, 2013 WL 1499008, at *2 (N.D. Ill. Apr. 11, 2013) (holding that "to state a claim under the IWPCA, [plaintiff] must allege that [defendant] owed him the unpaid wages pursuant to an employment contract or agreement); *Dominguez v. Micro Ctr. Sales Corp.*, No. 11-c-8202, 2012 WL 1719793, at *1 (N.D. Ill. May 15, 2012) (same).

In response, Plaintiffs argue that the term "agreement" has been broadly interpreted under the IWPCA to include an agreement to pay overtime based on the parties' mutual assent to follow the law requiring additional pay for time worked over 40 hours in a week. *Snell-Jones v. Hertz Corp.*, No. 19-cv-00120, 2020 U.S. Dist. LEXIS 43696, at *18 (N.D. Ill. Mar. 13, 2020) ("[G]iven

the broad understanding of the term 'agreement' as used in the IWPCA, this Court concurs with the decisions finding that an agreement to pay overtime in accordance with existing overtime laws is a cognizable agreement for IWPCA purposes."); *Balmes v. Ill. Bell Tel. Co*., No. 15 C 2685, 2016 U.S. Dist. LEXIS 33339, at *7 (N.D. Ill. Mar. 15, 2016) ("nothing prevents an employer and an employee from mutually assenting to follow the law").

While the Illinois Plaintiffs have not alleged that Lowe's made an independent promise to pay overtime at a premium to their regular hourly wage, they have generally alleged that Lowe's promise to pay their "applicable" hourly rate is evidenced by "each pay stub issued to Plaintiffs and the Hourly Managers." *See* FACC at ¶120. Accordingly, accepting the allegations in the FACC as true together with all permissible inferences from those allegations, the Court finds that – in the context of a motion to dismiss – the Illinois Plaintiffs have sufficiently stated a claim under the IWPCA on the basis that their pay stubs may well reflect a "mutual assent" to the payment of premium "overtime" wages. Therefore, the Court will deny Lowe's motion to dismiss the claims of the Illinois Plaintiffs under Counts VI and VII. The Court will grant the motion as to Count VIII with the Plaintiffs' consent.

I. Kentucky State Law Claims

The Kentucky Plaintiff (Ronald Anderson)  asserts one count under the Kentucky Wages and Hours Act (Count IX). Lowe's primary argument[12] to dismiss this claim is that Anderson is not covered by the Kentucky Wages and Hours Act's overtime provisions, which exempt "[e]mployees of retail stores engaged in work connected with selling, purchasing, and distributing merchandise, wares, goods, articles, or commodities." Ky. Rev. Stat. Ann. § 337.285(2)(a).

---

[12] Lowe's also makes a residual FLSA preemption argument, which is denied.

26

Kentucky rules further provide that an employee's "principal duties" must be "connected with the selling, purchasing, and distributing of the goods" in order for the employee to qualify for this exemption.  *See* 803 Ky. Admin. Reg. 1:075-4; *see also Barker v. Family Dollar, Inc.*, No. 3:10-CV-170-H, 2011 WL 864962, at *2 (W.D. Ky. Mar. 11, 2011) (assuming that all three activities – selling, purchasing and distributing – were required and denying motion to dismiss because discovery was needed to determine whether plaintiff was exempt). The motion before the Court is a motion to dismiss as a matter of law not a motion for summary judgment. As in *Barker*, the Court finds that dismissal at this early stage of the case is inappropriate. Plaintiffs have adequately stated a claim under the Kentucky Wages and Hours Act and Lowe's motion to dismiss this claim will be denied.

      J.  <u>Maryland State Law Claims</u>

    The three Maryland Plaintiffs (Jason Hyde, Antoine Hursey, and George Staley) bring claims under the Maryland Wage and Hour Law ("MWHL") and the Maryland Wage Payment and Collection Law ("MWPCL") (Count X). Hyde has agreed to arbitrate his claims. *See* Doc. No. 21 at 22 n.12. Lowe's contends that Plaintiff Hursey's claims should be dismissed because he signed a release and because he does not allege he was an hourly manager. Also, as to both remaining Maryland Plaintiffs Lowe's seeks dismissal on the grounds of preemption, which the Court has previously addressed.

    First, Lowe's argument that Plaintiff Hursey has not adequately pleaded that he was an hourly paid manager who was paid an hourly wage is meritless. Hursey specifically pled that he was an assistant manager who was paid hourly. *See* FACC at ¶21. With respect to its more substantial "release" argument, on January 21, 2017, Hursey executed a release and separation

Case 5:20-md-02947-KDB-DSC   Document 28   Filed 02/03/21   Page 27 of 50

agreement with Lowe's in exchange for $5,781.60. *See* Doc. No. 17-3 at Ex. 3. The agreement releases Lowe's from "any and all" claims "of any nature whatsoever, in law or equity, arising out of [Hursey's] employment with Lowe's." *Id.*, Ex. 3. ¶ 5.

Plaintiff Hursey argues that his release is unenforceable because "[a]n agreement to work for less than the wage required under this subtitle is void." *See* Md. Code Ann., Lab. & Empl. § 3-405; *id.* § 3-502. Thus, "[a] worker cannot contractually waive her rights to full payment under the FLSA, MWHL, or MWPCL." *Johnson v. CRC Holdings, Inc.*, JKB-16-2937, 2017 WL 914998, at *2-3 (D. Md. Mar. 8, 2017) (denying affirmative defense of waiver pursuant to a Separation Agreement and Release because the Maryland wage statutes are non-waivable). In response, Lowe's argues that this language governs only employment contracts and does not bar settlements. Although Plaintiffs have not challenged the authenticity of the agreement, based on the fact that it is beyond the contents of the FACC and the likelihood that, based on the *Johnson* case, discovery may be needed to determine the application of the Maryland statutes, the Court will deny the motion to dismiss without prejudice to the issue being raised again by Lowe's at summary judgment, where the Court can address the full merits of the parties' arguments.

