IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
MDL DOCKET NO. 5:20-MD-2947-KDB-DSC

| | |
|---|---|
| IN RE: LOWE'S COMPANIES, INC. )<br>FAIR LABOR STANDARDS ACT )<br>(FLSA) AND WAGE AND HOUR )<br>LITIGATION )<br>)<br>)<br>THIS DOCUMENT APPLIES TO: )<br>All Cases )<br>_____ ) | PLAINTIFFS' MOTION TO<br>COMPEL ESI OR IN THE<br>ALTERNATIVE FOR *IN-CAMERA*<br>REVIEW |

## I. INTRODUCTION

Plaintiffs hereby move to compel, or alternatively seek the Court's *in-camera* review of, certain documents supposedly "inadvertently produced" and certain other documents on Lowe's privilege logs asserting claims of privilege similar to those "inadvertently produced" documents. The redacted or withheld ESI at issue are documents or communications among non-legal personnel regarding business matters that do not seem to contain any legal advice or to have been sent for the purpose of giving or receiving legal advice.

The parties have met and conferred and have not resolved this dispute. Lowe's has also removed its claims of attorney client privilege as to numerous other documents (acknowledging on one occasion that a redaction was "too aggressive") which has given Plaintiffs even less confidence in Lowe's privilege review. As such, as discussed herein, the Court should compel production of all the documents at issue (the "PRIV IDs" as set forth in footnotes 6 and 7, below), but at the very least, should conduct an *in-camera* review.

## II.     BACKGROUND AND MEET-AND-CONFERS ON THE ISSUE

Many months into discovery, on June 29, 2021, Lowe's produced its first privilege log,[1] identifying ESI for which it claimed were privilege. Separately, but on the same day, Lowe's notified Plaintiffs that it had "inadvertently produced" eight documents, and that these eight documents required additional or new redactions to supposedly privileged material contained in them. Plaintiffs notified Lowe's of their concerns over the privilege designations, stating **two** specific concerns that suggested the ESI was in fact *not privileged* and that Lowe's should remove such designations from this ESI and others appearing on the privilege log asserting the same or similar basis for a claim of privilege: communications that either (1) were among non-legal personnel regarding business matters or (2) did not seem to contain any legal advice or be sent for the purposes of obtaining for giving legal advice. In response, Lowe's contended that these communications either (1) "reflect[ed] legal advice regarding a pay code . . . in [Lowe's time management software]" or (2) were part of an e-mail chain where the chain includes "an email sent to . . . in-house attorneys, in which legal advice was sought (and information was provided for the purpose of such advice)."[2]

Unclear about the context of these communications and the justification provided for the claim of privilege, Plaintiffs' counsel sought a meet-and-confer, in the hopes of gaining additional context and confidence in Lowe's designations. On August 17, 2021, counsel for the parties met

---

[1] Lowe's has subsequently produced two additional privilege logs on August 11, 2021, only one of which is also at issue here, in addition to the June 29, 2021 privilege log. Both privilege logs at issue are included with this motion as Exhibit 1 to the Declaration of Amir Alimehri.

[2] Undersigned counsel represents that quoted language in this brief from the discussions between counsel is a correct representation of the communications, which were contained in emails. Inasmuch as the emails themselves are lengthy and cannot be disputed, Plaintiffs have not attached the e-mail chains where the discussions are contained. However, Plaintiffs' counsel can immediately provide such communications to the Court if it wishes to see them.

and conferred about these issues. Unfortunately, counsel for Lowe's did not provide adequate context and instill confidence in Plaintiffs' counsel for the privilege designations. It also refused to identify "separate communications where legal advice was actually sought or given, which relate to the redactions in documents where [it] claim[ed] a document 'reflects legal advice.'" Finally, Lowe's offered to unredact *part of one communication* at issue, claiming that it may have been "too aggressive" of a redaction, but only on the condition that "Plaintiffs would not then argue that Lowe's was waiving privilege as to the substance of the legal advice at issue."

