IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
MDL DOCKET NO. 5:20-MD-2947-KDB-DSC

| | |
|---|---|
| IN RE: LOWE'S COMPANIES, INC. FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION<br><br>THIS DOCUMENT APPLIES TO:<br>*All Cases* | OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL ESI OR IN THE ALTERNATIVE FOR *IN CAMERA* REVIEW |

## I. INTRODUCTION

Plaintiffs filed this Motion to Compel ESI or in the Alternative for *In Camera* Review (the "Motion") concerning 45 entries on Lowe's privilege log that Lowe's withheld on the basis of the attorney-client privilege or the attorney work product doctrine.[1] Significantly, the 45 log entries that Plaintiffs challenge represent a mere 0.1% of the more than 44,000 documents that Lowe's has produced in this case. Plaintiffs failed to sufficiently meet-and-confer with Lowe's regarding the vast majority of the documents at issue prior to burdening the Court with this Motion; doing so likely would have eliminated or significantly narrowed the issues in dispute, as discussed below.

In any event, all of the documents (or portions thereof) at issue were properly withheld as attorney-client privileged or attorney work product. Rather than presenting evidence to the contrary, Plaintiffs incorrectly suggest that the involvement of non-legal personnel in the

---

[1] Footnotes 6 and 7 to the Motion list only 45 unique PRIV IDs (each representing a privilege log entry), as PRIV-018 is listed twice. *See* Mot. at 6 nn. 6-7. The PRIV IDs for the inadvertently-produced documents that Plaintiffs discuss separately, Mot. at 3-5, overlap with the PRIV IDs listed in those footnotes (i.e., PRIV-057, PRIV-068, and PRIV-069). Thus, despite Plaintiffs' suggestion that they are challenging a subset of Lowe's clawed-back documents as well as "Forty-Six Other Privilege Entries," Mot. at 6, there are only 45 unique PRIV IDs at issue.

communications means they are not privileged, or that Lowe's claims of privilege somehow are deficient because the communications at issue merely "reflect" legal advice. *See* Mot. at 8-9. However, it is well-established that "documents identified . . . as 'reflecting' legal advice . . . **are** properly withheld as protected by the attorney-client privilege." *McAirlaids, Inc. v. Kimberly-Clark Corp.*, No. 7:13-CV-193, 2014 WL 12782814, at *4 (W.D. Va. Sept. 26, 2014) (emphasis added). And of course, a document "need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds." *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993). Where, as here, "communications between . . . employees that relay legal advice" are "necessary for the entity to carry out its counsel's instructions," those communications are "properly redacted or withheld" as privileged. *Mid-State Auto., Inc. v. Harco Nat'l Ins. Co.*, No. 2:19-CV-00407, 2020 WL 1488741, at *5 (S.D. W. Va. Mar. 25, 2020).

Notwithstanding the fact that all of the materials at issue were properly withheld, Lowe's is willing to withdraw its privilege claims for 19 of the 45 privilege log entries that Plaintiffs challenge, on the condition of non-waiver under Federal Rule of Evidence 502(d). Lowe's respectfully requests that the remainder of Plaintiffs' Motion be denied and that Lowe's privilege claims be sustained with respect to the remaining 26 log entries.[2]

## II. PROCEDURAL HISTORY

On June 29, 2021, Lowe's served the first iteration of its privilege log, which contained 102 entries. *See* Mot., Ex. 1. On that date, pursuant to the protective order in this case, *see* ECF

---

[2] Of the 26 log entries for which Lowe's stands on its privilege claims, Lowe's is producing to Plaintiffs, contemporaneously with this Opposition, updated versions of the documents covered by 10 of the entries, each reflecting less redaction than the previously produced versions. Those are PRIV-105, PRIV-109, PRIV-110, PRIV-116, PRIV-117, PRIV-118, PRIV-119, PRIV-120, PRIV-147, and PRIV-148.

