# Exhibit F

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**MDL DOCKET NO. 5:20-MD-2947-KDB-DSC**

| | |
|---|---|
| IN RE: LOWE'S COMPANIES, INC. | ) |
| FAIR LABOR STANDARDS ACT | ) |
| (FLSA) AND WAGE AND HOUR | ) |
| LITIGATION | ) |
| | ) |
| | ) |
| THIS DOCUMENT APPLIES TO: | ) |
| *All Cases* | ) |

**DECLARATION OF JASON J. THOMPSON, ESQ.**

After being duly sworn, I Jason J. Thompson hereby state:

1.      I make this declaration in support of Plaintiffs' Unopposed Motion to Certify a Collective Action Under Section 216(b) of the FLSA Solely for Settlement Purposes; For Approval of an Opt-in Settlement; For Appointment of Settlement Administrator; And for Approval of Awards of Attorneys' Fees and Costs and Service Awards (hereinafter, "Plaintiffs' Motion").

2.      I am a Senior Shareholder at the law firm of Sommers Schwartz, P.C., which serves as lead counsel for the Named Plaintiffs and Settlement Class Members in this action and I am personally familiar with, and have personal knowledge of the files and records of this case.

3.      I have been involved in this case from the beginning and I have personal knowledge of the matters set forth herein, based on my active participation in all material aspects of this litigation, including personal involvement in the negotiation of the Settlement.

**A.**      <u>**Experience and Background**</u>

4.      I have been employed by the law firm of Sommers Schwartz, P.C. since 2008 and practicing law since 1992. I am currently a senior partner with the firm and Co-chair of its Complex Litigation Department.

1

5.      Sommers Schwartz, P.C. is a firm that primarily represents plaintiffs in complex employment, business, and personal injury litigation.  Since 1992, I have represented numerous companies and individuals in matters, and for the past 15 years my primary practice has focused almost exclusively on wage and hours, class actions and MDL litigation.

6.      I am licensed to practice in the State of Michigan and have been so since 1992.  I have been admitted *pro hac vice* or became a member of a particular federal district court in multiple federal courts around the country.

7.      My resume and our firm's Complex Litigation Department resume are attached hereto as Tab 1.

8.      I am experienced in the obligations of serving as class counsel and the legal requirements of Rule 23.  My experience includes first and foremost serving as lead class counsel and other various leadership positions as outlined in my bio. In addition, I taught law school students in class actions at Michigan State University Law School as an adjunct professor. *See* Tab 1.

9.      I have also been recognized as a leader in my field, including: serving as chairperson on professional committees; speaking at or moderating professional CLE courses; selected as a top lawyer by professional groups on multiple occasions; and awarded professional recognition by legal publications over my career. *Id*.

**B.      The Litigation**

10.     I have reviewed the declaration of my partner, Kevin Stoops, and concur in his assertions and characterizations.  Rather than repeat them, my declaration will be limited to facts and issues with which I had particular involvement.

11.     In addition to assisting on the expert work outlined by Mr. Stoops, I assumed lead

responsibility for expert work regarding the standard of practice for a large retail store as to timekeeping and wages.

12. The issue was of significant importance, and was, in my view, the primary liability defense in the case.

13. Under certain reading of the applicable case law, if Lowe's could prove that it took reasonable steps to capture the hours its managers worked, it could avoid all liability. *White v. Baptist Mem'l Health Care Corp.,* 699 F.3d 869, 876 (6th Cir. 2012) (employer had no actual, let alone constructive knowledge that the meal breaks were being interrupted and there is no way employer should have known employees were not being compensated for missing her meal breaks); *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 389 (6th Cir. 2016) ("We now adopt the reasonable diligence standard for FLSA cases."); *Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015); *Allen v. Bd. of Pub. Educ. for Bibb Cnty.,* 495 F.3d 1306, 1314–15 (11th Cir.2007) (The employer claimed that even if unpaid hours can be shown, Plaintiffs cannot demonstrate that their supervisors knew that they were working overtime without pay).

14. Under the defense, the issue is constructive knowledge: whether an employer has reason to believe overtime hours are being worked when it "should have discovered it through the exercise of reasonable diligence." *Id.* Under the standard, if an employer had an opportunity to acquire knowledge of an employee's work by using reasonable diligence, then the employer can be charged with constructive knowledge. *Id.* On the other hand, if an employer implements reasonable methods to capture off-the-clock time, and the employee failed to use those methods, then the employer is not charged with constructive knowledge and does not face liability for the unpaid time.