Accordingly, the Court will compel Plaintiff Hyde to arbitrate his claims and deny Lowe's motion to dismiss the claims of the remaining Maryland Plaintiffs.

K. Massachusetts State Law Claims

Massachusetts Plaintiff (Jeffrey Lavelle) brings claims under three state statutes: the Massachusetts Minimum Fair Wages Act (Count XI), the Massachusetts Overtime Act (Count XII), and the Massachusetts Timely Payment of Wages Act, also called the Weekly Wage Act (Count XIII). Lowe's seeks to dismiss all of Counts XI and XII and the overtime portion of Count

XIII. However, the only basis of its motion is that Mr. Lavelle's claims are in whole or part preempted by the FLSA. For the reasons discussed above, the Court finds that these claims are not preempted, and Lowe's motion to dismiss the Massachusetts claims will be denied.

L. Minnesota State Law Claims

Minnesota Plaintiff (Robert Neal) brings claims for overtime and minimum wage under the Minnesota Fair Labor Standards Act ("MFLSA") (Counts XV and XVI), and a claim for violations of the Minnesota Payment of Wages Act ("MPWA") (Count XIV). Lowe's seeks to dismiss all of Counts XV and XVI and the overtime portion of Count XIV. Unlike the other state statutes at issue, the MFLSA has a *higher* threshold than the FLSA of hours worked before overtime is required: 48 instead of 40. *See* Minn. Stat. § 177.25, subd. 1. Lowe's argues that Mr. Neal has not alleged facts sufficient to show that he worked over 48 hours in any given week. It alleges that the only mention in the FACC of working 48 hours comes in Paragraph 290, in which Neal alleges Lowe's "failed to pay overtime wages to [him] and the Rule 23 Minnesota Class members who worked over 48 hours," FACC ¶ 290, and that Neal does not specifically plead that he himself worked over 48 hours.

In response, Plaintiffs argue that the estimates in the FACC of unpaid time each day for five to six days a week include the qualifiers "or even longer" or "or more," *see, e.g.*, FACC at ¶¶ 60, 86, so "it is entirely plausible that during Plaintiff Neal's employment with Lowe's, he worked at least one week over 48 hours." *See Burch v. Qwest Communications Intern., Inc.*, 677 F. Supp. 2d 1101, 1126 (D. Minn. 2009) (considering MFLSA class certification where class representative alleged he "worked at least one week for more than 48 hours"); *see also Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994) (stating that a motion to dismiss should not be granted

29

unless it appears beyond a doubt that plaintiffs can prove no set of facts that would entitle plaintiffs to relief). While it may be unlikely that Plaintiff Neal or any of his fellow putative Minnesota class members worked over 48 hours at least once in a workweek as required to sustain a MFLSA claim, the Court, generously interpreting the FACC, will allow the claim to proceed past a motion to dismiss.

Having determined that Mr. Neal has stated a claim under the MFLSA, the Court further finds that he has stated a claim under the MPWA and rejects Lowe's FLSA preemption arguments for the reasons previously stated. Accordingly, the Court will deny Lowe's motion to dismiss Plaintiffs' claims under the Minnesota statute.

M. <u>Missouri State Law Claims</u>

Missouri plaintiff (Jeremy West) brings a claim under the Missouri Wage Act, alleging overtime violations (Count XVII). Lowe's lone argument in support of its motion to dismiss this claim is that it is preempted by the FLSA, an argument that the Court does not accept.[13] Accordingly, the Court will deny Lowe's motion to dismiss Mr. West's claim under Missouri law.

N. <u>Nevada State Law Claims</u>

The Nevada Plaintiffs (Gregory Ricks and Stephanie Pennington) assert claims under the Nevada Wage and Hour Law (Count XVIII). Lowe's challenges the claims on several grounds. It

---

[13] Lowe's also argues that West is not entitled to "gap time" under the Missouri Wage Act in connection with West's assertion that "[t]he Missouri Wage Act entitles employees to compensation for every hour worked in a workweek." FAC ¶ 297. *See Johnson v. Lou Fusz Auto. Network, Inc.*, 519 S.W.3d 450, 463 (Mo. Ct. App. 2017) (citing *Terrell v. First Student Mgmt. LLC*, No. 4:16-cv-481, 2016 WL 6679847 at *3 (E.D. Mo. Nov. 14, 2016)). Having found that West's claim can proceed, the Court need not at this time decide a speculative question as to the ultimate amount that might be recovered under the statute and so declines to reach that issue.

30

argues that Mr. Ricks' claims are time-barred, there is no private right of action for meal-break claims under Nevada law and both Plaintiffs' overtime claims are preempted. The Court has already rejected Lowe's preemption arguments and the Nevada Plaintiffs agree to dismiss their meal break claims under NRS §608.019 so only the statute of limitations issue remains for consideration.

"Under Nevada law, a two-year statute of limitations applies to actions for unpaid minimum or overtime wages." *Roces v. Reno Hous. Auth.*, 300 F. Supp. 3d 1172, 1179 (D. Nev. 2018) (citing Nev. Stat. § 608.260; *Perry v. Terrible Herbst, Inc.*, 383 P.3d 257, 262 (Nev. 2016)). This includes "claims for violation[s] of NRS … 608.140," the statute Ricks invokes as providing a private right of action. *D'Amore v. Caesars Enter. Servs., LLC*, No. 2:18-cv-1990, 2019 WL 8128166, at *6 (D. Nev. Dec. 16, 2019); FACC at ¶ 304. Ricks alleges that he worked as a Lowe's manager "from March 2013 until February 2018." FACC at ¶ 26. Thus, Lowe's argues that Rick's March 12, 2020 Complaint, filed more than two years later, is untimely. While Plaintiffs suggest that a separate cause of action may have occurred "*if*" Rick's last payday occurred on or after March 12, 2018, Lowe's points out that "even assuming he worked as an hourly manager on the last possible date (February 28, 2018), his cause of action would have accrued, at the latest, seven days later, on March 7, 2018. *See* Nev. Rev. Stat. § 608.030 (wages due no later than 7 days after employee resigns)." *See* Doc. No. 23 at 12.