Additionally, during the parties' discussions, Plaintiffs' counsel also identified a "non-comprehensive list of bates-numbers of [52] slip-sheets [it] came across where privilege was asserted but the bates-number did not appear on any of the three privilege logs [Lowe's] produced." Of the 52 bates-numbers, Lowe's responded as to **seven** of them that: "Lowe's determined in the course of its privilege log review [that they] should not be designated privileged." This gives Plaintiffs great cause for concern and casts doubts on the reliability of Lowe's privilege review and designations. Lowe's has not otherwise come forward with a list of bates-numbers that it seeks to redesignate as non-privileged, and Plaintiffs are concerned that there is more misdesignated ESI and that Lowe's has in fact been aggressively claiming privilege on ESI.

### A. The "Inadvertently Produced" ESI At Issue

The "inadvertently produced" bates-numbers can be split into the two groups (there is some overlap in redactions among various bates-numbers). These two groups are addressed in turn.

1. **LOWES-WHMDL-0131676**; **LOWES-WHMDL-0131917**; **LOWES-WHMDL-0131925**; **LOWES-WHMDL-0131935**; **LOWES-WHMDL-0132089**; **LOWES-WHMDL-0132097 (Alimehri Decl. Ex. 2)**:[3]

These communications clearly indicate that they are among non-legal personnel[4] and pertain to changes made to the Lowe's Kronos time-keeping system (a business process implementation). (*See* Alimehri Decl. Ex. 2; *see also* Alimehri Decl. Ex. 1, PRIV-68; PRIV-69).

---

[3] The versions attached to this motion are the *now-redacted versions* of these documents. These documents were originally produced *un-redacted* and Lowe's clawed them back – albeit after Plaintiffs' counsel had read them – and claimed in the parties' meet-and-confers that even a discussion among opposing counsel regarding the redacted substance of these documents would constitute a "use" in violation of Rule 26(b)(5)(B). (Plaintiffs' counsel has sequestered the un-redacted versions.) Plaintiffs' counsel takes such an assertion seriously, and thus has not included the redacted material for the Court's review nor has argued from the redacted material in this brief, even though Plaintiffs' counsel believes the redacted material makes it clearer that the disputed materials are not attorney-client protected. Plaintiffs' counsel strongly disagrees with Lowe's claim of a use violation, and believes it would not be a violation of Rule 26(b)(5)(B) to have a discussion among counsel regarding the substance of the now-redacted versions, nor to submit those versions for the Court's review under seal. *See Willis Elec. Co. v. Polygroup Trading, Ltd.*, No. 15-cv-3443-WMW-KMM, 2021 U.S. Dist. LEXIS 27974, at *9-10 (D. Minn. Feb. 16, 2021) (noting that the Rule *does not* "explicitly state[] that a receiving party is prohibited from reviewing or referencing the content of the clawed back information when challenging the producing party's privilege claim"); *see also irth Sols., LLC v. Windstream Communs. LLC*, No. 2:16-cv-219, 2017 U.S. Dist. LEXIS 121241 at *44-45 (S.D. Ohio Aug. 2, 2017) (noting no Rule violation in such a situation as here where the integrity of the documents have been protected with sequestration and no plaintiff has seen or heard about the contents of the redacted ESI), *objection overruled by* 2018 U.S. Dist. LEXIS 12724, at *14-15 (S.D. Ohio Jan. 26, 2018). Should the Court agree with Plaintiffs' interpretation of the Rule, Plaintiffs could, at the Court's request, immediately provide it with the un-redacted versions for *in-camera* review.