No. 20, Lowe's also notified Plaintiffs of the inadvertent prior production of privileged material in eight documents (corresponding to six log entries),[3] and provided Plaintiffs with redacted versions of those documents (logged as PRIV-043, PRIV-044, PRIV-047, PRIV-057, PRIV-068, and PRIV-069). The parties then engaged in extensive meet-and-confer discussions regarding those eight documents and corresponding redactions between late June 2021 and August 2021, during which time Lowe's responded to each of Plaintiffs' counsel's questions and concerns. While Plaintiffs now assert that Lowe's counsel conceded during these discussions that a particular redaction on one of the eight documents had been "too aggressive" (Mot. at 11), Lowe's counsel actually said that its redaction had been "proper and [was] made in good faith, but that, as a compromise, [Lowe's] was willing to omit the redaction so long as Plaintiffs would not then argue that Lowe's was waiving privilege as to the substance of the legal advice at issue." Ex. A (Aug. 23, 2021 Email from M. Senger to A. Alimehri et al.). Plaintiffs did not accept this proposal.[4]

---

[3] Wherever possible, this brief refers to communications by their unique log entry number (i.e., "PRIV ID"), found in the first column of Lowe's privilege log. Because certain communications over which Lowe's has claimed privilege appear in multiple versions of an email chain, the same PRIV ID may represent multiple iterations of a document.

[4] During these meet-and-confer discussions, Plaintiffs' counsel conceded that they had reviewed Lowe's privileged documents **after** Lowe's had notified them that the documents were privileged and needed to be clawed back. *See* Ex. B (Aug. 12-13, 2021 Email Exchange Between M. Dziuban and A. Alimehri). As Lowe's explained to Plaintiffs, this post-notification review reflected a clear violation of Federal Rule of Civil Procedure 26(b)(5)(B), which provides that after a party is notified that privileged material was inadvertently produced, the party "must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved . . . and may promptly present the information to the court under seal for a determination of the claim." In other words, the party in receipt of the privileged material "*may not . . . review the material to determine for itself whether the claimed privilege applies.*" *U.S. Equal Emp. Opportunity Comm'n v. George Wash. Univ.*, 502 F. Supp. 3d 62, 73-74 (D.D.C. 2020) (emphasis added) (collecting cases); *see also, e.g.*, *In re Disposable Contact Lens Antitrust Litig.*, No. 3:15-md-2626, 2016 WL 7115998, at *4 (M.D. Fla. Oct. 24, 2016) (deeming "consistent with Rule 26(b)(5)(B)" a protective order that did "not permit Plaintiffs to review the inadvertently-produced privileged documents for the purpose of determining whether to move the Court to compel Defendant to produce those documents"). Consistent with Rule

On August 11, 2021, Lowe's served a second iteration of its privilege log. *See* Mot., Ex. 1. Together, the June 29 and August 11 privilege logs contain 153 entries—corresponding to approximately 0.5% of the more than 44,000 documents that Lowe's has produced to date. At no time during either the parties' written correspondence or during the parties' August 17, 2021 telephonic meet-and-confer did Plaintiffs identify any specific documents—other than the eight inadvertently-produced documents represented by PRIV-057, PRIV-068, and PRIV-069—as a subject of discussion. Instead, on August 27, Plaintiffs' counsel simply wrote to Lowe's that they "intend[ed] to seek a ruling on Lowe's privilege designations on the bates numbers we were discussing and others indicated in your privilege log that assert the same privilege with the same/similar basis." Ex. C (Aug. 27, 2021 Email from A. Alimehri to M. Senger). About a month later, on September 24, Plaintiffs filed their Motion to Compel, challenging the redaction or withholding of 45 privilege log entries (Mot. at 6 nn. 6-7)—*42 of which are entries about which Plaintiffs did not actually meet-and-confer with Lowe's.*[5]

### III. ARGUMENT

Plaintiffs' Motion should be summarily denied with respect to the 42 log entries on which Plaintiffs failed to properly meet-and-confer. *See* LCvR 7.1(b) ("A motion that fails to show that the parties have properly conferred or attempted to confer may be summarily denied."); *see also* ECF 13 at 4 (explaining that "[e]very motion shall . . . show consultation between or among counsel in accordance with Local Rule 7.1"). Nevertheless, Lowe's is willing to produce the

---

26(b)(5), the Protective Order in this case provides that the party receiving notice of an inadvertent production of privileged material must "promptly return, sequester, or destroy the potentially privileged information . . . and certify in writing that they have done so within five business days of receiving notification." ECF No. 20 at 13. Plaintiffs failed to follow this procedure.

[5] Plaintiffs' Motion does not seek the production of one of the eight clawed-back documents: LOWES-WHMDL-0132004, which contains the communications logged at PRIV-043, PRIV-044, and PRIV-047.

communications represented by 19 of the 45 total log entries at issue, subject to a non-waiver order under Federal Rule of Evidence 502(d)—including the clawed-back communication (PRIV-068) that Lowe's previously offered to produce on the same condition, and the communications represented by 18 of the entries on which Plaintiffs did not meet-and-confer. Plaintiffs' request to compel the production of the materials covered by the remaining 26 log entries should be denied.