15. In 2017 Lowe's reassigned the store opening and closing duties from managers paid

Case 5:20-md-02947-KDB-DSC   Document 90-8   Filed 05/20/22   Page 4 of 23

on a *salary* basis to new managers who were paid on an *hourly* basis. The change meant Lowe's had to track the time the hourly managers spent opening and closing its stores to ensure the employees were paid for the off-the-clock work, including overtime if needed. Thus, Lowes was well aware of the need for its hourly managers to engage in off-the-clock work. The key issue instead, was whether Lowe's knew of each and every specific instance of the off-the-clock work, who performed it, and how long it took to complete. Thus, it was a timekeeping issue.

16. By 2017, Lowe's took steps to implement time-recording methods for the opt-in Plaintiffs to use and avoid unpaid time. In fact, Lowe's published several polices on point, including not working off the clock and directing employees to use the designed time recording system to verify all hours worked; sent notices to hourly managers about the need to record the time; and prepared computer training modules to reinforce the timekeeping polices and instructions.

17. The ultimate jury question was whether the above mentioned Lowe's methods and actions rose to the level of reasonable, or in contrast, fell short of reasonable. Plaintiffs' theory of the case was: (1) Lowe's did too little, especially considering the pressure on store managers to make budget; and (2) too late, including admitting it did no auditing of the time recording of its managers and only fixed the unused system once this lawsuit was filed. In short, Lowe's failed to meet the standards of a big box store and thus acted unreasonable under the facts and circumstances.

18. As with all trials involving "reasonable conduct under the circumstances" tests, the actual circumstances matter. Here, the jury would be asked to assess the conduct of Lowe's – a big box retail, Fortune 50 company with near unlimited resources. For example, facts like the available time keeping resources, knowledge and expertise in employee conduct and behavior,

computer technology, store and corporate budgets and available staff and human capital that Lowe's had available to address the timekeeping challenges in this case all dramatically differed, and outpaced, the proverbial mom-and-pop store found in most neighborhoods. What is reasonable to expect from one may not be the same for the other. In such situations, expert testimony can be admitted to assist the jury. *See* FRE 702.[1]

19. In order to rebut Lowe's reasonable conduct defense, I identified and worked with two experts with extensive experience and knowledge on the topic, Messrs. Lee Miller and Gary White. (*See* Experts' CVs attached at Tab 2) The preparation included: meeting the threshold test for introduction of expert testimony under FRE 702; establishing each expert as qualified experts to offer reliable testimony on the issues; and developing their ultimate opinions.

20. Lowe's retained its own expert on the topic, Hart Blanton.

21. All three experts issued expert reports and were deposed.

22. Based on my experience as a class action attorney, and in my opinion, the expert witness work initiated and completed by Plaintiffs in this case was important to reaching the ultimate settlement of this case. The hours spent on the experts was necessary and reasonable, as were the costs and expenses associated with the expert witness work.

23. Based on my experience, I advocate for the Court's approval of this settlement and payment of the requested attorney fees and costs as reasonable, necessary and proper.

---

[1] A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

5

I declare, under penalty of perjury, under the laws of the United States of America that the foregoing is true and correct.

Executed this 10th day of May, 2022 at St. Petersburg, Florida.

Dated: May 20, 2022

Jason J. Thompson
Lead Plaintiffs' Counsel

6

# TAB 1

## JASON J. THOMPSON
**Senior Shareholder**

Direct Phone:  248-415-3206
Direct Fax:     248-436-8453
jthompson@sommerspc.com



**Jason Thompson** represents clients in class action and multi-district litigation (MDL) involving consumer protection, employee rights, and mass tort cases in both federal and state courts throughout the United States. His clients include individuals as well as municipalities, healthcare plans, and unions.



Over the past 26 years, Jason has been repeatedly recognized for his excellence as a trial lawyer, including selection by his peers as a SuperLawyerTM, board certification by the National Board of Trial Advocacy, and an AV Preeminent Lawyer rating from Martindale-Hubbell. Jason has been appointed as class counsel and in MDL leadership positions in cases involving antitrust, overtime pay, insurance coverage, environmental pollution, and consumer protection. He has been asked to testify before the Michigan Legislature regarding the state's pharmaceutical immunity law and amendments to qui tam provisions under Michigan's Medicaid fraud law.

In addition to practicing law, Jason writes and speaks on topics related to his practice and sits on the firm's Board of Directors. He also teaches a course on class action and multi-district litigation as an Adjunct Professor at Michigan State University College of Law. In 2017, Jason became an Arbitrator with the American Arbitration Association.