Thus, accepting the allegations of the FACC as true together with all permissible inferences, the FACC establishes that Rick's claims – as currently pled – are untimely under the applicable two-year statute of limitations. Accordingly, the Court will grant Lowe's motion to

dismiss Plaintiff Rick's claims but deny Lowe's motion with respect to Plaintiff Pennington, other than with respect to her meal break claims, which she has agreed to dismiss.

O. New Jersey State Law Claims

The two New Jersey Plaintiffs (Daniel Gerber and Stephanie Suazo) bring multiple claims under the state's Wage and Hour Law and its Wage Payment Law (Count XIX). As in Missouri, Lowe's lone argument in support of its motion to dismiss this claim is its unsuccessful argument that the claim is preempted by the FLSA. Therefore, the Court will deny Lowe's motion to dismiss the New Jersey Plaintiffs' claims.

P. New Mexico State Law Claims

The two New Mexico Plaintiffs (Christopher Martinez and Peter Lomax) bring minimum wage and overtime claims under the New Mexico Minimum Wage Act ("NMMWA") (Count XX). Lowe's first argument is that Plaintiffs' overtime claim is preempted, which the Court declines to accept for the reasons previously stated. Second, with respect to Plaintiffs' claims under the NMMWA, the parties dispute whether that statute permits an employer to use "workweek averaging" (as it can under the FLSA) to calculate an employee's wage rate to determine if the required minimum wage has been paid. Plaintiffs contend that because the statute sets the minimum wage at $7.50 "an hour" an employee is entitled to be paid that amount "for all hours worked" without regard to "workweek averaging" (under which the New Mexico Plaintiffs would have clearly been paid more than the minimum wage). *See* N.M. Stat. Ann. § 50-4-22(A). Lowe's responds that other states' minimum wage laws use what they term "similar language" and still permit workweek averaging. *See, e.g.*, Ark. Code Ann. § 11-4-210(a)(1) ("per hour"); Conn. Gen.

Stat. § 31-58(i) ("per hour"); 820 ILCS 105/4 ("per hour"). Neither side cites any New Mexico authority clearly addressing the issue.

This dispute is not really, however, about whether Lowe's paid its employees more than New Mexico's "minimum wage."  Rather, the practical consequence of this issue in this case is whether any claim for "gap time" by these Plaintiffs will be successful. That is, Plaintiffs don't allege that they were not paid minimum wages for the hours for which they were paid. They allege instead that they were not paid at all for certain hours, thus entitling them to at least minimum wages for those hours. At this stage of the litigation and in light of the lack of authority which leaves the Court to decide what may be a close question of statutory interpretation for a distant state with little guidance, the Court will defer ruling on this issue until it is clear that a ruling is in fact necessary. Although Plaintiffs have generally alleged that they are entitled to be paid for any "gap time" worked without pay, it is not known if these Plaintiffs actually had any material amount of unpaid "gap time" that will require the Court to decide the question. Therefore, the Court will deny Lowe's motion to dismiss the New Mexico Plaintiffs' claims without prejudice to Lowe's raising the issue of workweek averaging under the NMMWA again at summary judgment if that becomes necessary.

Q. New York State Law Claims

Plaintiff Iris Tirado brings claims under three provisions of New York's Labor Law and one state regulation (Count XXI). In addition to its FLSA preemption challenge, which is again denied, Lowe's argues that Ms. Tirado has not stated a plausible claim for overtime and there is no private right of action for meal breaks under New York law. Plaintiffs have agreed to dismiss

33

the meal break claim so that leaves Lowe's attack on Tirado's claim under the state's so-called "Wage Theft" statute for decision.

The New York "Wage Theft" law requires employers to pay "clerical and other worker[s]" their "wages earned in accordance with the agreed terms of employment." N.Y. Lab. Law § 191(1)(d). Lowe's argues that the law only governs "the timeliness of wage payments and does not appear to afford to plaintiffs any substantive entitlement to a particular wage." *See Myers v. Hertz Corp.*, 624 F.3d 537, 545 (2d Cir. 2010). Plaintiffs contend that Lowe's "misconstrues" Plaintiff Tirado's claim under § 191(1)(d), which it characterizes as a gap time statute which mandates that "employees 'shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer.' NY CLS Labor § 191(d)." FACC ¶ 332; *see also Cavalotti v Daddyo's BBQ, Inc.*, 2018 U.S. Dist. LEXIS 154918 at *34 (E.D.N.Y. Sep. 8, 2018) ("When a non-exempt employee has an agreement with his or her employer to be paid at a rate greater than the minimum wage… the failure to pay the promised rate is a violation of NYLL § 191 [.]"); *Wolman v. Catholic Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290, 303 n.9 (E.D.N.Y. 2012) ("[T]he NYLL does recognize Gap Time Claims and provides for full recovery of all unpaid straight-time wages owed[.]" (citing NY CLS § 191(d)) (other internal citations and internal quotation marks omitted)). Plaintiffs assert that a § 191(1)(d) claim is appropriate because the FACC alleges that the Plaintiffs had agreed terms of employment, obligating Lowe's to pay its employees on an hourly basis. FACC ¶¶ 109-124.