[4] The following Lowe's personnel on the communications held these positions at the time of the communications:
Mark Davis: Senior Director, Store Operations;
Stuart Whitman: HRBP Consultant, Store Operations and Global Security;
Jeff Ready: Director, Store Operations;
Sarah Frietsch: HR Analyst;
Clark Moore: Director/HR Business Partner – Store Operations;
Thomas Dhen: Workforce Management Manager;
Brandi Spade: Communications Manager;
David Bodenheimer: Lead Communication Consultant;
Becky Irons: Senior Communications Analyst; and
Genna Hickey: Workforce Management Consultant.

Lowe's claims the "Attorney-Client Privilege" here, asserting that the communications "[r]eflect[] legal advice" regarding "[p]ay code for opening and closing duties in process enhancement to Department Supervisor attestation process in Kronos." (Alimehri Decl. Ex. 1, PRIV-68; PRIV-69). As indicated above, during discussions among counsel, Lowe's acknowledged that these communications did not directly seek or give legal advice, and that such communications directly seeking or giving were contained elsewhere. When counsel for Plaintiffs asked Lowe's to identify where such communications were, or to otherwise identify them in any way, Lowe's simply refused to do so. In essence, Lowe's position is that if legal advice had been sought by lawyers and then advice is given that any time those words from the lawyers are repeated in another communication, that subsequent corollary communication is itself privileged.

### 2. LOWES-WHMDL-0131804 (Alimehri Decl. Ex. 3):[5]

This single e-mail communication clearly indicates it is among non-legal personnel, *see supra*, fn. 4, and pertains to changes made to the Lowe's Kronos time-keeping system (a business process implementation). (*See* Alimehri Decl. Ex. 3; *see also* Alimehri Decl. Ex. 1, PRIV-57). Lowe's claims the communication "[r]eflect[s] legal advice" regarding "[p]ay code for opening and closing duties in enhancement to Department Supervisor attestation process in Kronos." (Alimehri Decl. Ex. 1, PRIV-57). As indicated above, during discussions among counsel, Lowe's acknowledged that this communication did not directly seek or give legal advice, and that such communications directly seeking or giving were contained elsewhere. Again, when counsel for Plaintiffs asked Lowe's to identify where such communications were, or to otherwise identify them in any way, Lowe's simply refused to do so.

---

[5] *See* footnote 3.

## B. Forty-Six Other Privilege Entries Withholding ESI on the Same Improper and Vague Basis As Those "Inadvertently Produced"

For the reasons explained above and later herein, Plaintiffs also challenge additional ESI claimed to be privileged with the same challenged basis asserted for the ESI above. This includes 39 log entries where Lowe's claims the ESI "[r]eflect[s] legal advice" or "[c]ontain[s] legal advice" but is among non-legal personnel.[6] Additionally, there are 7 log entries where Lowe's claims the ESI "[s]eek[s] legal advice" but the communication is among non-legal personnel.[7]

## III. <u>DISCUSSION</u>

### A. Applicable Standards

Certain legal principles are particularly relevant here and doom Lowe's claim of privilege. Generally, communications between non-lawyers are not privileged. *See Carter v. Ozoeneh*, No. 3:08CV614-RJC-DSC, 2010 U.S. Dist. LEXIS 75111, at *12 (W.D.N.C. July 21, 2010). To be privileged, such communications must be made to secure legal advice from counsel. *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981); s*ee also Graff v. Haverhill N. Coke Co.*, No. 1:09-CV-670, 2012 U.S. Dist. LEXIS 162013, at *22 (S.D. Ohio Nov. 13, 2012) ("communications among non-lawyer corporate personnel are protected if the dominant intent is to prepare the information in order to get legal advice from the lawyer") (citation omitted). Defendants must prove that the "dominant intent" of the communication was to secure "legal advice from [a] lawyer." *See In re Behr Dayton Thermal Prods.*, 298 F.R.D. 369, 375 (S.D. Ohio 2013). Even where a communication was sent, pursuant to a legal department protocol, to in-house counsel but also

---

[6] This includes the following PRIV IDs: 18, 105, 109, 110, 116; 19, 45, 50, 52, 57, 58, 68, 69, 95, 100, 101, 103, 104, 117, 118, 119, 120, 123, 124, 125, 129, 135, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 150, 151. (*See* Alimehri Decl., Ex. 1).