**A.  The Seven Clawed-Back Documents At Issue Are Privileged**

Plaintiffs continue to challenge Lowe's privilege claims as to three log entries corresponding to seven of the eight documents that Lowe's clawed back on June 29, 2021. These seven documents all were properly withheld.

> **1. PRIV-069 (LOWES-WHMDL-0131676; LOWES-WHMDL-0131917; LOWES-WHMDL-0131925; LOWES-WHMDL-0131935; LOWES-WHMDL-0132089; LOWES-WHMDL-0132097)**

Six of the seven documents each have at issue only the same, one redacted communication—a September 22, 2020 9:00 AM email from Thomas Dhen, Lowe's Workforce Management Manager, to Mark Davis (Senior Director, Store Operations), Stuart Whitman (HRBP Consultant, Store Operations and Global Security), Jeff Ready (Director, Store Operations), Sarah Frietsch (HR Analyst), and Clark Moore (Director/HR Business Partner – Store Operations). This communication need not be produced because it reflects advice rendered by Lowe's in-house legal department concerning the purpose of an "opening duties" pay code in the company's Kronos timekeeping system. *See* PRIV-069.[6] The fact that legal advice was discussed in subsequent email communications among a small group of non-legal personnel does not render

---

[6] During the Parties' August 17 meet-and-confer, Lowe's offered to produce, in unredacted form, the text redacted from the email Mark Davis sent on September 22, 2020 at 7:17 AM (i.e., PRIV-068)—that is, the email in the same string immediately prior to the 9:00 AM note from Thomas Dhen—subject to a non-waiver agreement. Lowe's remains willing to do so.

it non-privileged, as made clear by the cases that Plaintiffs themselves cite in their Motion. *See* Mot. at 8 (citing *In re N.Y. Renu with Moistureloc Prod. Liab. Litig.*, No. MDL 1785, 2008 WL 2338552, at *1 (D.S.C. May 8, 2008); *FTC v. GlaxoSmithKline*, 294 F.3d 141, 147 (D.C. Cir. 2002)). Both *GlaxoSmithKline* and *In re N.Y. Renu* support the proposition that legal advice remains privileged when it is discussed among non-lawyers with a need to know that advice, so long as the "confidentiality" of the advice is maintained. *See GlaxoSmithKline*, 294 F.3d at 147; *In re N.Y. Renu*, 2008 WL 2338552, at *1. This conclusion is consistent with those of other courts in this Circuit, which consistently have explained that communications "reflecting" legal advice do not lose their privileged status simply by "be[ing] transmitted between non-attorneys (especially individuals involved in corporate decision-making)." *Santrade*, 150 F.R.D. at 545. In other words, "communications retain their privileged status if the information is relayed from a non-lawyer employee or officer to other employees or officers of the corporation on a need to know basis." *Rohlik v. I–Flow Corp.*, 7:10–CV–173–FL, 2012 WL 1596732, at *3 (E.D.N.C. May 7, 2012) (internal quotation marks omitted); *see also Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc.*, 63 F. Supp. 3d 558, 567 (E.D.N.C. 2014) (citing cases). That is precisely what happened here.

Plaintiffs suggest that Lowe's nevertheless has an affirmative burden to demonstrate that it was necessary for each and every recipient of the legal advice to have received the advice in order for the advice to remain privileged. *See* Mot. at 8 (asserting that Lowe's is required to "show that the legal advice reflected in the communications were shared with folks who have a 'need to know'"). Not so. In actuality, Lowe's "burden 'is to show that it limited its dissemination of the documents in keeping with their asserted confidentiality, *not* to justify each determination that a particular employee should have access to the information therein.'" *In re New York Renu With*

6

Case 5:20-md-02947-KDB-DSC    Document 60    Filed 10/08/21    Page 6 of 13

*Moistureloc Prod. Liab. Litig.*, No. MDL 1785, 2009 WL 2842745, at *1 (D.S.C. July 6, 2009) (quoting *GlaxoSmithKline*, 294 F.3d at 147-48) (emphasis added). Lowe's has satisfied that burden.