### EDUCATION

**Michigan State University College of Law**, Juris Doctor Cum Laude, 1992

**University of Southern California**, Bachelor of Arts in Economics, 1989

### MEMBERSHIPS

**State Bar of Michigan**

**The National Trial Lawyers**

**Million Dollar Advocates Forum**

**American Association for Justice**

    Wage & Hour Litigation Group (Former Co-Chair)

    Class Action Litigation Group

    Section on Toxic Environmental and Pharmaceutical Torts

    Employment Rights Section

**Michigan Association for Justice**

    Former Executive Committee Member

**American Arbitration Association**

    Arbitrator, Class Action and Employment Panels



## BAR ADMISSIONS

**Michigan**
**U.S. Supreme Court**
**U.S. Sixth Circuit Court of Appeals**
**U.S. Ninth Circuit Court of Appeals**
**U.S. District Court for the Eastern District of Michigan**
**U.S. District Court for the Western District of Michigan**
**U.S. District Court for the District of Alabama**
**U.S. District Court for the Northern District of California**
**U.S. District Court for the Northern Central District of California**
**U.S. District Court for the Southern District of California**
**U.S. District Court for the District of Colorado**
**U.S. District Court for the Northern District of Georgia**
**U.S. District Court for the Northern District of Illinois**
**U.S. District Court for the Southern District of Illinois**
**U.S. District Court for the Western District of Kentucky**
**U.S. District Court for the Western District of Louisiana**
**U.S. District Court for the District of Maryland**
**U.S. District Court for the District of Massachusetts**
**U.S. District Court for the District of Minnesota**
**U.S. District Court for the Southern District of Mississippi**
**U.S. District Court for the Northern District of Missouri**
**U.S. District Court for the Western District of Missouri**
**U.S. District Court for the District of Nevada**
**U.S. District Court for the Southern District of New York**
**U.S. District Court for the Western District of North Carolina**
**U.S. District Court for the Northern District of Ohio**
**U.S.District Court for the Eastern District of Tennessee-Knoxville**
**U.S. District Court for the Southern District of West Virginia**
**U.S. District Court for the Western District of Washington**

## SEMINARS & LECTURES

"Wage and Hour Law," 2018 Michigan Association for Justice Annual Convention

"Mediating FLSA Actions," 2016 American Association for Justice Annual Convention, Employment Rights Section and Wage & Hour Litigation Group

"The Current State of the De Minimis Doctrine and Recent Supreme Court Fair Labor Standards Act Decisions," 2015 American Association for Justice Annual Convention, Employment Rights Section and Wage & Hour Litigation Group

"Rule 68 Offers of Judgment-Genesis and Beyond," 2014 American Association for Justice Annual Convention, Employment Rights Section and Wage & Hour Litigation Group



Moderator for the Employment Rights Section and Wage & Hour Litigation Group CLE Program, 2013 American Association for Justice Annual Convention

"The Latest Developments Affecting your Class Action Strategy Teleseminar," 2013 American Association for Justice, Continuing Legal Education Program

Sponsor, 2013 First Annual Great Lakes Mass Tort Seminar

Moderator for the Employment Rights Section and Wage & Hour Litigation Group CLE Program  Moderator, 2012 American Association for Justice Annual Convention

Moderator for the Employment Rights Section and Wage & Hour Litigation Group CLE Program, 2011 American Association for Justice Annual Convention

"H2B Visa Workers and FLSA Violations," 2011 Ohio Association for Justice Wage & Hour Seminar

Moderator for the 2011 American Association for Justice Annual Convention, New York, New York

"Discovery Workshop," 2010 Michigan Association for Justice New Lawyers

Moderator for the 2010 American Association for Justice Annual Convention, Wage & Hour Litigation Group Educational Seminar

"Wage & Hour Litigation: Employee Status," 2009 American Association for Justice Annual Convention

Panel Member, 2007 Michigan Trial Lawyers Association Deposition Workshop

"Obtaining Recovery for Identity Theft Victims," 2005 American Association for Justice, Annual Convention

"Bringing Your Closing Argument to Life," 2005 Florida Justice Association

"New Ways to Succeed," 2005 Michigan Trial Lawyers Association Rapid Fire Seminar

"Class Action and Multidistrict Litigation Settlements," 2003 Product Liability and Personal Injury Law Conference, Kitzbühel, Austria

Judge for the 3rd Annual National Trial Advocacy Competition, Michigan State University/Detroit College of Law, 2002

"Mass Torts and Environmental Class Actions," 2002 Michigan Trial Lawyers Association Seminar

Moderator for the 2002 Michigan Trial Lawyers Association Rapid Fire Symposium – "Environmental Torts"