The Court will allow Plaintiff Tirado's state law claim to proceed. Accepting the allegations in the FACC as true together with all permissible inferences from those allegations, the

34

Court finds that – in the context of a motion to dismiss – she has sufficiently stated a claim under N.Y. Lab. Law § 191(1)(d). Lowe's motion to dismiss Count XXI will be denied, except with respect to Plaintiff Tirado's meal break claim, which will be dismissed with her consent.

R. <u>North Carolina State Law Claims</u>

Daniel Danford is the sole North Carolina Plaintiff and his state-law claim (Count XXII) alleges that he and his fellow putative Rule 23 class members are entitled to recover unpaid compensation which they are allegedly due under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq. FACC at Count XXII, ¶342. On this Count, Lowe's has moved for judgment on the pleadings under Rule 12(c) rather than to dismiss pursuant to Rule 12(b)(6) because Lowe's has answered the *Danford* complaint. *Danford* Doc. No. 31. The grounds of Lowe's 12(c) motion are that the NCWHA specifically excludes claims for overtime pay and minimum wages against FLSA covered businesses, including Lowe's, *see* N.C. Gen. Stat. § 95-25.14(a), and that Danford is also not entitled to pursue "gap time" claims under the NCWHA.

Before discussing the merits of Lowe's motion, the Court must address Plaintiffs' argument that Lowe's motion is premature because "all defendants" have not filed an answer. *See* Fed. R. Civ. P. 12(c); *Garvey v. Seterus, Inc.*, 5:16-CV-00209-RLV, 2017 WL 2722307, at *12 (W.D.N.C. June 23, 2017) (denying Rule 12(c) motion as premature because not all defendants had filed answers). Plaintiffs are correct that the pleadings must be closed before a Rule 12(c) motion can be filed, but Lowe's responds that it has filed an answer in *Danford* as noted above. So, the question becomes whether the presence of other independent actions in the MDL where Lowe's

35

has not answered and the consolidated nature of the amended pleadings ordered by the Court[14]

impact the "closing of the pleadings" with respect to Plaintiff *Danford*.

Unless an amended complaint specifically refers to and adopts or incorporates by reference

the earlier pleadings, the amended complaint supersedes an original complaint and renders the

original complaint without legal effect. *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir.

2001); *Hamby v. Seterus, Inc*., No. 7:15-CV-125-FL, 2016 WL 929228, at *3 (E.D.N.C. Feb. 18,

2016). Here, the Plaintiffs have filed an Amended Consolidated Complaint which supersedes their

original complaints in all the consolidated cases. While the cases will remain independent for

purposes of trial and final disposition (if not earlier resolved) the Court holds that, notwithstanding

Lowe's earlier answer in *Danford*, the pleadings have not "closed" because the Amended

Consolidated Complaint at least arguably[15] renders the earlier pleadings "of no legal effect."

However, the Court's conclusion that the pleadings have not closed does not end the matter.

Although Lowe's Rule 12(c) motion may be premature, the Court finds that the motion may and

should properly be considered on the merits as a 12(b)(6) motion asserting the same grounds,[16]

notwithstanding that Lowe's would typically be barred from filing a second Rule 12 motion in

---

[14] The Court ordered Plaintiffs to file a consolidated complaint for all cases (in part at Lowe's insistence), but this order was initially not fully implemented by Plaintiff who sought to keep *Danford* at least partially separate. *See* Doc. Nos. 14, 15. So, ironically, both parties' conduct with respect to the pleadings cuts against their respective positions with respect to this motion (Lowe's now wants the cases to be considered separate for pleading purposes and Plaintiffs want the opposite).

[15] Because of its ruling below, the Court need not definitively reach the issue of the extent to which a complaint in an MDL action retains any legal effect when the case is returned to its original jurisdiction. It is sufficient for this Court's purposes that the pleadings have not closed on account of the Amended Consolidated Complaint.

[16] Of course, as noted above, a motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a Rule 12(b)(6) motion.

36

*Danford* based on its earlier motion to dismiss. *See* Fed. R. Civ. P. 12(g)(2). It would strain both logic and fairness to hold that the earlier pleadings are a legal nullity for this purpose but not also reset Lowe's opportunity to file a Rule 12(b)(6) motion, particularly on grounds that they did not previously assert. *See In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, No. 11 C 5468, 2012 WL 3582708, at *2–3 (N.D. Ill. Aug. 16, 2012) (concluding in an MDL in which some earlier answers had been filed "that it makes no difference whether Defendants' motion is a 12(b)(6) motion in response to the Master Complaint—which, as an amended complaint, supersedes the original complaint, rendering all prior pleadings without legal effect, *see Massey v. Helman*, 196 F.3d 727, 735 (7th Cir.1999)—or a motion filed after the close of pleadings under Rule 12(c)"). Therefore, the Court declines Plaintiffs' request to find that Lowe's motion is premature, and the Court will decide the merits of the motion.