[7] This includes the following PRIV IDs: 3, 18, 33, 34, 46, 51, 122. (*See* Alimehri Decl., Ex. 1).

included non-lawyer management personnel, such communication does not necessarily meet the "dominant intent" test. *See Graff*, 2012 U.S. Dist. LEXIS 162013, at *65-67.

And the mere fact that the information exchanged among non-lawyers was later shared with counsel does not invoke the privilege. *Shire LLC v. Amneal Pharm.*, Civil Action No. 2:11-cv-03781 (SRC)(CLW), 2014 U.S. Dist. LEXIS 45075, at *8-9 (D.N.J. Apr. 1, 2014) (finding an email sent from a non-attorney representative to another non-attorney who subsequently shared its contents with in-house counsel was not privileged); *Neuder v. Battelle Pacific Northwest Nat. Laboratory*, 194 F.R.D. 289, 295 (D.D.C. 2000) ("documents prepared by non-attorneys and addressed to non-attorneys with copies routed to counsel are generally not privileged since they are not communications made primarily for legal advice").[8] If a communication "merely forward[s] information from a non-attorney to an in-house attorney and there is no indication that legal advice is being sought," then that communication is not privileged. *See Tex. Brine Co., LLC v. Dow Chem. Co.*, No. 15-1102, 2017 U.S. Dist. LEXIS 193118, *7 (E.D. La. Nov. 21, 2017). If communications do not "provide or request legal advice" then "thoughts by non-lawyer employees" are not privileged. *Id.* at *10.

Privilege does not attach even where "an attorney is on the thread [of an e-mail] and there are contemporaneous meetings seeking legal advice about the subject-matter of the emails." *Staley v. Gilead Scis., Inc.*, No. 19-cv-02573-EMC(LB), 2021 U.S. Dist. LEXIS 111315, at *9 (N.D. Cal. June 14, 2021) (citing *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (TSH), Order - ECF No. 512 at 2 (N.D. Cal. Apr. 28, 2021)).

---

[8] The PRIV IDs here that might fall into this category are, but not limited to: 18, 103, 104, 116, 146, 150, 151.

And even if Lowe's proved that the communications meet the stringent standards above, it would still have to show that the legal advice reflected in the communications were shared with folks who have a "need to know" because a lack thereof will waive any claim of privilege. *See In re N.Y. Renu with Moistureloc Prod. Liab. Litig.*, No. 766,000/2007, 2008 U.S. Dist. LEXIS 88515, at *4 (D.S.C. May 6, 2008) (citing *FTC v. GlaxoSmithKline*, 294 F.3d 141, 147-48 (D.C. Cir. 2002)).[9] Were it otherwise, any time a company decided to embark on a course of action, it could readily cause its business communications regarding the implementation of policies to become "privileged" by simply quoting words from a lawyer that were part of a communication with the lawyer that sought the legal advice that might have changed the policy.

Finally, Lowe's indeed bears the burden to establish all the above requirements. *NLRB v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011). And the privilege, if at all applicable, is to be "strictly construed," given its impediment on the "'truthseeking mission of the legal process.'" *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 493 (M.D.N.C. 2008) (quoting *United States v. Aramony*, 88 F.3d 1369, 1389 (4th Cir. 1996)).

### B. Lowe's Cannot Meet Its Burden to Establish Privilege

Here, Lowe's cannot establish any of the foregoing requirements to maintain its claim of privilege. For example, take PRIV-68 and PRIV-69. (Alimehri Decl. Exs. 1 and 2). Lowe's cannot establish that communication was sent to or from a lawyer and for the purpose of obtaining legal advice. (*See* LOWES-WHMDL-0131677, 0131921, 0131928-0131929, 0131937, 0132092-0132093, 0132099).[10] Rather, its claim rests on the assertion that these

---

[9] Numerous PRIV IDs here include many non-lawyers, and Lowe's has not explained why the non-lawyers on the e-mail had a "need to know": PRIV IDs 33, 34, 68, 69, 118, 119, 120, 129.