As the unredacted portions of the email chain at issue show, the redacted information was given to provide "context" to high-level Human Resources and Store Operations personnel who were responsible for handling incoming questions regarding the 2020 Kronos configuration change involving the "opening duties" pay code. Lowe's did not broadcast the information to everyone tangentially involved with the Kronos change; rather, Mr. Dhen communicated with a small group of senior human resources, communications, and store operations personnel, all of whom were intimately involved in the configuration change. *See* Mot. at 4 n.4. Indeed, Plaintiffs have deposed four (4) of these individuals and obtained testimony regarding their respective roles in the Kronos change discussed in these documents. *See, e.g.*, S. Whitman Dep. Tr. at 44:17-21, 45:17-18 (explaining that he was responsible for interfacing with the "store operations communication team" and "follow[ing] up with the . . . business to see . . . where there may be some clarity needed and communication"). Because Lowe's has more than satisfied its burden to show that the legal advice reflected in this document was disseminated in a manner consistent with its confidential nature, Plaintiffs' request for its production should be denied. *See, e.g.*, *First S. Bank v. Fifth Third Bank, N.A.*, No. 7:10-2097-MGL, 2013 WL 1840089, at *6 (D.S.C. May 1, 2013) (emails from non-attorney forwarding legal advice "to those who needed the information to fulfil the purpose for which the lawyer was consulted" were privileged); *Bluestem Brands, Inc. v. Merkle, Inc.*, No.

ELH-13-0185, 2014 WL 12734753, at *2 (D. Md. Nov. 19, 2014) (legal advice "relayed to other employees by a non-attorney" was properly redacted as a privileged communication).[7]

### 2. PRIV-057 (LOWES-WHMDL-0131804)

Lowe's also properly withheld portions of a seventh document, producing it only in redacted form. *See* PRIV-057. As with the six documents discussed above, this document reflects the advice of Lowe's in-house counsel regarding the inclusion of the "opening duties" pay code in the September 2020 change to the prompts in Kronos. Plaintiffs argue that the document is subject to production because "[a]t best, [it] may relate to the subject-matter legal may have at some point given advice on." Mot. at 10. That is incorrect. The document *reflects* legal advice and was properly withheld on that basis. *See, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18MD2836, 2019 WL 6122011, at *1 (E.D. Va. Oct. 3, 2019) (explaining that an email that "reflects the legal advice set forth by the attorneys" remains privileged, notwithstanding "[t]he fact that nonlawyers conveyed that information to company executives who needed the legal advice to inform their duties to the company"); *Mid-State Auto.*, 2020 WL 1488741, at *5 (same).

Plaintiffs' contention that privilege is broken when non-lawyers receiving legal advice are receiving it for the purpose of "implementing, as a business measure, the business response to a legal opinion," Mot. at 9, is similarly misguided. It is difficult to imagine any purpose for which non-lawyers in a corporation ultimately would be receiving legal advice *other than* to conduct the company's business in keeping with that legal advice. The mere fact that legal advice is rendered

---

[7] So, too, are Plaintiffs incorrect to suggest that Lowe's is required to direct them to the original source of legal advice later reflected in a communication over which privilege is claimed. *See* Mot. at 11. Plaintiffs cite no authority for this proposition, and nothing in Rule 26(b)(5)(A) requires Lowe's to undertake the burden that Plaintiffs seek to impose on it. Nevertheless, to the extent that the Court would find it helpful, Lowe's is prepared to submit a declaration from Thomas Dhen confirming that in this particular instance, the source of the legal advice at issue was Tina Roberts and Sandra Dermody (both Senior Counsels at Lowe's).

concerning business issues, and is shared for the purpose of addressing those issues, does not change the fundamentally *legal* nature of the advice provided. *See In re OM Grp. Sec. Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005) ("documents prepared for the purpose of obtaining or rendering legal advice are protected even though the documents also reflect or include business issues").

B.  **The Forty-Two Other Privilege Log Entries At Issue All Reflect Documents Protected By The Attorney-Client Privilege Or Attorney Work Product Doctrine**

Plaintiffs devote a mere five lines of their brief to stating that they "also challenge" Lowe's claims of privilege over documents covered by 42 other entries in Lowe's privilege log. *See* Mot. at 6. Their Motion then proceeds to substantively address *none* of these documents. Instead, Plaintiffs apparently want this Court to order production of privileged information for *in camera* review merely because Lowe's privilege log entries state that these documents "'[r]eflect[] legal advice' or '[c]ontain[] legal advice' but [are] among non-legal personnel." Mot. at 6. Plaintiffs have not come close to establishing that they are entitled to the relief they seek regarding these additional documents.