"EMS Cases," 1998 Michigan Trial Lawyers Association Rapid Fire Symposium



## HONORS AND AWARDS

**Super Lawyers (Michigan)** – 2006-2012 and 2014 to present

**Best Lawyers**, Plaintiff's Mass Tort Litigation/Class Actions, 2021

**Michigan Lawyers Weekly** – Top Settlement 2012 ($22.5 Million)

**Michigan Lawyers Weekly** "**Up & Coming Lawyers**", 2001

**Top 100 Trial Lawyers in Michigan, National Trial Lawyers Association**

**Board Certified Civil Trial Lawyer, National Board of Trial Advocacy**

**Leading Lawyers** – Class Action & Mass Tort Law

**AV Preeminent Lawyer (Martindale Hubbell)**–Peer Review Rating of 5.0 out of 5.0

## ACCOMPLISHMENTS

$6.55 million collective action settlement on behalf of exotic dancers working at a Deja Vu gentleman's club that misclassified them as independent contractors, forced them to "rent," and failed to pay minimum wage

$6.25 million class settlement on behalf of Permanente "advice nurses" who were not paid wages and overtime for off-the-clock work in violation of the Fair Labor Standards Act

Over $16 million in client settlements for women injured by defective transvaginal mesh products

$680,000 class action settlement involving restaurant employees who alleged they were forced to tip-out to ineligible employees and also cheated out of minimum wage

$3.0 million class action settlement involving restaurant employees who alleged they were cheated out of minimum wage and overtime pay

$3 million class action settlement on behalf of hourly employees at Bloomin' Brands, Inc. for violation of the Fair Labor Standards Act in failing to pay their employees all earned wages.

$3.5 million class action settlement on behalf of home-based customer service agents who claimed their employer unlawfully withheld compensation in violation of the Fair Labor Standards Act's wage and hour provisions

$22.5 million recovered for class of insurance policyholders in 38 states whose covered property damage claims were previously underpaid

$7.5 million settlement in nationwide wage and hour collective action involving more than 12,000 call center employees who were not paid for their pre-shift computer login and boot-up time.

$4.5 million settlement in nationwide wage and hour class action involving more than 20,000 at-home call center employees who were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime.

$1.1 million settlement in nationwide wage and hour class action involving more than 1,000 at-home call center employees who were not paid for their pre-shift computer login and boot-up time and for time spent working "off-the-clock" while experiencing system downtime.

$940,000 settlement wage and hour collective action settlement in a nationwide lawsuit against Sykes Enterprises, Inc. by approximately 4,000 call center employees who were not paid for their pre-shift computer login and boot-up time



Wage and hour collective action settlement for $1.4 million involving call center employees. Alleged violations included logging into and out of software programs which resulted in unpaid overtime compensation.

$11.3 million collective action settlement on behalf of exotic dancers working at a Déjà Vu gentleman's club who were not paid a minimum wage as required under the Fair Labor Standards Act (FLSA). Instead, the dancers were misclassified as independent contractors and were forced to pay the clubs rent out of the dance fees paid by customers.

Smith et al. v. Kaiser Foundation Hospitals (Class Counsel)

Clark et al v. Intelenet America LLC (Class Counsel)

Moreno v. Dash Lube et al. (Class Counsel)

Clay et al. v. CytoSport, Inc. (Class Counsel)

Lambert et al. v. Dollar General Corp. (Class Counsel)

Parrot et al. v. Family Dollar, Inc. (Class Counsel)

Lambert et al. v. General Nutrition Corp. (Class Counsel)

Price et al. v. L'Oreal USA, Inc. et al. (Class Counsel)

Holmes v. Kelly Services, LLC (Class Counsel)

Owens et al. v. GLH Capital Enterprise, Inc.

Gullage et al. v. Cognosanto, LLC (Class Counsel)

Jane Doe et al. v. Deja Vu et al. (Class Counsel)

Wengerd et. al. v. Self-Reliance, Inc. (Class Counsel)

Compressor Engineering Corp. vs. Thomas (Class Counsel)

Lee v. Asurion Insurance Services et al. (Class Counsel)

Gaffers v. Kelly Services, Inc. (Class Counsel)

In Re: Blue Cross Blue Shield Antitrust Litigation MDL No. 2406 (Damages PSC Committee Member)

Bourne v. Ansara Restaurant Group et al. (Class Counsel)

APB Associates v. Bronco's Saloon, Inc. et al. (Class Counsel)

Compressor Engineering Corporation v. Manufacturers Financial Corporation, et al. (Class Counsel) Machesney v. Lar-Bev of Howell, Inc., et al. (Class Counsel)

Alderoty v. Maxim Healthcare Services (Class Counsel)

Atkinson v. TeleTech, LLC (Class Counsel)

Avio, Inc. v. Alfoccino, Inc. et al. (Class Counsel)

Wright v. Jacob Transportation Services, LLC et al. (Class Counsel)

Klein v. Secura Insurance Co. (Class Counsel)

Wilson v. Maxim Healthcare Services (Class Counsel)

Cardoza v. Bloomin' Brands Inc. et al. (Class Counsel)

Matthews v. Convergys Corp. et al. (Class Counsel)