As in many of the states discussed above, the primary dispute among the Parties ultimately concerns whether Plaintiffs can pursue a claim under the NCWHA for "gap time," which is outside the scope of the FLSA. Under the NCWHA, FLSA-covered enterprises such as Lowe's are specifically exempted from its minimum wage and overtime provisions, N.C. Stat. § 95-25.3 and N.C. Stat. § 95-25.4, the specific provisions referenced by Plaintiffs in the FACC. *See* N.C.G.S. § 95-25.14(a)); FACC ¶¶ 343–44. However, Section 95-25.6, which does apply to Lowe's, specifically requires that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday." N.C. Gen. Stat. Ann. § 95-25.6. Thus, the NCWHA does allow for "gap time" claims. *See Martin v. Lowe's Cos., No. 5:20-CV-00015-KDB-DCK, 2020 U.S. Dist. LEXIS 163747, *6 (W.D.N.C. Sep. 5, 2020)* (Plaintiff and the putative class "have sufficiently alleged a plausible claim under N.C.G.S. § 95-25.6 and N.C.G.S. § 95-25.8 for unpaid gap time");

37

*Martinez-Hernandez*, 578 F. Supp. 2d at 820 (holding that plaintiff could bring "gap time" claims under the NCWHA because they did not invoke the minimum wage or overtime provisions of the FLSA).[17]

Despite the clear authorization for "gap time" claims under the NCWHA, Lowe's urges the Court not to permit Danford to assert a "gap time" claim because he allegedly did not specifically plead such a claim nor invoke Section 95-25.6 in the FACC. As discussed above, Plaintiffs have in fact pled an entitlement to "gap time" pay, *see* FACC ¶¶ 110-11, which is incorporated by reference into Count XXII and sought by Danford through his allegation that "Defendants violated the North Carolina Wage Act by … failing to compensate [Danford and the putative North Carolina class] for the time spent on the work activities described in this Complaint." *See* FACC ¶¶ 341, 346. Moreover, although the Court agrees that Plaintiffs' FACC perhaps should have been more artfully and specifically drafted, it would elevate form over substance to dismiss the claim on that ground without prejudice only to have Danford file a further amended pleading with the requested specificity.

Accordingly, the Court will grant Lowe's motion to the extent that Danford seeks overtime pay or minimum wages under the NCWHA but deny Lowe's motion as to Danford's alleged entitlement to "gap time" pay under the NCWHA.

---

[17] Lowe's argues that "payday claims" under Section 95-25.6 must be "separate and distinct" from the Plaintiffs' FLSA overtime and minimum wage claims. Claims for "gap time" compensation plainly satisfy this requirement, even if the primary underlying facts of employment are necessarily the same (which would almost always be the case). Indeed, Lowe's acknowledges that the "FLSA itself does not provide a right to recover for alleged "gap time" worked below the 40-hour mark." Doc. No. 23 at 14. Therefore, the exemption of Section 95-25.14 does not apply to limit Plaintiffs' "gap time" claim.

38

S. <u>Ohio State Law Claims</u>

The three Ohio Plaintiffs (Brian Rumpke, Nicholl Frank, and Sean Wolfe) bring claims under the Ohio Minimum Fair Wage Standards Act (Count XXIII) and the Ohio Prompt Pay Act ("OPPA") (Count XXIV). Lowe's seeks to dismiss the claims on three grounds. First, it contends – and Plaintiffs agree – that Plaintiff Wolfe's claims are untimely. Second, it argues that all three Ohio Plaintiffs' overtime claims are preempted, an argument that the Court does not accept for the reasons stated above. Finally, Lowe's asserts that Plaintiffs cannot pursue a claim under the OPPA, Ohio Rev. Code Ann. § 4113.15, because that statute allegedly only applies to wages that are not "in dispute." *See Lower v. Electric Data Systems Corp*., 494 F.Supp. 770, 775 (S.D. OH 2007) (the OPPA "expressly applies only to wages that are not in dispute").

The OPPA has two sections. The first section, 4113.15(A), provides an employer must pay:

…all its employees the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and shall, on or before the fifteenth day of each month, pay such employees the wages earned by them during the last half of the preceding calendar month…

The second section, 4113.15(B) provides:

where wages remain unpaid for thirty days beyond the regularly scheduled payday … and no contested court order or dispute of any wage claim including the assertion of the counterclaim exists accounting for nonpayment, the employer, in addition, as liquidated damages, is liable to the employee in an amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed.

Thus, Section 4113.15(A) defines the time frame in which an employer must pay its employees their wages earned and Section 4113.15(B) describes the liquidated penalty for not paying wages in the time proscribed by the statute.

According to the parties, the Ohio courts that this Court must look to for guidance appear to have reached different conclusions on the interpretation of the statute. In *Monahan v. Smyth*

39

*Auto., Inc.*, 1:10-CV-00048, 2011 WL 379129, at *9 (S.D. Ohio Feb. 2, 2011) the court explained

that:

> A careful reading of the statute reveals that section (B) describes only liquidated damages, which damages would be available to Plaintiffs, for example, should they be successful in their suit, as that would resolve the dispute accounting for nonpayment. In contrast, section (A) provides that the employee is entitled to actual damages. Ohio Rev. Code § 4113.15(A). Section (B), the liquidated damages provision, in no way prevents Plaintiffs from pursuing their 4113.15 claim against Defendants. Indeed, Defendants' argument that a dispute about wages precludes a suit under 4113.15 would render 4113.15 impotent because any suit under 4113.15 necessarily means that a dispute about wages exists. The Court cannot believe that the Ohio legislature intended to, on the one hand, provide employees with an avenue of relief if their employer fails to pay them promptly but, on the other hand, take that avenue away should the employee sue to enforce their right to prompt payment.

However, Lowe's cites cases which say otherwise. *See Terry v. Pro-Mark Contracting, LLC*, No.

1:14 CV 2542, 2016 WL 3421399, at *6 (N.D. Ohio June 22, 2016) (OPPA "does not apply to

disputed wages"); *Rangel v. Paramount Heating & Air Conditioning, LLC*, No. 2:17-CV-473,

2020 WL 1080418, at *10 (S.D. Ohio Mar. 6, 2020) (same); *see also Sutka v. Yazaki N. Am.

Inc.*, 256 F. Supp. 3d 677, 683 (E.D. Mich. 2017) (dismissing claims where "underlying unpaid

wage claim is disputed by the employer").