[10] All these bates-numbered pages redact the identical language from the same two e-mails: one from September 22, 2020 at 7:17 A.M., and the other from September 22, 2020 at 10:00 A.M.

communications "[r]eflect[] legal advice" regarding "[p]ay code for opening and closing duties in process enhancement to Department Supervisor attestation process in Kronos." (*See* Alimehri Decl. Ex. 1). A review of the surrounding communications makes clear that non-legal personnel made some observations of flaws in the Kronos time-keeping system (at issue in this case) and communicated the problems and their frustrations with other non-legal personnel. There is no indication why the information was sought or why it was disclosed. Even if the non-legal personnel collected data or information about the implementation of a business process (like Kronos here), and said information was shared later with legal personnel the communication would still not be automatically protected. *See, e.g.*, *Deel v. Bank of Am., N.A.*, 227 F.R.D. 456, 463 (W.D. Va. 2005) (finding document created to "capture in detail the approach, design, and implementation of the Corporate Job Review-FLSA effort . . . to provide insight for the next audit so that the process would not have to be reinvented . . . was created for a business, and not a legal, purpose."). But again, there is no instruction here on behalf of legal personnel to provide the information now redacted. At best, a reading of the communications, in conjunction with Lowe's assertions may rise to the level which was at issue in *Staley* and *Apple*, even though these communications do not even have legal personnel on them like *Staley* and *Apple* had. *Staley v. Gilead Scis., Inc.*, No. 19-cv-02573-EMC(LB), 2021 U.S. Dist. LEXIS 111315, at *9 (N.D. Cal. June 14, 2021) ("an email is not privileged merely because an attorney is on the thread and there are contemporaneous meetings seeking legal advice about the subject-matter of the emails." (citing *Epic Games, Inc. v. Apple Inc.*, No. 20-cv-05640-YGR (TSH), Order - ECF No. 512 at 2 (N.D. Cal. Apr. 28, 2021)). But beyond that, Lowe's has not explained why there are numerous non-legal personnel privy to the communication; in other words, that all those people had a "need to know" for the purposes of obtaining or receiving of legal advice, as opposed to implementing, as a business measure, the business response to a legal opinion. *See In re N.Y. Renu*

*with Moistureloc*, 2008 U.S. Dist. LEXIS 88515, at *4 (citing *GlaxoSmithKline*, 294 F.3d at 147-48); *see also see Graff*, 2012 U.S. Dist. LEXIS 162013, at *65-67.

PRIV-57, (Alimehri Decl. Exs. 1 and 3), similarly fails to be worthy of privilege protections. Lowe's cannot establish that communication was sent to or from a lawyer and for the purpose of obtaining legal advice. (*See* LOWES-WHMDL-0131804-A). Rather, its claim rests on the assertion that this communication "[r]eflect[s] legal advice" regarding "[p]ay code for opening and closing duties in enhancement to Department Supervisor attestation process in Kronos." (*See* Alimehri Decl. Ex. 1). But the communication seems to instead be one among non-lawyers noting an issue with the Kronos time-keeping system. At best, the communication may relate to the subject-matter legal may have at some point given advice on, but it certainly does not seem to be one where legal is soliciting information from non-lawyers for the purpose of giving legal advice. Again, the mere fact that the information exchanged among non-lawyers was later shared with counsel does not invoke the privilege. *See Shire*, 2014 U.S. Dist. LEXIS 45075, at *8-9; *Neuder*, 194 F.R.D. at 295. If communications do not "provide or request legal advice" then "thoughts by non-lawyer employees" are not privileged. *See Tex. Brine Co.*, 2017 U.S. Dist. LEXIS 193118, at *10.