With respect to Plaintiffs' apparent concern over Lowe's use of the word "reflect" or "contain" on its privilege log, either formulation is acceptable, and either term could be used to describe the redacted material at issue here. *See, e.g.*, *McAirlaids, Inc.*, 2014 WL 12782814, at *4 (explaining that "documents identified . . . as 'reflecting' legal advice are in fact conveying or summarizing legal advice from counsel," and therefore "are properly withheld as protected by the attorney-client privilege"). Indeed, courts properly have rejected the argument that Plaintiffs apparently seek to make here—*i.e.*, that "otherwise privileged documents lose their privilege simply due to semantics of the privilege log descriptions." *Id.* Nor is there any requirement that an attorney be copied on a privileged document in order for the document to be properly logged as protected by the attorney-client privilege. *See, e.g.*, *Santrade*, 150 F.R.D. at 545; *Stack v. Abbott*

9

*Labs., Inc.*, No. 1:12CV148, 2016 WL 6884936, at *5 (M.D.N.C. June 8, 2016) ("As for corporate documents, the Court notes that an attorney need not be a sender or recipient of a document in order for it to be properly withheld under the attorney-client privilege.").

In any event, Lowe's would have produced (and remains willing to produce) unredacted versions of the communications covered by 18 of these 42 privilege log entries (*see* Appendix 1) subject to a non-waiver order under Federal Rule of Evidence 502(d), had Plaintiffs simply asked.[8]

## C. *In Camera* Review

Lowe's, of course, will provide the Court with any materials it wishes to review *in camera*. However, Lowe's respectfully submits that where, as here, a privilege log clearly establishes a party's privilege claims and the challenging party has not raised a meaningful question about it—or even engaged in a proper meet-and-confer—*in camera* review is unnecessary and unwarranted. *See, e.g.*, *Peters v. Aetna Inc.,* No. 1:15-CV-00109-MR, 2018 WL 3616923, at *10–11 (W.D.N.C. July 27, 2018) (explaining a prerequisite to *in camera* review is that the challenging party "demonstrate a factual basis sufficient to support a good faith belief that *in camera* inspection may reveal evidence that the information in the materials is not privileged."); *King v. Univ. Healthcare Sys. L.C.*, 645 F.3d 713, 720-21 (5th Cir. 2011) (affirming district court's denial of request for *in camera* review where proponent of privilege "met its initial burden to show that it was entitled to protection by the privilege" and challenging party "offered only speculation that the e-mails [were] not covered by privilege"); *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 35 (D. Kan.

---

[8] At least one other disputed privilege claim also could have been readily resolved had Plaintiffs simply asked: on Lowe's log, PRIV-105 lists a non-attorney as the author of the document, based on the name that appeared associated with that document in its metadata. But the contents of the document itself reveal that it is a memorandum from Sandra Dermody (Senior Counsel at Lowe's) regarding the *Danford* action. This is apparent in the redacted version of the email that Lowe's is producing concurrently with this Opposition.

1996) (holding that "the very purpose of Fed. R. Civ. P. 26(b)(5)" is to "reduce the need for *in camera* examination of the documents" over which privilege is claimed, and that "[*i*]n camera procedures should be a rare procedure in discovery disputes" (citation and internal quotation marks omitted)).

## IV. CONCLUSION

Plaintiffs' arguments against Lowe's claims of privilege fail for the reasons set forth above. Lowe's respectfully requests that this Court deny the Motion, and sustain Lowe's privilege claims, in relation to all of the log entries Plaintiffs challenge except for those entries listed in Appendix 1. For the 19 log entries listed in Appendix 1, Lowe's respectfully requests that the Court order the production of the communications listed in Appendix 1 subject to a non-waiver under Federal Rule of Evidence 502(d).

Dated: October 8, 2021

Adam K. Doerr (Bar Number: 37807)
ROBINSON, BRADSHAW & HINSON, P.A.
101 N. Tryon St., Ste. 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000
adoerr@robinsonbradshaw.com

Respectfully submitted,

/s/ *Jason C. Schwartz*
Jason C. Schwartz
Molly T. Senger
David A. Schnitzer
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
jschwartz@gibsondunn.com
msenger@gibsondunn.com
dschnitzer@gibsondunn.com

Karl G. Nelson
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Ave., Ste. 2100
Dallas, TX 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
knelson@gibsondunn.com

*Attorneys for Defendants*

# **APPENDIX 1**

1. PRIV-033
2. PRIV-034
3. PRIV-051
4. PRIV-052
5. PRIV-068
6. PRIV-095
7. PRIV-103
8. PRIV-104
9. PRIV-123
10. PRIV-124
11. PRIV-139
12. PRIV-140
13. PRIV-141
14. PRIV-142
15. PRIV-143
16. PRIV-144
17. PRIV-145
18. PRIV-150
19. PRIV-151

**CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2021, I electronically filed the foregoing document and its attachments with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Jason C. Schwartz*