Ingram v. Passmore Towing & Recovery (Class Counsel)

Terry v. TMX Finance LLC et al. (Class Counsel)

Ross v Jack Rabbit Services, LLC, et al. (Class Counsel)

Lawrence v. Maxim Healthcare Services (Class Counsel)



Stelmachers v. Maxim Healthcare Services (Class Counsel)

Williams vs. Sykes Enterprises, Inc. (Class Counsel)

Flores vs. Velocity Express, Inc. (Class Counsel)

Jimenez et al vs. Allstate Insurance Company et al (Class Counsel)

Automotive Wire Harness Systems Antitrust Litigation MDL No 2311 (Direct Purchaser PSC)

Jackson's Five Star Catering, Inc. v John R. Beason d/b/a Tax Connection World & Tax Connection Worldwide LLC (Class Counsel)

Exclusively Veterinary Cats Hospital, P.C. v Anesthetic Vaporizer Services, Inc. (Class Counsel)

Northstar Education Finance, Inc. Contract Litigation MDL No. 1990 (Executive Committee)

Stanley vs. United States Steel Corporation (Class Counsel)

Amgen Off Label Marketing Litigation MDL No 1934 (Executive Committee)

In Re: Neurontin Sales and Marketing MDL No. 1629 (Purchase Claims Committee)

In Re: Vioxx Sales and Marketing MDL No. 1657 (Purchase Claims Committee)

In Re: Bextra/Celebrex Sales and Marketing MDL No. 1699 (Purchase Claims Committee)

In Re: Tricor (TPP Allocation Counsel)

In Re: Zyprexa MDL No. 1596 (Purchase Claims Committee)

Haase vs. Frank J. Bluestein, et al. (PSLRA Counsel)

Regina vs. Comcast of Detroit, Inc. (Class Counsel)

Snow v Atofina Chemical Inc. (Class Counsel)

   

 

# TAB 2

# GARY WHITE

10 Lake Como Court
Rancho Mirage, CA 92270
949.697.1500
gary@gwretailexpert.com

## HIGHLIGHTS OF QUALIFICATIONS

Highly accomplished and results-driven professional with proven leadership abilities, exceptional interpersonal and communication skills and an extensive background in the retail industry.

- The ability to inspire a shared vision
- Foster collaboration and enable others to act
- A positive and reaching communication style
- Challenging processes, searching for opportunities and calculating risk
- A passion for leadership
- Encourages others to be their best

## PROFESSIONAL EXPERIENCE

### GW RETAIL CONSULTING | 2010 - Present
#### Chief Executive Officer
A retail consultant focused on Brands / Trends / Merchandising / Operations / Store Safety

- Expert assessment of retail brands and their operations
- Guidance to management, owners, legal and the investment community
- Complete review of merchandising, marketing, in house design, product development, sourcing, buying
- Retail real estate reviews of malls, strip centers, lifestyle shopping areas, distribution centers
- Brand positioning, competitive review, assortment diagnostics
- Product expertise with teen, women, kids, shoes, accessories, jewelry, plus size, beauty
- Online, social merchandising, customer connection and guidance
- Management staffing review, SG&A assessment, operations review, cost/expense assessment
- Experienced with Fast Fashion, Department Stores, Specialty, Big Box and general product stores
- Opened and managed stores in all 50 states, Canada, UK, Ireland, Australia, Japan, Korea
- A variety of consultation formats: Retained, training, round-table discussions, market reviews, mall walks with management/investment teams, conference calls. Brand specific reviews and/or brand comparisons

### UNITED RETAIL GROUP, INC. – A PPR COMPANY | 2008 - 2010
#### Chief Executive Officer
United Retail acquired by PPR in Fall 2007

- Successfully Executed Special Turnaround – Helped move a recently acquired company from public to private, reduce its losses, and grow the company
- Women's plus size brands of Avenue, Avenue Body, Cloudwalker Footwear, Avenue Direct, and Jessica London Catalogue
- 500 mall and strip-center based specialty stores and online stores
- In-house exclusive designs and contract manufactured
- Full P&L and brand development responsibilities
- Charged with improving United Retail Group profitability and growing its concept

Case 5:20-md-02947-KDB-DSC   Document 90-8   Filed 05/20/22   Page 16 of 23

**THE WET SEAL, INC. | 2004 - 2008**

    **Executive Vice President, Chief Operating Officer**
- Successfully Executed Special Turnaround – Returned this company to profitability from large financial losses
- Sales, real estate, store planning & construction, operations, purchasing, acquisitions, and strategies
- 470 mall-based fashion retail stores, Arden B. and Wet Seal brands
- Full P&L responsibilities
- Major turnaround project, saving company from financial failure and returning it to a profitable brand