    In *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 577 (6th Cir. 2009), the Sixth

Circuit, affirming the District Court's summary judgment for the employer, addressed the statute

finding that "disputes accounting for nonpayment of the wages claimed by plaintiffs did exist and

that therefore as a matter of law, plaintiffs could not receive liquidated damages." *Id.* 575 F.3d

567, 577–78 (6th Cir. 2009). The *O'Brien* court held that Ohio law requires that a dispute

Case 5:20-md-02947-KDB-DSC   Document 28   Filed 02/03/21   Page 40 of 50

accounting for nonpayment, whether it be a legal or a factual dispute,[18] precludes the award of liquidated damages to a wage claimant, specifically holding that the statute does not limit the types of wage disputes that may arise. *Id.* (citing *Fridrich v. Seuffert Construction Co., Inc.,* 2006 WL 562156, at *4 (Ohio Ct. App. 2006) (deciding that "dispute existed as to whether Seuffert Construction's vacation policy required the payout for unused vacation days")); *Haines & Company, Inc. v. Stewart,* 2001 WL 166465, at *3 (Ohio Ct. App. 2001) (holding that where parties disputed whether certain commissions were "wages" under Prompt Pay Act, a "contest" existed, meaning no liquidated damages were available).

Whatever persuasive force the reasoning in *Monahan* might have, the Court is bound to follow the Sixth Circuit's decision in *O'Brien*. *See Sutka v. Yazaki N. Am. Inc*., 256 F. Supp. 3d at 682. ("*Monahan* is in conflict with *O'Brien*."). There is no question that a "dispute accounting for nonpayment" exists in this case. Lowe's disputes that Plaintiffs are owed any additional wages for the unpaid time Plaintiffs allegedly spent working before and after their shifts and during breaks. Therefore, regardless of the merits of the parties' positions, it is plainly a bona fide dispute that, in accordance with *O'Brien*, means that Plaintiffs cannot recover liquidated damages or other remedies under section 4113.15(B) of the OPPA.

In summary, the Court will grant the motion to dismiss Plaintiff Wolfe's claims (with Plaintiffs consent) and the remaining Ohio Plaintiffs' claims under section 4113.15(B) of the OPPA but will deny Lowe's motion to dismiss Plaintiffs' overtime claims in Count XXIII.

---

[18] In *O'Brien*, as here, the defendants "disputed that they owed anything more than what they paid their employees according to the employer's own payroll records." *Id*.

T.  Pennsylvania State Law Claims

The Pennsylvania Plaintiff (Jason Martin) brings one claim for overtime under the state's Wage Act, 43 Pa. Cons. Stat. § 333.104(c) (Count XXV). Lowe's only argument in support of its motion to dismiss is that the FLSA preempts this claim. The Court will deny Lowe's motion for the reasons stated above.

U. South Carolina State Law Claims

The South Carolina Plaintiff (Kaitlin Forte) brings her claims under the state's Payment of Wages Act ("SCPWA"), S.C. Code Ann. §§ 41-10-10 (Count XXVI). Lowe's seeks to dismiss the claims on the grounds that the Act allegedly has no substantive overtime or minimum wage requirements and Forte has failed to plead the existence of any contract entitling her to an overtime premium, which Lowe's contends is required to state an overtime claim under the Act's payday provision. The Court agrees. Plaintiffs concede that the SCWPA "lacks any overtime level independent of that in the FLSA," Doc. No. 21 at 39, but argue that they have alleged a contractual right to recover overtime pay under the statute. As discussed above in section III.(C), Plaintiffs have specifically alleged that they are entitled to be paid (and have not been paid) for all hours worked at their regular hourly wage, *see* FACC at ¶¶ 121, 124, but have not alleged that they had a contractual agreement in which Lowe's agreed to pay them *more* than their regular hourly wages for time worked in excess of 40 hours in a week. Therefore, Plaintiff Forte has not alleged the contractual basis for premium overtime pay (independent of her FLSA claim) as the parties agree is required under the SCWPA. Accordingly, Lowe's motion to dismiss her claim will be granted to the extent she seeks to recover such pay in Count XXVI.

V. <u>Washington State Law Claims</u>

The Washington Plaintiffs (Kerry Cleavenger and M. Scott Rains) allege violations of the Washington Minimum Wage Act ("WMWA") (Count XXVII) and the Washington Wage Rebate Act (Count XXVIII). In addition to its argument that the FLSA preempts these claims, which the Court will again deny for the reasons previously stated, Lowe's moves to dismiss these Plaintiffs' minimum wage claims based on "workweek averaging" and dismiss Plaintiff Cleavenger's claims on the further grounds that he allegedly released all his claims against Lowe's when he left his employment at Lowe's.

With respect to the Washington Plaintiffs' minimum wage claims, they contend that Washington does not recognize "workweek averaging" as a means for an employer to meet its minimum wage obligations. The Court agrees. In *Hill v. Xerox Bus. Servs., LLC*, 191 Wash. 2d 751, 756, 426 P.3d 703, 706 (2018), the Washington Supreme Court clearly held that Washington's MWA "does not permit [workweek] averaging for hourly workers. Instead, hourly workers must receive their contractual rate of pay or minimum wage, whichever is higher, for each hour worked." Moreover, in *Hill* the Court specifically distinguished hourly workers – who are entitled to be paid minimum wage for each hour worked without "workweek averaging" – and piece rate workers who may be paid based on "workweek averaging." *Id*. at 756, 426 P.3d at 706 ("Xerox applied workweek averaging—a concept applicable to piece rate work, but not to hourly work"). Accordingly, the more recent case of *Certification from United States Dist. Court for W. Dist. of Washington in Sampson v. Knight Transportation, Inc.*, 193 Wash. 2d 878, 891, 448 P.3d 9, 15-16 (2019), which Lowe's represents to the Court as "the most recent, and authoritative, word on the

43

subject" is plainly not.[19] Rather, the *Sampson* case merely reflects the distinction expressly discussed in *Hill* between hourly workers such as those working for Lowe's and piece rate workers (for whom workweek averaging applies). Therefore, the Court will deny Lowe's motion to dismiss the Washington Plaintiffs' minimum wage claims.