### C. An In-Camera Review Will Assist the Court in its Determination

Lowe's privilege logs are not particularly helpful in justifying the redactions or complete withholdings on the basis of privilege, particularly as relevant here where most of the ESI at issue is between or among non-legal personnel. Further, concessions of "too aggressive" redactions and improper designations also do not inspire confidence in the quality of Lowe's privilege review and withholding process, exacerbating the need for at least an *in-camera* of such inherently suspect ESI claimed to be privilege. *See Interbake Foods*, 637 F.3d at 502. At issue, fortunately (at least so far), is a limited number of documents, those identified herein.

As relevant here, descriptions that are too "vague and generic," such as "based in part on and reflecting advice of counsel" will not suffice. *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D. Ill. 2013). Similarly, "[d]ocument descriptions like reflecting request for legal advice do not make out a claim of attorney-client privilege." *McGee v. IBM Corp.*, No. 11 C 3482, 2017 U.S. Dist. LEXIS 51041, at *7 (N.D. Ill. Apr. 4, 2017) (citations and quotation marks omitted). And failing to "indicate the positions of the authors and recipients" also is an inherent deficiency. *RBS Citizens*, 291 F.R.D. at 219.

As noted above, during the parties' discussions, when Plaintiffs' counsel identified a sample "list of bates-numbers of [52] slip-sheets [it] came across where privilege was asserted but the bates-number did not appear on any of the three privilege logs [Lowe's] produced to date," Lowe's responded that it determined "in the course of its privilege log review" that seven of them "should not be designated privileged." Also, in offering to unredact *part of a single communication* at issue, Lowe's acknowledged that it may have been "too aggressive" of a redaction. Lowe's also flat-out refused to identify "separate communications where legal advice was actually sought or given, which relate to the redactions in documents where [it] claim[ed] a document 'reflects legal advice'" where the communication involved non-legal personnel. Plaintiffs also note that the privilege logs are deficient inasmuch as there are, in many instances, missing data in the "From/Author," "To/Recipient(s)," and "CC/Other Recipient(s)" columns (sometimes even missing in all three columns). Additionally, in a few instances, Lowe's lists "kronos@lowes.com" as a sender/recipient but does not list all the people inside and outside of Lowe's who had access to that e-mail account (thereby having access to purportedly privileged communications).[11]

---

[11] For example, this occurs on PRIV IDs 136-144.

All of the foregoing gives Plaintiffs cause for concern and casts doubts on the reliability of Lowe's privilege review and designations. Lowe's has not otherwise come forward with a list of bates-numbers that it seeks to redesignate as non-privileged, and Plaintiffs are concerned that there is more misdesignated ESI and that Lowe's has in fact been aggressively claiming privilege on ESI.

In sum, in light of the relevant case law, a confirmed record of improper privilege assertions, and the lack of confidence in the quality of Lowe's ESI privilege review and withholding process, at the very least an *in-camera* review of the ESI listed above is warranted. *See Interbake Foods*, 637 F.3d at 502.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully seek an order compelling production of the ESI listed in this motion. Alternatively, Plaintiffs seek the Court's *in-camera* review of said ESI to determine whether they are entitled to "attorney client privilege" protections.

**Dated: September 24, 2021**

Respectfully Submitted,

s/Amir Alimehri
Seth R. Lesser
Amir Alimehri
**KLAFTER LESSER LLP**
2 International Drive, Suite 250
Rye Brook, New York 10601
T. (914) 934-9200
F. (914) 934-9220
E.    seth@klafterlesser.com
      amir.alimehri@klafterlesser.com

*Counsel for Plaintiffs & the Proposed Classes*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2021, I electronically filed the foregoing document on the ECF system, which will send this filing to all counsel of record.

s/Amir Alimehri