**SAVERS, INC. | 2000 - 2003**

    **President & Chief Executive Officer / Owner / Director**
- Successfully Executed Special Turnaround – Transitioned the company from a family owned and operated business to a growth strategy. 60% is now owned by private investors
- Leading the operations of 197 thrift stores
- Retail operations in Canada, Australia, and the United States
- Responsible for brand, strategy and concept development
- The largest for-profit thrift store chain worldwide

**THE GYMBOREE CORPORATION | 1996 - 2000**

    **Chief Executive Officer, Director**
- Responsible for the profitable operation of over 600 retail stores, 400 parent/child play & music program locations
- Designed, sourced and manufactured high quality play clothing
- Operating in 14 countries. Growing from 200 to over 600 stores
- Direct reports were international director of operations, heads of merchandising, marketing, stores, human resources, real estate and finance

**MERVYN'S STORES | 1992 - 1996**

    **Executive Vice President, Stores & Operations**
- Management and operations of 295 stores with annual sales in excess of $4.5 billion with 30,000 + employees
- Responsible for setting direction in support of company vision
- Financial responsibility included a $500 million annual budget
- Executive member of the Target Corporation management council. A parent company decision making body

**TARGET STORES | 1976 - 1992**

    **Vice President Regional Manager - West | 1987 - 1992**
- Management of 60 stores in Northern California and Nevada
- Six districts, sales of $1.2 billion
- Operating profit/loss responsibility

    **Regional Merchandising Manager - West | 1984 - 1987**
- Management of stores inventories, assortments and product timing
- Sales responsibility for all West Coast stores. Store count grew from 27 to 118 in four years
- Direct reports of eight field merchandisers

**District Manager – California, Missouri, Illinois | 1980 - 1984**
- Managed district groupings of stores in St. Louis and Southern California. Store count ranged from 9 to 13
- 1,800 employees, $210 million in volume responsibility
- Full P&L accountability
- Planned the initial Target Stores entry into Southern California. Opened 10 new stores in the market

**Store Manager – Missouri | 1976 - 1980**
- General store manager duties in three stores over a five-year period
- Volume responsibility ranged from $12 million to $22 million
- Full P&L accountability
- Appointed to open one new store
- Named Manager of the Year - 1979

**COOK UNITED | 1972 - 1976**
**Store Management – Ohio**
- Various management assignments from trainee to store manager
- Three store manager appointments during my tenure
- Cook United operated large format discount stores with general merchandise. The store merchandising focus was directed toward hardware and home improvement

**PATTON HARDWARE COMPANY | 1966 - 1972**
**Store Manager – Ohio**
- Start of my Retail Management assignment
- Managed one of two locations
- Customer assistant, delivery, install, repair,
- Bought merchandise
- Responsible for four direct reports

**BOARD OF DIRECTOR ASSIGNMENTS**

National Retail Federation 1998 – 2000, 2008 – 2010
March of Dimes – National Trustee, Executive Director 1995 – 2000
Kids in Distressed Situations (K.I.D.S.) 1996 – 2000
Gymboree Inc. Gymboree International 1996 – 2000
Savers Inc. 2000 - 2003

**EDUCATION & PROFESSIONAL TRAINING**

- Cuyahoga Community College (1970)
- Henry Crown Fellow – a four-year values-based leader internship at the Aspen Institute (1997)
- Stanford University Corporate Directors Consortium
- Harvard Negotiation Institute
- Various management development courses, as student and instructor

GARY WHITE RESUME 3

## EDUCATION

**Harvard Law School**, J.D., Magna Cum Laude
**Rutgers College**, B.A., Summa Cum Laude, Phi Beta Kappa.

## CURRENT

**Advanced Human Resources LLC**
**Managing Director**

Provides human resources and compensation consulting, executive/career coaching, employment negotiations and corporate training in the fields of leadership, influencing, innovation, cross-cultural influencing, negotiating, recruiting and human resources management. Provides expert assistance to attorneys in evaluating employability, human resources, compensation and negotiating issues with regard to litigation matters.

**Seton Hall University Stillman School of Management**
**Adjunct Professor of Management**:

Courses in "Human Resources Management," "Managerial Influencing and Negotiating" and "Reengineering, Organizational Structure and Corporate Culture" in the Masters in Business Administration Program and "Managerial Decision-making" at the Center for Public Policy.

**Columbia University**
**Adjunct Professor of Human Capital Management**

Courses in Compensation and Benefits and in Employment and Labor Law for Human Resources Executives in the Human Capital Management Master's Degree Program; Courses in Negotiating and Influencing and in Design Thinking; Career workshops for graduate students on "How to Find Employment and Negotiate Compensation," "Cross Cultural Influencing" and "Leadership and Teambuilding."