Finally, Lowe's seeks to dismiss Plaintiff Cleavenger's claims based on the Release and Separation Agreement he signed following his termination from the company. The 2019 agreement, which paid Cleavenger $17,769.60, purports to release Lowe's from "any and all" claims "of any nature whatsoever, in law or equity, arising out of [Cleavenger's] employment with Lowe's," which Lowe's claims bars his claims here. Cleavenger argues that the Release, as applied to his wage claims under both the FLSA and Washington law, are unenforceable because the right of an employee to receive full payment of wages owed under the MWA cannot be waived by any agreement and there is no indication in the agreement or elsewhere that the payment would amount to full payment of Cleavenger's claimed wages.

RCW 49.46.090(1) states:

> Any employer who pays any employee less than wages to which such employee is entitled under or by virtue of this chapter, shall be liable to such employee affected for the full amount of such wage rate…. *Any agreement between such employee and the employer to work for less than such wage rate shall be no defense to such action*.

(emphasis added). Cleavenger argues that the broadly worded provision bars "[a]ny agreement" in which a worker purports to waive his or her statutory right to full wages and that the alleged "release" here is precisely the type of "agreement" prohibited by this sentence. In support of this

---

[19] Given this second instance of miscitation by Lowe's, which goes beyond fair argument, the Court reminds all the Parties' counsel of their obligations of candor and careful citation to the Court. The Court trusts that this reminder is sufficient to deter any similar occurrences in the future.

position, Plaintiffs rely on the comparable policy with respect to the FLSA. *See* 29 U.S.C. § 216(c); *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1355 (11th Cir. 1982) (a waiver or release of rights under the FLSA is only effective if the employer pays the employee in full for the unpaid wages due and the waiver is overseen by the Department of Labor or approved for fairness and reasonableness by a district court); *see also Rehberg v. Flowers Baking Co. of Jamestown, LLC,* 162 F. Supp. 3d 490, 503-07 (W.D.N.C. 2016) (holding that "waivers which 'transgress public policy' are not permitted" and refusing to enforce a general release waiving claims under the North Carolina Wage and Hour Act).

In response, Lowe's argues that "settlements" of disputed wage claims are permitted notwithstanding the prohibition on agreements that lead to employees working for less than their full wages. *See Pugh v. Evergreen Hosp. Med. Ctr.*, 177 Wash. App. 348, 360–61, 311 P.3d 1253, 1258–59 (2013) (upholding release based on finding at summary judgment that there was a "bona fide dispute over the amount of wages owed" and that the employees who signed the releases, which were specific to the wage dispute, were "best situated to determine whether the settlement was a fair compromise of a bona fide dispute over the hours worked during missed rest breaks").

While the release at issue here appears to be closer to the pre-dispute "general release" at issue in *Rehberg* than the settlement of clearly defined and specifically compromised claims in *Pugh*, it is premature for the Court to reach a definitive ruling on the application of the release to Plaintiff Cleavenger's claims on the limited record before the Court. Indeed, discovery may reveal that the consideration accepted for the release exceeds the amount of Cleavenger's wage claims so that obtaining full payment of wages is not even at issue. Therefore, the Court will deny Lowe's

motion to dismiss Cleavenger's claims without prejudice to the defense being raised later in the MDL or when the case is remanded back to the trial court.

W. West Virginia State Law Claims

The sole West Virginia Plaintiff (Thomas Fyfe) brings claims under the West Virginia Minimum Wage and Maximum Hours Standards ("MWMHS") and the West Virginia Wage Payment and Collection Act ("WPCA") (Count XXIX). Lowe's seeks to dismiss his claims on numerous grounds, including arguments that 1) Plaintiff Fyfe was a salaried rather than an hourly paid manager; 2) his overtime claim is time-barred and preempted; 3) the application of the FLSA to Lowe's as an "enterprise" (and the alleged fact that at least 80% of Lowe's employees are subject to the FLSA) bars Plaintiff Fyfe's claims under the MWMHS; 4) a claim for overtime pay under the WPCA fails because the statute does not contain a substantive right to overtime and there is no allegation of a contractual right to increased overtime pay; and 5) West Virginia does not recognize private actions for meal-break claims.

The Court will first address the threshold issue of whether Plaintiff Fyfe is a salaried or hourly employee. Although Plaintiff Fyfe's employment agreement proffered by Lowe's appears to establish that he was paid a bi-weekly salary rather than an hourly wage, Fyfe specifically pleads that he was paid hourly. FACC at ¶ 41. Therefore, at least in the context of a 12(b)(6) motion in which allegations must be taken as true, the Court will deny Lowe's motion to dismiss on this basis.[20]

---

[20] However, the Court directs Plaintiffs to promptly determine the authenticity and application of the filed employment agreement to Plaintiff Fyfe's claims and, if it genuinely reflects his status as a salaried rather than hourly employee, to immediately inform Lowe's and dismiss his claims accordingly.