**University of Southern California**
**Adjunct Professor of Human Resources Management**

Courses in Human Resource Strategy, Organizational Culture and Employee Outcomes, and Leadership in Human Resources in the Human Resources Management Master's Degree Program.

## HUMAN RESOURCES EXECUTIVE EXPERIENCE

**TV Guide Magazine, Online and Media Sales**
**Chief Human Resources Officer**

Responsible for leading the human resources function, and served on executive committee, for Gemstar-TV Guide. Responsible for all aspects of human resources at TV Guide Magazine (the number 1 selling weekly magazine in the US with a circulation of 10.5 million and a readership of 34 million), TV Guide Online (over 3.5 million unique user monthly), National Media Sales and TV Guide Direct (startup e-commerce group responsible for the TV Guide Online Store).

**USA Networks**
**Chief Human Resources Officer**
> Responsible for leading the human resources function for this $3 billion media conglomerate, which includes the USA & Sci-Fi Cable Networks and USA and SciFi.com

**Barneys New York, Inc.**
**Chief Human Resources Officer**
> Brought in to help with the post-bankruptcy turnaround. Responsible for leading the human resources function of this $400 million specialty retailer, with 1600 employees in 8 specialty retail stores, 13 outlet stores, a distribution center, buying, corporate and Paris offices.

**R.H. Macy & Co., Inc.**
**Corporate Vice President, Human Resources**
**Corporate Vice President, Employee and Labor Relations**
**Corporate Vice President, Labor Relations**
> Human resources responsibility for this $7 billion organization with over 100,000 employees, consisting of 119 department stores, specialty stores, outlet stores, distribution centers, overseas offices in Italy, France, Spain, Hong Kong and Japan.

## LEGAL EXPERIENCE

**Shanley and Fisher (now Faegre, Drinker, Biddle & Reath)**
**Law Firm Partner and Co-chair of Employment Law Group**
> Provided legal advice on employment and labor matters. Advised companies and worked with key executives negotiating compensation packages and employment agreements. Served as chief spokesman for collective bargaining negotiations and advised on labor and employment relations strategies. Handled employment, labor and ERISA litigation.

**Seyfarth, Shaw, Fairweather & Geraldson**
**Law Firm Partner**
> Advised corporate clients on employment and labor matters. Advised corporations and senior executive clients on a variety of employment and compensation issues. Advised on, and negotiated, employment agreements for corporate clients and for senior executives. Served as chief spokesperson for collective bargaining negotiations and advised on labor and employment relations strategies. Handled employment, labor and ERISA litigation.

**Perkins Coie**
**Associate**
> Advised corporate clients on employment and labor matters. Advised on labor and employment relations strategies. Handled employment, labor and ERISA litigation.

## OTHER EXPERIENCE

> Career Columnist, New Jersey Star Ledger

> Fairleigh Dickinson University, Adjunct Professor teaching Human Resources Management

> William Paterson University, Adjunct Professor teaching Human Resources Management

New School, Milano Graduate School, Adjunct Professor of Human Resources in the Masters in Human Resources Program.

Monster.com and Careerbuilders.com: Career Columnist

Wall Street Journal Online: Contributor

TheLadders.com: Contributor

"Your Career Doctors" Radio Program, Co-Host

## PROFESSIONAL ACTIVITIES

New Jersey Organization and Development Network

Business Advisory Council YAI/National Institute for People with Disabilities

Former Chair, International Association of Corporate and Professional Recruiters

Former Member, Advisory Board, Bureau of National Affairs - Corporate Practice Series

Former Chairman, Committee on Employment Law, NY Chapter A.C.C.A.

## BOARDS OF DIRECTORS

Former Chairman and Board Member, International Association of Corporate and Professional Recruiters

Former Board Member, American Repertory Ballet Company: Chair, Personnel and Compensation Committee

Former Board Member & Secretary to Union County Motion Picture and Television Advisory Board.

Former Board Member and Secretary to the Board, Garden State Ballet

Former Board Member, Washington State Bar Association Credit Union

Advisor and Honorary Director of the Tianjin Society (Singapore)

## SELECTED PUBLICATIONS

*Get More Money on Your Next Job… In Any Economy* (McGraw Hill 2009)

*Up: Influence, Power and the U Perspective- The Art of Getting What You Want*

*A Woman's Guide to Successful Negotiating: How to Convince, Collaborate and Create your Way to Agreement* (McGraw Hill 2010)

*Enhancing the Professional Culture and Accountability of Academic Health Sciences Center in a Policy Context*, chapter on Communications, co-authored with William Owen, President University of Medicine & Dentistry of New Jersey (Radcliff Publishing, 2011)

*Employment Discrimination Law* (BNA Corporate Practice Series)

*If You Want to Change the World, Learn to Influence and Negotiate: A Study of New York's Negotiations With Amazon* Columbia University Urban Journal (2019)

*Getting People to Believe in Something They Can't Yet Imagine* (Harvard Business Review Online 2014).