However, the Court will grant the motion to dismiss Plaintiff Fyfe's MWMHS' overtime claims on the ground that the statute does not apply to Lowe's. Specifically, if Lowe's is "a covered enterprise as defined in federal law" then it is exempt from the MWMHS. *See* W. Va. Code R. § 42-8-6.2; *Adkins v. Labor Ready, Inc.*, 185 F. Supp. 2d 628, 643 (S.D.W. Va. 2001) (finding defendant exempt from MWMHS due to enterprise coverage, i.e., "[t]he FLSA … covere[d] all employees of [the] enterprise"). Plaintiffs allege that Lowe's was "engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA," FACC ¶ 150, which is the definition of FLSA enterprise coverage. *See* 29 U.S.C. § 203(s)(1)(A)(i)–(ii). Accordingly, the MWMHS does not apply to Lowe's in the absence of a specific allegation of a contractual promise to pay premium overtime pay, which Plaintiff Fyfe has not alleged.[21]

With respect to Plaintiff Fyfe's WPCA claim, the Court will allow that claim to proceed on Fyfe's claim for "unpaid straight time" under the WPCA's requirement that employers must pay employees all "wages due" at least twice every month and pay wages "in full" to separated employees no later than the next regular payday on which the wages would otherwise be due. *See* W. Va. Code §§ 21–5–3 and 21-5-4. As discussed above, Plaintiff Fyfe has arguably pled the existence of a contract requiring Lowe's to pay him an hourly wage for all hours worked, including hours worked off the clock, and Lowe's failure to pay him for all those hours. *See* FACC ¶¶ 109-124. Therefore, subject to the caveat that Fyfe will of course ultimately have to establish that he is in fact an hourly employee, the Court will allow his WPCA claim to proceed.

---

[21] Having determined that the MWMHS does not apply to Fyfe's overtime claims, the Court need not reach Lowe's statute of limitations argument related to the MWMHS.

Finally, the Court need not reach Lowe's request to dismiss Plaintiff Fyfe's "meal break claim" under W. Va. Code § 21-3-10A "to the extent" such a claim has been made. In his response to Lowe's motion, Plaintiff Fyfe explains that he does not plead a meal break claim but instead argues that because he is regularly interrupted by work-related communications during his unpaid meal breaks he is deprived of the opportunity to take uninterrupted meal breaks and, therefore, his entire meal break is compensable but unpaid time for which he is entitled to be paid independent of any "meal break claim." *See* FACC ¶¶ 84-88.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1.     Defendants' Motion to Compel Arbitration Under Fed. R. Civ. P. 12(B)(1), to Dismiss Under Fed. R. Civ. P. 12(B)(6), and for Judgment on the Pleadings Under Fed. R. Civ. P. 12(C) (Doc. No. 17) is **GRANTED in part and DENIED in part** with respect to the Plaintiffs various state law claims (Counts II – XXIX) as follows:

  a.  Arizona – Lowe's motion to dismiss Count II is granted;

  b.  Arkansas – Lowe's motion to dismiss Count III is denied;

  c.  Colorado – Lowe's motion to compel arbitration of Plaintiff Bogaert's claims is granted but Lowe's motion to dismiss Plaintiff Evans' claims is denied;

  d.  Connecticut - Lowe's motion to dismiss Count V is denied;

  e.  Illinois - Lowe's motion to dismiss Counts VI and VII is denied. Count VIII is dismissed with the Plaintiffs' consent;

  f.  Kentucky - Lowe's motion to dismiss Count IX is denied;

  g.  Maryland - Lowe's motion to compel arbitration of Plaintiff Hyde's claims is granted with Plaintiffs' consent, but Lowe's motion to dismiss the claims of the remaining Maryland Plaintiffs in Count X is denied;

48

h.  Massachusetts - Lowe's motion to dismiss Counts XI, XII and XIII is denied;

i.  Minnesota - Lowe's motion to dismiss Counts XIV, XV and XVI is denied;

j.  Missouri - Lowe's motion to dismiss Count XVII is denied, except that Plaintiff West agrees to the dismissal of her claim for "gap time" under Missouri law;

k.  Nevada – Lowe's motion to dismiss Plaintiff Ricks' claims is granted and Lowe's motion to dismiss Plaintiff Pennington's claims is denied, except with respect to her meal break claims, which are dismissed with her consent;

l.  New Jersey - Lowe's motion to dismiss Count XIX is denied;

m.  New Mexico – Lowe's motion to dismiss Count XX is denied;

n.  New York - Lowe's motion to dismiss Count XXI is denied, except with respect to Plaintiff Tirado's meal break claim, which is dismissed with her consent;

o.  North Carolina - Lowe's motion to dismiss Count XXII is granted to the extent that Plaintiff Danford seeks overtime pay or minimum wages under the NCWHA but Lowe's motion is denied as to Danford's claim for "gap time" pay under the NCWHA;

p.  Ohio – Lowe's motion to dismiss Plaintiff Wolfe's claims is granted with Plaintiffs' consent; Lowe's motion to dismiss the remaining Ohio Plaintiffs' claims under section 4113.15(B) of the OPPA in Count XXIV is granted and Lowe's motion to dismiss Ohio Plaintiffs' overtime claims in Count XXIII is denied;

q.  Pennsylvania - Lowe's motion to dismiss Count XXV is denied;

r.  South Carolina – Lowe's motion to dismiss Count XXVI is granted to the extent Plaintiff Forte seeks to recover premium overtime pay (independent of her FLSA claim) under the SCWPA;

s.  Washington – Lowe's motion to dismiss Counts XXVII and XXVIII is denied; and

t.  West Virginia – Lowe's motion to dismiss Plaintiff Fyfe's MWMHS claim for overtime pay in Count XXIX is granted on the ground that the statute

49

does not apply to Lowe's and Lowe's motion to dismiss his WPCA claim is denied.

2.    Except as ordered, this action shall proceed in accordance with the case management order entered in this action, Doc. No. 13, in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 3, 2021

Kenneth D. Bell
United States District Judge

50