*Influencing for Social Good*, Columbia University Urban Journal (2018)

*Design Thinking* Columbia University Urban Journal (2017)

Boards Should Negotiate Executive Pay, Economist Magazine Executive Briefing (2006)

Executive Compensation After A Restatement, Directors Monthly, National Association of Corporate Directors (September 2005)

Wall Street Journal CareerJournal.com: Eleven Commandments for Smart Negotiating

Contributor: *PRNews' Best Practices in Non-Profit Communications* (Chapter on Social Media)

Why Boards Often Fail to Curb Executive Pay, Wall Street Journal Online (March 2004)

Contributor: Primer for Managers and Supervisors, Molly Vaux Editor, Executive Enterprise Publications (Chapter on Performance Appraisal) (1988)

Director Liability for Compensation Decisions: How Much Is Too Much To Pay? Directors Monthly, National Association of Corporate Directors (April 2003)

**SELECTED INTERNET PUBLICATIONS**

Careerbuilder.com: Negotiating Guide

Careerbuilder.com: Paid columnist writing regular columns topics such as on interviewing, career management, negotiating and compensation.

Monster.com: Paid columnist writing regular columns on negotiating and compensation, hosting a chat room and a board.

**SELECTED SPEECHES**

Gateway Regional Chamber of Commerce, Negotiating and Strategic Influencing During A Pandemic (April 2020)

Executive Forum, Members In Transition, "Getting A Job and Negotiating Your Compensation When You Are Unemployed" (November 2018)

WIN Summit "Influencing and Motivating People to Power Your Career Upward" (May 2017)

National Association of Manufacturers, Speaker "STEP Ahead Awards Recognizing Women for Excellence in Manufacturing" (April 2017)

Construction Industry Resource Training Network "Advanced Influencing and Negotiating" (April 2017)

Garden State Council - SHRM Annual Conference "Influencing for Human Resources Executives" (October 2015)

United Nations, "Multilateral Negotiations: Sustainable Development and Peaceful and Inclusive Societies" (March 2015)

GE Healthcare, "Employability Training" (November 2014)

NJ Organization and Development Network, "Cross Cultural Influencing" (May 2012)

Barnard College, Career Services "Getting a Job in a Tough Economy" (June 2009)

Columbia Business School Alumni Association, "Get More Money on Your Next Job in Any Economy" (March 2009)

Commercial Real Estate Women, Annual Convention, "Convince, Collaborate and Create-The Art of Getting What You Want" Calgary (April 2008)

Financial Executives International, "Influencing for Senior Financial Executives" Kansas City (May 2008)

Arthur Lok School of Business "Becoming the Employer of Choice" Trinidad (April 2008)

Columbia Teachers College, Career Services "Getting a Job and Negotiating Your Compensation" (May 2007)

Garden State Council - SHRM Annual Conference "Influencing for Human Resources Executives" (November 2006)

Financial Executives International, National Convention "Negotiating and Influencing for Senior Financial Executives" (April 2006)

Mothers Can Do It, "Negotiating Your Way Back Into the Workforce After Taking Time Off" (September 2005)

Princeton Alumni Association, Employment Negotiations (May 2005)

New Jersey Department of Labor Professional Development Group (April 2005)

Women in Power Asia, "Negotiating as a Critical Leadership Skill" (March 2005)

Columbia Business School, Career Services "How to Find a Job in a Tough Market" (April 2003)

International Association of Corporate and Professional Recruiters, "Trends in Recruiting and Compensation," Philadelphia, (November 2002)

New Jersey Governor's Conference for Women, "Negotiating for Women," Princeton, NJ (April 2002).

American Society for Women Accountants, "The Art of Negotiating," New Orleans, (November 2002)

Financial Women's Association, "Negotiating for Women In Business," NYC, (October 2000)

New York Venture Group, "Recruiting and Retention: Winning The War For Talent," New York, (March 1999)

New York City Venture Capital Conference & Exposition, "Recruiting and Retaining Management & Technical Talent" New York, (June 1999)

American Management Association, "Branding and Talent Retention," New York, (October 2000)

## SELECTED TELEVISION AND RADIO APPEARANCES

CBS's "The Early Show,"

ABC's "Good Morning America,"

Fox's "Fox and Friends,"

ABC's "Money Talk,"

NBC's "Today New York,"

CNN's "Your Money's Worth,"

CNBC's "Power Lunch,"

Bloomberg "Personal Finance,"

MSNBC's "Economy Watch,"

NPR's "Morning Edition."